**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 2 9 2021

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

| | |
|---|---|
| ERIC GREATHOUSE, individually and on behalf of all others similarly situated, | Case No. *4:21 - cv - 1243 - BRW* |
| Plaintiff, | **COMPLAINT – CLASS ACTION** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| CAPITAL PLUS FINANCIAL, LLC and CROSSROADS SYSTEMS, INC., | |
| Defendants. | This case assigned to District Judge *Wilson* and to Magistrate Judge *Kearney* |

Plaintiff Eric Greathouse ("Plaintiff" or "Greathouse"), individually and on behalf of all others similarly situated, files this Class Action Complaint for damages and equitable relief against Capital Plus Financial, LLC ("CPF") and CPF's corporate parent, Crossroads Systems, Inc. ("Crossroads" and, together with CPF, "Defendants"), for failure to fund approved Paycheck Protection Program ("PPP" or the "Program") loans that CPF was contractually obligated to fund. In support, Plaintiff makes the following allegations based upon information and belief except as to the allegations pertaining to the Plaintiff, which are based on personal knowledge. Plaintiff's information and belief is based on the ongoing investigation of his undersigned counsel, which included a review of applicable documents, publicly available information concerning the PPP and PPP loans, filings with the U.S. Securities and Exchange Commission (the "SEC") and media and other reports available on the Internet.

## **Summary of the Claims**

1.     Following the worldwide outbreak of COVID-19, Congress passed the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") to, among many other things, provide relief to America's small businesses and sole proprietors through the establishment of the PPP.

2.     Administered by the United States Small Business Administration ("SBA"), the PPP was established to provide hundreds of billions of dollars of potentially forgivable loans to small businesses and sole proprietors in a quick and efficient manner.

3.      To ensure that small businesses and sole proprietors received PPP loan proceeds quickly, the applicable provisions of the PPP required lenders to fund PPP loans within ten days of SBA approval.

4.     Lenders that participated in the Program were entitled to fees payable by the SBA for each PPP loan the lenders processed.

5.     Defendant CPF was one of the SBA's authorized PPP lenders. In 2021, after the SBA substantially increased the fees lenders would receive for PPP loans made that year, CPF reportedly processed 472,036 PPP loans totaling over $ 7.5 billion through May 31, 2021 – the second most PPP loans by any lender in 2021, and more than the total number of PPP loans made in 2021 by Bank of America, PNC Bank, TD Bank and Wells Fargo *combined. See* Paycheck Protection Program (PPP) Report: Approvals through 05/31/2021, at p.7, available at https://www.sba.gov/sites/default/files/2021-06/PPP_Report_Public_210531-508.pdf      (last accessed Sept. 21, 2021).

6.     As a result, CPF and/or its corporate parent, the publicly-traded, for-profit company Crossroads, reportedly received $930 million in PPP loan fees in 2021. In fact, though not an SBA-

approved PPP lender, Crossroads stated in its quarterly report filed with the SEC for the period
ending July 31, 2021 as follows:

> Total revenue from operations for the nine months ended July 31, 2021, was
> $970.5 million compared to $27.5 million for the same period of 2020. The
> increase in revenue was the result of the Company participating in the Payment
> Protection Program (PPP) administered by the Small Business Administration
> ("SBA"). The Company earned fees from the program totaling approximately
> $930.0 million."

*See* http://www.crossroads.com/wp-content/uploads/2021/09/CRSS_Q3-2021-OTC-Disclosure-
Statement.pdf (accessed Dec. 23, 2021).

7.      In flagrant disregard of its contractual obligations to Plaintiff and the other eligible
class member borrowers, however, CPF failed to actually fund those borrowers' SBA-approved
PPP loans.

8.      Plaintiff and numerous other business owners across the country each timely
applied for PPP loans with CPF, had their loans approved by the SBA and assigned PPP loan
numbers, and yet never received their PPP loan funds.

9.      Further, and for its role in owning and controlling CPF and in directing the conduct
and exploiting CPF's status as an SBA-approved PPP lender, Crossroads received hundreds of
millions of dollars in PPP loan fees – including fees on PPP loans CPF never funded – and, in turn,
distributed millions of dollars in such fees to its corporate insiders who, collectively, owned 66%
of Crossroad's equity.

## Parties

10.     Plaintiff, a natural person residing in Russellville, Arkansas, is a sole proprietor of
an insurance inspection business.

11.     Defendant CPF is a limited liability company organized under the laws of the state
of Texas with its principal place of business at 2247 Central Drive, Bedford, Texas 76021.

12.     Defendant Crossroads is a corporation organized under the laws of Delaware with its principal place of business at 4514 Cole Avenue, Suite 1600, Dallas, Texas 75205.

## Jurisdiction & Venue

13.     This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the aggregate amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states. This Court also has jurisdiction under the Class Action Fairness Act because at least one member of the proposed class is a citizen of a different state than defendant CPF; there are more than 100 members of the proposed class; and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

14.     Venue is proper in this judicial District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## Additional Factual Allegations

### Background Concerning the COVID-19 Pandemic and the PPP

15.     On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a "pandemic." Two days later, on March 13, 2020, the United States declared a national emergency due to the COVID-19 pandemic.

16.     In response, on March 27, 2020, the United States Congress passed the largest economic stimulus package in the nation's history -- the CARES Act. The CARES Act amounted to over $2 trillion in aid, equivalent to roughly $6,000 per American, or 45% of all federal government spending for 2019.

17.     The CARES Act was enacted to provide immediate assistance to individuals, families, and businesses affected by the COVID-19 emergency.

4

18.     One facet of the CARES Act's approach to economic relief was the PPP. Recognizing the huge strain that the COVID-19 pandemic would likely impose on American small businesses, the PPP initially allocated $349 billion for loans to small businesses, sole proprietors, and nonprofit organizations, among others. These loans were intended to pay up to eight weeks of payroll costs (including benefits) and could also be used to pay interest on mortgages, rent, and utilities.

19.     PPP loans are guaranteed by the SBA, and the PPP provides for loan forgiveness if the borrower demonstrates that the funds were used in compliance with PPP regulations.

20.     The PPP has been the subject of several legislative renewals, modifications, and extensions. On April 24, 2020, the President signed the Paycheck Protection Program and Health Care Enhancement Act, which provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 was enacted, extending the deferral period for PPP loans, among other provisions. On July 4, 2020, the PPP was further amended to guarantee PPP loans to August 8, 2020. On December 27, 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Economic Aid Act") was enacted, which further extended the PPP and allowed for the SBA to authorize second-draw PPP loans through March 31, 2021, available to borrowers who already used their previous PPP loan proceeds for permitted expenditures. On March 11, 2021, the American Rescue Plan Act was signed into law, adding an additional $7.25 billion for PPP loans, bringing total appropriations for the program to $813.7 billion. Finally, on March 30, 2021, the PPP Extension Act was enacted, which extended the PPP application deadline to May 31, 2021, and gave the SBA until June 30, 2021 to process loan applications.

21.      PPP loans are generally available to businesses in operation as of February 15, 2020 that had paid employees, as well as self-employed individuals. Businesses receiving PPP loans cannot have more than 500 employees and cannot be in bankruptcy. Further, applicants are required to certify that the "current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Currently, at least 60% of the proceeds must be used for payroll costs. The entire amount of any PPP loan is subject to forgiveness so long as the proceeds are used for eligible expenses.

22.      Under the Economic Aid Act, a PPP borrower is entitled to a second draw under narrower conditions than its first draw. For example, a second draw borrower must have 300 or fewer employees, must demonstrate that it sustained a certain percentage reduction in its gross receipts compared to 2019, and must have used its entire first draw proceeds prior to disbursement of its second draw proceeds. Second draw loans -- like first draw loans -- are also subject to forgiveness.

23.      Given the anticipated volume of PPP loan applications, Congress provided for PPP loan processing and funding through private lenders, with the SBA paying these lenders a fee for each processed PPP loan.

24.      For their participation, the PPP originally provided that lenders would receive fees at a rate of five percent for loans $350,000.00 or less, three percent for loans between $350,000.00 and $2,000,000.00, and one percent for loans over $2,000,000.00. *See* SBA Procedural Notice, Control No. 5000-20091 (Feb. 8, 2021), available at https://www.sba.gov/sites/default/files/2021-02/Procedural%20Notice%205000-20091%20-%202nd%20Updated%20PPP%20Processing%20Fee%20and%201502%20Reporting-508.pdf (last accessed Sept. 17, 2021).

6

25.     To address institutional lenders' neglect of PPP loan applications from many small businesses -- especially minority, underserved, veteran, and women-owned businesses -- in favor of larger PPP loans, the Economic Aid Act added that lenders processing loans of up to $50,000.00 would receive an increased fee of fifty percent or $2,500.00, whichever is less, per PPP loan beginning December 27, 2020.

26.     As the vast majority of PPP loans -- even those to the smallest businesses and sole proprietors -- exceeded $5,000.00, PPP lenders received a flat fee of $2,500 for virtually every PPP loan less than $50,000.00.

27.     On February 8, 2021, the SBA issued a new notice setting forth the procedure for how lenders would be paid PPP loan fees by the SBA. *Id.*

28.     To apply for a PPP loan, a prospective borrower would have to submit a standardized Borrower Application Form issued by the SBA (SBA Form 2483 for first time borrowers and SBA Form 2483-SD for second draw borrowers), together with relevant payroll documentation, to a lender. Once the lender reviewed and approved the loan application, the lender would submit the application to the SBA for approval.

29.     Following SBA approval of an application, the SBA would issue a ten-digit loan identification number (known as a "GP [General Program] number") for the borrower's loan.

30.     Provided that the borrower had executed the loan documents, the lender was required to disburse the PPP funds within ten days of SBA approval and assignment of the loan number.

31.     If the PPP borrower did not sign and submit all of the required documents to the lender, then the PPP lender was required to report the loan and corresponding loan number as cancelled no later than twenty days from the SBA approval and assignment of the loan number.

7

32.     Lenders' compliance with the above PPP funding requirement was of paramount importance to applicants and borrowers for reasons beyond their need to get the PPP loan proceeds in a timely manner.

33.     Once the SBA approved a PPP loan and assigned it a loan number, the applicant could not apply for a PPP loan with any other lender because the applicant could not make all of the required certifications on another PPP loan application. Thus, once approved, the borrower was essentially bound to the lender to whom it applied for the PPP loan, in that the borrower had to rely exclusively on the good faith of the lender to fund the loan.

34.     For both first draw and second draw PPP loans, a PPP loan applicant had to certify that they had not and would not receive another first draw or second draw loan, respectively.

35.     Since the lender's obligation to fund a PPP loan ran from the date the SBA approved and assigned a loan number, an applicant could not certify to another lender that they would not receive the first loan even if the first lender had failed to timely fund the loan.

36.     Once a PPP loan was funded, the lender had ten days to submit an SBA Form 1502 to report to the SBA that the loan proceeds had been disbursed. After the lender submitted a Form 1502, the SBA would initiate payment of the processing fee to the lender.

37.     By submitting a Form 1502, the lender represented to the SBA that the PPP loan had been fully funded. Further, a lender was required to update the SBA with monthly Form 1502 reports detailing each PPP loan's status.

**Background Concerning Defendants CPF and Crossroads**

38.     CPF is a certified community development financial institution ("CDFI").

8

39.     CPF states on its website that it purports to "serv[e] the Hispanic community in the state of Texas." *See* http://www.crossroads.com/wp-content/uploads/2021/09/CRSS_Q3-2021-OTC-Disclosure-Statement.pdf (accessed Dec. 23, 2021).

40.     CDFIs were established as part of the Riegle Community Development and Regulatory Improvement Act of 1994. *See* What Are CDFIs, available at https://www.cdfifund.gov/sites/cdfi/files/documents/cdfi_infographic_v08a.pdf (last accessed Sept. 17, 2021). There are reportedly 1,000 CDFIs operating nationwide. *Id.*

41.     Although it is a CDFI, CPF was acquired by the for-profit, publicly-traded company Crossroads in 2017 (OTCQB: CRSS ).

42.     Crossroads states in media releases and on its website that it is a holding company that focuses on investing in businesses that promote economic vitality and community development. *See, e.g.*, https://capitalplusfin.com/in-the-news/.

43.     Since many sole proprietors' PPP loans were in amounts less than $10,000.00, PPP lenders were generating processing fees of only several hundred dollars for making those loans in 2020.

44.     Pursuant to the new 2021 increased fee schedule, however, lenders like CPF could count on collecting a $2,500.00 flat fee for every PPP loan less than $50,000.00.

45.     Taking into consideration the incredible demand for PPP loans less than $50,000.00 by sole proprietors, independent contractors, self-employed individuals and other underserved small businesses together with the more lucrative fee schedule, CPF (and its corporate parent Crossroads) saw an opportunity to generate enormous amounts of lender fees by booking a high volume of PPP loans under $50,000.00.

46.     CPF and/or Crossroads reportedly contracted with Blue Acorn PPP, LLC (and/or its affiliate, FinCap, Inc. or their affiliates) ("Blueacorn") in 2021 to help identify borrowers to whom CPF could make PPP loans and assist in the PPP paperwork process.

47.     Blueacorn was established in 2020.

48.     Blueacorn is neither a bank nor a lender and, therefore, cannot actually make PPP loans.

49.     In general, only SBA section 7(a)-approved lenders were approved to make PPP loans, together with any additional lenders determined by the Administrator of the SBA and the Secretary of the U.S. Treasury to also be qualified to make such loans. *See* 86 Fed. Reg. 3692 (Jan. 14, 2021), available at https://www.federalregister.gov/documents/2021/01/14/2021-00451/business-loan-program-temporary-changes-paycheck-protection-program-as-amended-by-economic-aid-act (last accessed Sept. 17, 2021).

50.     Accordingly, Plaintiff and other similarly situated class member borrowers contracted with CPF as the lender obligated to make the PPP loans.

51.     For its role in identifying potential borrowers and helping with the PPP paperwork, Blueacorn reportedly received a part of the lender's fees pursuant to a separate contractual relationship between the lender and Blueacorn. *See* THE NEW YORK TIMES, How Two Start-Ups Reaped Billions in Fees on Small Business Relief Loans (June 27, 2021), available at https://www.nytimes.com/2021/06/27/business/ppp-relief-loans-blueacorn-womply.html    (last accessed Sept. 17, 2021).

52.     At the direction and under the control of its corporate parent Crossroads, CPF exploited the increased fees to be paid by the SBA on smaller PPP loans in 2021 by reportedly agreeing to fund 472,036 PPP loans totaling over $7.5 billion in loan proceeds -- again the second

10

highest number of loans by any lender in 2021, and more loans than Bank of America, PNC Bank, TD Bank and Wells Fargo combined. *See* SBA, Paycheck Protection Program (PPP) Report, Approvals through 5/31/2021, p. 7, available at https://www.sba.gov/sites/default/files/2021-06/PPP_Report_Public_210531-508.pdf (last accessed Sept. 17, 2021).

53.     As a result, Crossroads "earned fees from the [PPP] totaling approximately $930 million" according to its quarterly report filed with the SEC for the period ending July 31, 2021. *See* http://www.crossroads.com/wp-content/uploads/2021/09/CRSS_Q3-2021-OTC-Disclosure-Statement.pdf (accessed Dec. 23, 2021).

54.     According to a July 2021 investor presentation, corporate insiders of Crossroads own (or then owned) approximately 66% of Crossroads' equity including specifically as follows: Robert Alpert ("Alpert"), Chairman of the Board of Crossroads and principal of 210/CRDS Investment LLC, 1,492,285 shares, or 25% of Crossroad's total outstanding shares; Eric Donnelly ("Donnelly"), CEO of both Crossroads and CPF, 2,255,677 shares, or 37.8% of Crossroad's total outstanding shares; and Farzana Giga ("Giga"), CFO of both Crossroads and CPF and director of Crossroads, and Crossroads board members James Perez Foster, Claire Gogel, Ray Kembel and Clark C. Webb ("Webb"), 194,440 shares, or 3.3% of Crossroad's total outstanding shares. *See* http://www.crossroads.com/wp-content/uploads/2021/01/Crossroads-CRSS-Investor-Presentation_2021.pdf. Thus, in sum, the corporate insiders and directors of Crossroads owned 3,942,402 shares, or approximately 66%, of the 6,171,984 total outstanding shares as of July 2021. *Id.*

55.     On July 8, 2021 – following its receipt of hundreds of millions of dollars in PPP loan fees, including for Plaintiff's and numerous other class member PPP loans CPF failed to actually fund – Crossroads announced in a letter to shareholders that it was "now overcapitalized"

and would pay out a special dividend of $40 per share to its shareholders on July 26, 2021. *See* http://www.crossroads.com/wp-content/uploads/2021/07/CRSS-FQ2-2021-Shareholder-Letter.pdf (at p. 4).

56.     On July 15, 2021, Crossroads issued a news release stating the special dividend of $40 per share would be payable on July 26, 2021 to stockholders of record at the close of business on July 19, 2021, and that the total amount of the dividend would be approximately $238.9 million based on the number of Crossroads shares outstanding. *See* https://crossroads.mediaroom.com/2021-07-15-Crossroads-Systems-Provides-Additional-Information-on-Special-Dividend?pagetemplate=widgetpopup&printable.

57.     As a result, and based on the respective equity interests in Crossroads, Chairman Alpert received $59,691,400 in cash from the special dividend; Crossroads's and CPF's dual CEO Donnelly received $90,227,080; and Alpert, Donnelly and other corporate insiders and directors collectively received $157,696,080 of the approximately $238.9 million total special dividend.

58.     On December 14, 2021, Crossroads issued a news release reporting its fiscal year 2021 financial results. In that news release, Crossroads stated that its total fiscal year "revenues increased 2,446% to $932.7 million, up from $36.6 million in the comparative 2020 period"; that "[r]emoving PPP impact from the year's operations, total revenues were $34.9 million compared to $36.6 million in 2020"; that "[o]perating income increased 4,127% to $243.4 million, up from $5.8 million in 2020"; that "[t]he substantial increase in operating income was primarily due to origination fees associated with the Company's participation in the PPP loan program"; and that "[c]ash EPS (operating income less income to non-controlling interests) was $36.19, which was a 4,820% increase compared to $0.74 during the same period in 2020." *See*

https://www.prnewswire.com/news-releases/crossroads-systems-reports-fiscal-fourth-quarter-and-fiscal-year-2021-financial-results-301443835.html (last accessed December 29, 2021).

59.     Crossroads Board Chairman Alpert is also Chairman and Co-CEO of P10 Holdings, Inc., a publicly traded investment firm that provides investment advisory services to Crossroads, and is also headquartered at the same corporate headquarters as Crossroads, 4514 Cole Avenue, Suite 1600, Dallas, Texas 75205. *See* https://www.p10alts.com/team.

60.     Crossroads controlled and directed the activities of CPF, and its management even referred to the companies as if they were one specifically in the context of the PPP in public communications to shareholders, among other things. For example, in a letter to shareholders accompanying its fiscal second quarter report to shareholders for the three months ended April 30, 2021, Crossroads Board Chair Alpert and Crossroads's *and* CPF's dual CEO Donnelly stated that "[w]e were well equipped to lead the charge for the program's second draw as a result of *our* CDFI status" (emphasis added); that "[l]ast quarter we highlighted *our* intention to participate in the second federal PPP program" (emphasis added); that "we were able to issue and approve loan applications at an unprecedently rapid pace"; and that, "[w]ithin just five months, *we* have approved 472,036 loans at an average amount of $16,062. In total, this amounts to $7.6 billion in funding, more than 80% of which went directly to companies and independent contractors of color.") (emphasis added). *See* http://www.crossroads.com/wp-content/uploads/2021/07/CRSS-FQ2-2021-Shareholder-Letter.pdf (last accessed December 29, 2021).

61.     In sum, Crossroads participated directly and indirectly in CPF's PPP loan processing through its common management and control and 100% ownership of CPF, and exploited CPF's status as an SBA-approved CDFI PPP lender to enrich itself and its corporate

insiders by obtaining fees on PPP loans CPF never funded, and PPP loan proceeds from the PPP program.

62.     Although Crossroads controlled and directed the activities of CPF as alleged more fully above, in fact CPF (but not Crossroads) was the qualified SBA-approved supervised lender for purposes of the PPP.

**CPF's Direct Participation in the PPP Liquidity Facility**

63.     To facilitate lending under the SBA's PPP, the Federal Reserve supplied liquidity to CPF and other participating financial institutions through term financing to be secured by the PPP loans. *See* Board of Governors of the Federal Reserve System, Paycheck Protection Program Liquidity           Facility           (PPPLF),           available           at https://www.federalreserve.gov/monetarypolicy/ppplf.htm (last accessed Sept. 17, 2021).

64.     In particular, the Paycheck Protection Program Liquidity Facility ("PPPLF") was authorized under § 13(3) of the Federal Reserve Act "to facilitate lending by eligible borrowers [*i.e.*, PPP lenders] to small businesses under the [PPP]. … Under the Facility, the Federal Reserve Banks ('Reserve Banks') will lend to eligible borrowers [*i.e.*, PPP lenders] on a non-recourse basis, taking PPP Loans as collateral." *See* Paycheck Protection Program Liquidity Facility Term Sheet, available                                                                                                                 at https://www.federalreserve.gov/newsevents/pressreleases/files/monetary20210625a1.pdf      (last accessed Sept. 17, 2021).

65.     Further, "[a]ll lenders that are eligible to originate PPP Loans are eligible to borrow under the Facility." *Id.*

66.     For CPF and other qualified CDFI PPP lenders, the lending Federal Reserve Bank was the Federal Reserve Bank of Cleveland. *Id.*

67.     Only SBA-guaranteed PPP loans are eligible to serve as collateral for PPPLF advances, and the principal amount advanced under the PPPLF was to be equal to the principal amount of the PPP loan pledged to secure the extension of credit. *Id.*

68.     CPF received billions of dollars of advances through the PPPLF as specified more fully below, in addition to other PPP advances.

69.     In fact, although the PPP application period ended on May 31, 2021 and the life cycle of a PPP loan application should only take a few business days, CPF continued to receive substantial advances through the PPPLF between June 30, 2021 and July 30, 2021, after the deadline for processing loan applications.

70.     For example, between July 1, 2021 and July 30, 2021, CPF received at least three PPPLF cash advances each exceeding $30,000,000, and also received a total of $134,119,585.79 in PPP loan advances for the month of July 2021 alone.

71.     In particular, according to a report by the Federal Reserve to the U.S. Congress dated December 13, 2021 "PPPLF Transaction-specific Disclosures (XLSX)," CPF received the following specific cash advances from the PPPLF:

| Date of Advance | Amount |
|---|---|
| 2021-02-02 | $2,178,040.41 |
| 2021-02-02 | $627,622.00 |
| 2021-02-11 | $5,708,115.06 |
| 2021-02-11 | $273,968.00 |
| 2021-02-11 | $2,710,413.00 |
| 2021-02-11 | $273,579.59 |
| 2021-02-11 | $2,129,648.45 |
| 2021-02-11 | $3,693,488.60 |
| 2021-02-11 | $5,512,672.14 |
| 2021-02-25 | $1,191,862.00 |
| 2021-02-25 | $1,906,418.00 |
| 2021-02-25 | $34,357.00 |
| 2021-02-25 | $1,291,742.00 |
| 2021-02-25 | $2,976,057.35 |

| Date of Advance | Amount |
|---|---|
| 2021-02-25 | $541,239.00 |
| 2021-02-25 | $372,863.50 |
| 2021-02-25 | $57,626.00 |
| 2021-03-01 | $354,159.11 |
| 2021-03-01 | $5,647,969.98 |
| 2021-03-02 | $325,669.00 |
| 2021-03-02 | $4,378,004.32 |
| 2021-03-02 | $1,460,686.27 |
| 2021-03-02 | $182,176.50 |
| 2021-03-02 | $215,785.00 |
| 2021-03-02 | $10,184,988.00 |
| 2021-03-02 | $586,175.75 |
| 2021-03-03 | $452,683.05 |
| 2021-03-03 | $2,161,402.00 |
| 2021-03-04 | $5,273,526.10 |
| 2021-03-09 | $5,825,425.32 |
| 2021-03-09 | $5,502,974.02 |
| 2021-03-09 | $791,045.97 |
| 2021-03-09 | $7,966,408.33 |
| 2021-03-10 | $4,144,182.85 |
| 2021-03-11 | $3,279,707.66 |
| 2021-03-15 | $22,298,842.23 |
| 2021-03-16 | $764,647.00 |
| 2021-03-16 | $17,845,001.09 |
| 2021-03-16 | $902,196.50 |
| 2021-03-16 | $1,794,125.60 |
| 2021-03-17 | $19,604,711.14 |
| 2021-03-18 | $14,608,755.33 |
| 2021-03-18 | $1,091,038.95 |
| 2021-03-19 | $12,415,131.15 |
| 2021-03-22 | $82,131,881.16 |
| 2021-03-23 | $54,386,988.50 |
| 2021-03-23 | $ 16,861,162.00 |
| 2021-03-23 | $27,003,647.85 |
| 2021-03-24 | $98,770,508.82 |
| 2021-03-25 | $10,147,992.90 |
| 2021-03-29 | $479,593.40 |
| 2021-03-29 | $6,760,457.63 |
| 2021-03-29 | $11,671,507.38 |
| 2021-03-29 | $11,310,627.52 |
| 2021-03-29 | $8,987,367.00 |

| Date of Advance | Amount |
|---|---|
| 2021-03-29 | $8,840,001.43 |
| 2021-03-29 | $8,036,480.35 |
| 2021-03-29 | $7,579,378.00 |
| 2021-03-29 | $7,687,847.70 |
| 2021-03-29 | $5,476,010.00 |
| 2021-03-29 | $3,022,105.50 |
| 2021-03-29 | $2,097,367.75 |
| 2021-03-29 | $7,343,229.25 |
| 2021-03-29 | $5,352,732.72 |
| 2021-03-29 | $3,907,229.00 |
| 2021-03-29 | $3,074,780.48 |
| 2021-03-29 | $2,324,503.09 |
| 2021-03-29 | $947,087.00 |
| 2021-03-29 | $2,505,979.50 |
| 2021-03-29 | $1,170,854.10 |
| 2021-03-29 | $4,357,560.50 |
| 2021-03-30 | $79,562,983.00 |
| 2021-03-30 | $102,496,216.00 |
| 2021-03-30 | $72,574,056.00 |
| 2021-03-30 | $84,507,665.00 |
| 2021-03-31 | $75,764,259.00 |
| 2021-04-01 | $9,549,671.89 |
| 2021-04-01 | $39,612,141.00 |
| 2021-04-02 | $243,075,429.00 |
| 2021-04-06 | $257,472,124.33 |
| 2021-04-06 | $132,444,399.00 |
| 2021-04-07 | $10,927,697.00 |
| 2021-04-07 | $62,021,483.00 |
| 2021-04-08 | $85,339,435.12 |
| 2021-04-08 | $259,374,000.00 |
| 2021-04-16 | $126,501,443.00 |
| 2021-04-16 | $181,211,831.00 |
| 2021-04-16 | $162,256,760.73 |
| 2021-04-16 | $16,005,416.00 |
| 2021-04-16 | $176,063,638.00 |
| 2021-04-20 | $15,295,725.00 |
| 2021-04-21 | $12,171,969.60 |
| 2021-04-21 | $5,953,438.16 |
| 2021-04-21 | $38,643,341.00 |
| 2021-04-21 | $96,987,237.00 |
| 2021-04-21 | $48,105,810.00 |

| Date of Advance | Amount |
| --- | --- |
| 2021-04-23 | $58,507,134.00 |
| 2021-04-23 | $368,780,681.00 |
| 2021-04-23 | $327,135,009.82 |
| 2021-04-23 | $70,865,658.00 |
| 2021-04-26 | $114,086,044.00 |
| 2021-04-30 | $5,717,971.00 |
| 2021-05-03 | $1,765,216.00 |
| 2021-05-03 | $2,944,483.47 |
| 2021-05-03 | $2,096,650.00 |
| 2021-05-04 | $2,293,625.00 |
| 2021-05-04 | $34,802,766.00 |
| 2021-05-06 | $2,125,832.00 |
| 2021-05-06 | $1,070,106.00 |
| 2021-05-06 | $616,115.00 |
| 2021-05-06 | $835,290.00 |
| 2021-05-07 | $365,435.00 |
| 2021-05-12 | $263,080,394.00 |
| 2021-05-12 | $33,579,305.00 |
| 2021-05-12 | $16,088,836.00 |
| 2021-05-12 | $5,443,630.00 |
| 2021-05-12 | $890,741.00 |
| 2021-05-12 | $1,413,197.00 |
| 2021-05-17 | $1,851,188.00 |
| 2021-05-17 | $1,577,688.00 |
| 2021-05-17 | $1,581,021.00 |
| 2021-05-17 | $8,630,450.25 |
| 2021-05-18 | $1,101,950.00 |
| 2021-05-18 | $577,710.00 |
| 2021-05-18 | $535,369,687.12 |
| 2021-05-20 | $33,419,154.94 |
| 2021-05-20 | $46,027,570.00 |
| 2021-05-24 | $11,859,766.00 |
| 2021-05-25 | $9,886,972.00 |
| 2021-05-25 | $2,365,516.00 |
| 2021-05-25 | $600,024.00 |
| 2021-05-25 | $1,831,023.00 |
| 2021-05-28 | $1,902,346.00 |
| 2021-05-28 | $5,249,415.00 |
| 2021-05-28 | $1,677,600.00 |
| 2021-06-02 | $2,478,525.99 |
| 2021-06-02 | $395,067.00 |

| Date of Advance | Amount |
|---|---|
| 2021-06-02 | $574,919.00 |
| 2021-06-04 | $2,086,894.92 |
| 2021-06-04 | $834,823.00 |
| 2021-06-04 | $1,120,999.32 |
| 2021-06-04 | $80,299,469.78 |
| 2021-06-04 | $147,886,129.00 |
| 2021-06-10 | $1,805,560.00 |
| 2021-06-10 | $700,921.00 |
| 2021-06-10 | $1,143,936.00 |
| 2021-06-10 | $12,226,237.00 |
| 2021-06-10 | $968,115.00 |
| 2021-06-16 | $1,729,026.00 |
| 2021-06-16 | $933,469.00 |
| 2021-06-16 | $46,130,527.00 |
| 2021-06-17 | $484,266.07 |
| 2021-06-17 | $542,102.00 |
| 2021-06-17 | $807,337.00 |
| 2021-06-18 | $49,044,789.00 |
| 2021-06-22 | $16,783,373.00 |
| 2021-06-23 | $515,136,782.00 |
| 2021-06-23 | $312,406,138.00 |
| 2021-06-24 | $8,087,276.00 |
| 2021-06-24 | $15,750,200.00 |
| 2021-06-24 | $23,444,948.00 |
| 2021-06-25 | $1,627,318.00 |
| 2021-06-25 | $1,400,035.00 |
| 2021-06-25 | $2,004,933.00 |
| 2021-06-25 | $1,331,199.00 |
| 2021-06-25 | $1,303,819.32 |
| 2021-06-25 | $149,773.00 |
| 2021-06-29 | $2,496,951.63 |
| 2021-06-29 | $538,849.00 |
| 2021-06-29 | $41,636.00 |
| 2021-06-29 | $126,344.00 |
| 2021-06-29 | $1,119,986.00 |
| 2021-06-29 | $179,504.00 |
| 2021-06-29 | $244,511.00 |
| 2021-06-29 | $26,324.00 |
| 2021-06-29 | $127,795.00 |
| 2021-06-29 | $144,425.00 |
| 2021-06-29 | $39,294.00 |

| Date of Advance | Amount |
|---|---|
| 2021-06-29 | $114,014.00 |
| 2021-06-29 | $5,000.00 |
| 2021-06-29 | $1,140,000.00 |
| 2021-06-29 | $7,642,798.00 |
| 2021-06-29 | $101,233,693.33 |
| 2021-06-30 | $194,761.00 |
| 2021-07-01 | $35,891,616.00 |
| 2021-07-01 | $217,926.00 |
| 2021-07-01 | $436,360.00 |
| 2021-07-06 | $38,610,016.00 |
| 2021-07-06 | $1,025,508.00 |
| 2021-07-06 | $62,496.00 |
| 2021-07-07 | $7,098,589.00 |
| 2021-07-13 | $1,219,924.00 |
| 2021-07-13 | $452,164.00 |
| 2021-07-14 | $385,525.00 |
| 2021-07-14 | $41,193,415.00 |
| 2021-07-29 | $239,725.00 |
| 2021-07-30 | $72,735.00 |
| 2021-07-30 | $6,304,677.00 |
| 2021-07-30 | $858,609.79 |
| 2021-07-30 | $32,930.00 |
| 2021-07-30 | $17,370.00 |
| ***Total*** | **$6,458,857,759.43** |

*See* Board of Governors of the Federal Reserve System, Paycheck Protection Program Liquidity Facility (PPPLF), available at https://www.federalreserve.gov/monetarypolicy/ppplf.htm (last accessed Dec. 23, 2021).

72.     As alleged below, while CPF reportedly received over $6.4 billion from the PPPLF in 2021 alone, CPF failed to actually fund PPP loans approved by the SBA for Plaintiff and numerous other SBA-approved borrower members of the proposed class. CPF failed to fund class member approved loans, moreover, despite having actually received the unfunded PPP loan proceeds from the PPPLF.

**CPF's Failure to Fund Plaintiff Greathouse's PPP Loan**

73.     When the pandemic began, Plaintiff Greathouse was, and continues to be, in the business of providing insurance inspection services in the Russellville, Arkansas area.

74.     Due to the pandemic, Plaintiff was not able to provide these services with the same frequency and, as a result, lost significant income.

75.     On or about April 8, 2021, Greathouse applied for a PPP loan with CPF. Greathouse submitted all requested documentation and information.

76.     On or about April 9, 2021, the SBA approved Greathouse's PPP loan application and assigned it a loan number (SBA Loan Number 9988328700).

77.     The SBA approved Greathouse for a PPP loan in the amount of $15,665.00.

78.     On April 18, 2021, Greathouse received the PPP promissory note (the "Note") and accompanying documents for him to sign.

79.     The Note identified the SBA loan number and amount, Defendant CPF as the lender and Plaintiff Greathouse as the borrower; set forth payment terms, potential events of default, CPF's rights in the event of default, and other terms and conditions; and provided the terms for Plaintiff Greathouse to repay the loan to CPF if it was not forgiven.

80.     The Note also included an Additional and Correction Documents Agreement (Errors and Omissions Agreement) between CPF and Plaintiff Greathouse; a Business Purpose Statement; a Notice - No Oral Agreements bearing the signature of CPF Chief Financial Officer Giga and Plaintiff Greathouse; a Written Consent of Governing Body form for Greathouse to represent that he is authorized to receive the loan and on which CPF may rely; an IRS W-9 Request for Taxpayer Identification Number and Certification; and an Information and Bank Account

Certification and Authorization form identifying the bank or other account to which CPF was obligated to send the funds (collectively, the "Loan Documents").

81.     On April 18, 2021, Greathouse signed and returned the Loan Documents in order to obtain the $15,665.00 PPP loan.

82.     Also on April 18, 2021, Greathouse was advised by email that his loan was approved and would be funded.

83.     Despite properly and timely completing, signing and submitting the Loan Documents and additional attempts to obtain the loan proceeds, however, Greathouse never received the proceeds of his SBA-approved PPP loan.

84.     For example, Greathouse contacted and consulted with his local SBA office about CPF's failure to fund his PPP loan, and sent emails and made numerous telephone calls to CPF and Blueacorn to try to follow up and get funded, all to no avail.

85.     On July 19, 2021, and following his complaints to the local SBA office and telephone calls again seeking funding, Greathouse was advised on July 19, 2021 that his PPP loan was being funded within an estimated three to six days.

86.     Although the SBA's records reported that Greathouse's PPP loan had actually been funded, Greathouse never received any PPP loan proceeds.

87.     The SBA's record of the alleged disbursement of Greathouse's loan proceeds was based on data CPF provided to the SBA.

88.     CPF's failure to fund Greathouse's SBA-approved PPP loan deprived Greathouse of funds that would have directly assisted in the operation of his inspection business and resulted in lost opportunities and other consequential damages.

**CPF's Failure to Fund Other SBA-Approved Class Member Borrower PPP Loans**

89.     Other similarly situated borrowers have been damaged by CPF's failure to fund

their SBA-approved PPP loans and have complained about their experiences in social media sites.

90.     For example, publicly-posted complaints by other consumers on the internet tell

similar stories:

a.      "Capital Plus Financial has kept hundreds of people's PPP loans that were already
        approved by the SBA." (Consumer Financial Protection Bureau Complaint
        Database, Complaint No. 4409176, May 26, 2021,
        https://www.consumerfinance.gov/data-research/consumer-complaints/, last
        accessed Dec. 23, 2021);

b.      "I hope capital plus financial is shut down after this, and that's on god. They
        deserve to lose all of their financial accreditations and business licenses. I have
        never in my life been in a situation like this with a financial institution that cuts
        off all methods of contact/communication for months at a time with zero
        explanation." (Consumer complaint, June 2020,
        https://www.reddit.com/r/Blueacorn/comments/nci8lm/just_got_off_the_phone_w
        ith_an_sba_rep_in_tx/, last accessed Dec. 23, 2021);

c.      "[T] they don't have a ETA on when my funds will be sent to my account. They
        do not have a phone to contact them, the lender Capital Plus Financial doesn't
        have a way for me to contact. I have emailed the CEO of capital plus financial
        every single day which is the lender and I have not heard anything from them at
        all." (Consumer Financial Protection Bureau Complaint Database, Complaint No.
        4348481, May 4, 2021, https://www.consumerfinance.gov/data-
        research/consumer-complaints/, last accessed Dec. 23, 2021);

d.      "I signed on April 8th and it says that my friends have been transferred or
        deposited and I have not seen a dime has anybody reported this to the SBA?"
        (June 2021 Consumer Complaint,
        https://www.reddit.com/r/PPPLoans/comments/ms0pzr/anybody_been_funded_by
        _capital_plus_financial/gz92tah/?utm_source=reddit&utm_medium=web2x&cont
        ext=3, last accessed Dec. 23, 2021);

e.      "If they broke they really need to just say that and send me to another lender or
        something because at this point they owe me." (Consumer complaint, May 2021,
        Facebook Group PPP Funding Group,
        https://www.facebook.com/groups/442306946857529/posts/456065148815042,
        last accessed Dec. 23, 2021);

f.   "They are making up the rules as they go, holding money that doesn't belong to them. This is not what SBA intended." (Consumer complaint June 2021, change.org, https://www.change.org/p/ppp-fraud-by-blueacorn-and-capital-plus-financial-failure-to-deliver-sba-funds?utm_source=share_petition&utm_medium=custom_url&recruited_by_id=9da43a80-c0d6-012f-2f2f-4040496dcccb, last accessed Dec. 23, 2021); and

g.   "Other delay tactics are mistakes on bank account information you didn't make, an inability to correct mistakes you did make and an inability to reach anyone at both companies. They are holding funds and not delivering money to borrowers. SBA tells you to resolve with a lender you can't reach directly and never returns calls." (Change.org Petition: *Report PPP fraud by Blueacorn and Capital Plus Financial Failure to Deliver SBA Funds*, 147 supporters, last accessed Dec. 23, 2021).

91.   CPF has reportedly received many complaints about its failure to fund SBA-approved PPP loans. In fact, CPF states as follows on its website:

NOTICE CONCERNING THREATENING OR HARASSING
COMMUNICATIONS

The partnership of Capital Plus Financial and Blue Acorn has successfully served hundreds of thousands of individuals and small businesses through the funding of Paycheck Protection Program (PPP) loans.

Feedback from customers is always appreciated. Customer service remains our top priority.

However, we will not tolerate any threatening or harassing actions or communications from customers in any form.

Any communication from an applicant we deem threatening, harassing or intimidating will result in the immediate withdrawal of the loan.

Additionally, we will pursue all available criminal and civil legal avenues to defend and protect our companies and our associates. Our team includes former federal agents and prosecutors. We are working closely with federal, state, and local law enforcement to identify and prosecute those who would make threats against our companies or our associates. We will pursue these options to the fullest extent of the law.

*See* https://capitalplusfin.com/home/ (visited Dec. 26, 2021).

92.   CPF failed to fund the SBA-approved PPP loans of Plaintiff and other class member borrowers despite the fact that CPF itself participated in the Program directly also as a beneficiary,

having received the PPP loan on April 13, 2020 of reportedly $376,800. *See*, *e.g.*, Capital Plus Financial LLC in Bedford, TX - SBA PPP Loan Data (Paycheck Protection Program) (federalpay.org) (accessed on Dec. 28, 2021).

<u>**Class Action Allegations**</u>

93.     Plaintiff brings this action individually and on behalf of the following class (the "Class"):

> All persons and entities in the United States who, in 2021, timely applied
> for PPP loans with defendant CPF as the lender, and who had their loans
> approved by the SBA but did not receive the PPP loan proceeds.

94.     Excluded from the Class are Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

95.     There is a well-defined community of interest among members of the Class, and the disposition of their claims in a single action will benefit the parties and the Court.

96.     The proposed Class meets each applicable requirement of Fed. R. Civ. P. 23(a) and 23(b)(3).

97.     *Numerosity*: While the exact number of members of the Class is unknown at this time and can be determined by appropriate discovery, the Class includes numerous members such that joinder of all members is impracticable within the meaning of Rule 23(a)(1).

98.     *Ascertainability*: Names and addresses of members of the Class are available from Defendant CPF's records and potentially other sources including publicly available databases. Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in class action litigation.

99.    *Typicality:* Plaintiff's claims are based on the same facts and legal theories as those of the other members of the Class which Plaintiff seeks to represent. Plaintiff and the members of the Class all similarly applied for PPP loans, had their loans approved by the SBA, but did not receive their PPP loan proceeds from CPF despite the parties' loan contracts.

100.    *Adequacy*: Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff is an adequate representative of the Class as his interests align with the interests of the members of the Class, and Plaintiff is represented by counsel skilled and experienced in class actions, including financial consumer and other class action litigation.

101.    *Superiority:* A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action because the expense and burden of individual litigation makes it economically unfeasible for members of the Class to seek to redress their claims other than through a class action; if separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits could lead to differing and inconsistent adjudications; and, absent a class action, CPF is unlikely to be held accountable for its failure to actually fund all applicable SBA-approved PPP loans.

102.    *Predominance and Commonality*: Common questions of law and fact exist and predominate over any questions which affect individual members of the Class. Common questions of fact and law include, but are not limited to:

a.    whether defendant CPF failed to fund SBA-approved PPP loans to Plaintiff and other members of the Class in breach of its obligations to actually fund such loans;

b.    whether CPF and Crossroads obtained fees for PPP loans that CPF did not disburse;

c.    whether CPF's corporate parent, Crossroads, was unjustly enriched by obtaining fees for PPP loans;

     d.     whether CPF's failure to fund SBA-approved PPP loans violated the Loan Documents it entered into with Plaintiff and other members of the Class; and

     e.     whether defendant CPF's failure to fund SBA-approved PPP loans and Crossroads's receipt of PPP loan fees damaged Plaintiff and the members of the Class.

103.    Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the definition of the Class should be amended.

## COUNT ONE
### Breach of Contract
### (Against CPF)

104.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

105.    This Count is alleged against only defendant CPF.

106.    The standard form promissory Note and accompanying Loan Documents that CPF and the members of the proposed Class entered into are binding, enforceable agreements. Among other provisions, the Note identifies the specific PPP loan, loan number and amount of the loan; specifies that the parties to the Note are, respectively, the Class member borrower and the "Lender" CPF; provides that, "[t]his loan is made pursuant to the PPP"; requires the borrower to pay back the principal of the loan plus interest if the PPP loan is not forgiven; contains other PPP loan repayment terms and events of default and the lender's rights in the event of the borrower's default; and contains general provisions, including specifically that "[a]ll individuals and entities signing this Note are jointly and severally liable[.]"

107.    In addition, the Additional and Correction Documents Agreement (Errors and Omissions Agreement) that accompanies the promissory Note between the Plaintiff class member borrowers and CPF provides additional terms and states, at the outset, explicitly as follows:

> In consideration of Capital Plus Financial, LLC, located at 2247 Central Drive, Bedford, Texas 76021 (hereinafter called "Lender") making the above loan, each of the undersigned, jointly and severally, do hereby agree as follows ....

108.    The Loan Document contracts entered into by CPF and the members of the Plaintiff borrower Class also include a "Notice - No Oral Agreements" document that governs the "Loan by Lender, Capital Plus Financial, LLC to Borrower"; identifies each Class member borrower; and is executed by both CPF via its CFO Giga, and each Class member borrower.

109.    A complete copy of the Loan Document is attached to this Complaint as **Exhibit A** (with only Plaintiff's Social Security and bank account numbers redacted).

110.    Through its agreement to make PPP loans via the Loan Documents and as the counterparty to the Loan Documents, CPF entered into a binding agreement with Plaintiff and the members of the proposed Class to fund their respective PPP loans.

111.    Further, CPF had an implied duty to act in good faith and in accordance with fair dealing to take all steps necessary to fund Plaintiff's and the Class members' PPP loans pursuant to the Loan Documents.

112.    Plaintiff and the Class members performed all their obligations under the Loan Documents.

113.    Defendant CPF breached its obligations to fund Plaintiff's and the Class members' PPP loans under the Loan Documents by failing to fund the loans within 10 days of the SBA's approval of the loans and assignment of loan numbers, or at any time thereafter.

114.    Moreover, all PPP loan applications require applicants to certify that they have not, and will not, receive other PPP loans.

115.    As a result, once Plaintiff and the other members of the Class applied for PPP loans and their loan applications were approved by the SBA and assigned PPP loan numbers pursuant to

the Loan Documents, Plaintiff and the Class members were no longer able to apply for PPP loans with other PPP lenders as they would not be able to certify that they would not receive another PPP loan.

116.    Plaintiff and the Class members were therefore effectively bound to, and had to rely exclusively on, CPF to actually abide by their Loan Document commitments to provide them with PPP loan funds that the SBA had already approved.

117.    As a result, CPF harmed Plaintiff and the members of the Class in an amount to be determined at trial, but not less than the amount of the wrongfully withheld PPP loan proceeds plus all other applicable damages to the full extent permissible by law.

## COUNT TWO
### Breach of Contract
### (Against Crossroads)

118.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

119.    This Count is alleged against only defendant Crossroads.

120.    As more fully described above, Crossroads exercised substantial control over CPF, operated with CPF as a single enterprise, participated in CPF's PPP loan processing practices, and exploited CPF's status as an SBA-approved CDFI lender to enrich itself and its corporate insiders through improperly obtained funds.

121.    Crossroads exercised its control over CPF to cause CPF to forward to Crossroads hundreds of millions of dollars in PPP related funds, notwithstanding that CPF had not funded Plaintiff's and Class members' loans on account of which CPF received those funds.

122. Under the principles of equity and good conscience, Crossroads should not be permitted to retain the funds it received as a result of Plaintiff's and Class members' unfunded loans, without having first caused CPF to disburse the Plaintiff's and Class members loans.

123. As a result of the foregoing, Crossroads is liable to Plaintiff and Class members as CPF's alter ego, for the amount of the wrongfully withheld PPP loan proceeds plus all other applicable damages to the full extent permissible by law.

124. As a result of the foregoing, the corporate veil of CPF should be pierced, and Crossroads should be held liable to Plaintiff and Class members for the amount of the wrongfully withheld PPP loan proceeds plus all other applicable damages to the full extent permissible by law.

## COUNT THREE
### Unjust Enrichment
### (Against Both Defendants)

125. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

126. Plaintiff alleges this Count only in the alternative, to the extent Plaintiff's breach of contract claims fail to adequately compensate Plaintiff and Class members for the Defendants' violations as alleged herein.

127. Plaintiff and Class members conferred a monetary benefit on Defendants. Specifically, they chose CPF to process and fund their PPP loans. In exchange, upon approval of their loans, Plaintiff and Class members should have received the funds to which they were entitled.

128. Defendants received PPPLF advances and PPP loan processing fees based, at least in part, on the unfunded loans of the Plaintiff and Class members.

129.    Defendants appreciated or had knowledge of the benefits they received as a result of the Plaintiff's and Class members' approved loans and they accepted and retained those benefits. Defendants profited from Plaintiff's and Class members' business transactions and used the funds resulting therefrom for business purposes and for the personal gain of shareholders.

130.    Crossroads controlled and directed the activities of CPF for purposes of the PPP as alleged more fully above, and CPF should have timely and properly funded Plaintiff's and Class members' PPP loans.

131.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the funds they received as a result of Plaintiff's and Class members' unfunded loans, without having disbursed those or other funds to fund the loans to which Plaintiff and Class members were entitled.

132.    CPF did not fund those loans, and therefore did not provide full compensation for the benefit Plaintiff and Class members provided.

133.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class members have suffered and will suffer injury.

134.    Defendants should not be permitted to unjustly enrich themselves at the expense of Plaintiff and Class members, but in equity and good conscience should be required to make restitution for all funds acquired as a result of Defendants' unlawful conduct.

135.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that it unjustly received as a result of Plaintiff's and Class members' PPP loans.

## Prayer for Relief

Plaintiff, individually and on behalf of the proposed Class, respectfully requests the following relief:

A.    an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the proposed Class; and naming Plaintiff's attorneys as counsel for the Class;

B.    judgment in favor of Plaintiff and the Class on all applicable counts asserted herein;

C.    an award of compensatory, consequential and other damages to Plaintiff and members of the Class in amounts to be determined at trial to the maximum extent permissible by law, plus prejudgment interest;

D.    an order of all other forms of monetary relief to the maximum extent permissible by law, including payment to Plaintiff and the Class of all PPP loan proceeds owed and due to Plaintiff and the members of the Class with interest, as well as disgorgement of all fees CPF and/or Crossroads obtained in connection therewith to the maximum extent permissible by law;

E.    an order requiring that Defendants, in the alternative and to the extent that Plaintiff's breach of contract claim fails to adequately award Plaintiff and the Class their damages for the violations alleged herein, disgorge PPP loan fees and proceeds that they unjustly received and pay into a common fund for the benefit of Plaintiff and the Class;

F.    an award of punitive damages based on Defendants' intentional, wanton and malicious conduct, or their reckless disregard of Plaintiff's and the Class members' rights, in amounts to be determined at trial to the maximum extent permissible by law;

G.     an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of this lawsuit, including but not limited to expert fees and costs, to the maximum extent permissible by law; and

H.     such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: December 29, 2021                    Respectfully submitted,

**FRIDAY, ELDREDGE & CLARK, LLP**
Katherine C. Campbell, AR Bar 2013241
Marshall S. Ney, AR Bar 91108
3350 S Pinnacle Hills Pkwy, Suite 301
Rogers, AR  72758
T:  (479) 695-6049
F:  (501) 244-5389
kcampbell@fridayfirm.com
Mmney@fridayfirm.com

**By:**   *Katherine Campbell*
          Katherine C. Campbell

**BAILEY & GLASSER LLP**
Lawrence J. Lederer
(*pro hac vice* admission to be sought)
Michael L. Murphy
(*pro hac vice* admission to be sought)
Bart D. Cohen
(*pro hac vice* admission to be sought)
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
T.:     202.463-2101
F.:     202.463-2103
llederer@baileyglasser.com
mmurphy@baileyglasser.com
bcohen@baileyglasser.com

**NOLAN HELLER KAUFFMAN LLP**
Justin A. Heller
(*pro hac vice* admission to be sought)
Matthew M. Zapala
(*pro hac vice* admission to be sought)
80 State Street, 11th Floor
Albany, NY 12207
T.:     518.449.3300
jheller@nhkllp.com
mzapala@nhkllp.com

# EXHIBIT A

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F



U.S. Small Business Administration

# NOTE

| SBA Loan # | 9988328700 |
|---|---|
| SBA Loan Name | Paycheck Protection Program |
| Date | 4/18/2021 |
| Loan Amount | $ 15665 |
| Interest Rate | 1.00% |
| Borrower | Eric Greathouse |
| Operating Company | Eric Greathouse |
| Lender | Capital Plus Financial |

1.  PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of

$15665 _____ Dollars,

interest on the unpaid principal balance, and all other amounts required by this Note.

2.  DEFINITIONS:

"CARES Act" means the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020), as amended by the Economic Aid Act, Pub. L. No. 116-269 (Dec. 27, 2020).

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower.

"PPP" means the Paycheck Protection Program under the CARES Act, including the rules, regulations and guidance of the SBA with respect thereto.

"SBA" means the Small Business Administration, an Agency of the United States of America.

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

3.   PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

This Loan is made pursuant to the PPP. Borrower agrees that it will comply with all SBA guidance under the CARES Act and the PPP as it applies to this Loan, regardless when enacted or supplemented.

**Initial Deferment Period:** In accordance with the terms of the PPP, no payments are due on this Loan for ten (10) months from the date of first disbursement of this Loan. Interest will continue to accrue during the deferment period.

**Loan Forgiveness:** Loan payments will be deferred if the Borrower applies for forgiveness of this Loan until such time as Lender receives payoff of the Loan from the SBA. Borrower may apply to Lender for forgiveness under the PPP of the amount due on this Loan in an amount equal to the sum of the following allowable costs, as defined in more detail by the SBA, incurred by Borrower during the "Covered Period", which shall be between 8- and 24-weeks, beginning on the date of first disbursement of this Loan:

a.   Payroll Costs

b.   Any payment of interest on a covered mortgage obligation (which shall not include any prepayment of, or payment of, principal on a covered mortgage obligation)

c.   Any payment on a covered rent obligation

d.   Any covered utility payment

e.   Any covered operating expenditures

f.   Any covered uninsured property damage costs

g.   Any covered supplier costs

h.   Any covered worker protection expenditures

Subject to the eligible forgiveness amount determined by the SBA, any remaining principal and deferred interest will be amortized over the remaining term of this Note in equal monthly payments of principal and interest beginning on the eleventh (11th) month from the date of the end of the Covered Period. Lender shall provide the calculation of the monthly amortization amount to Borrower not later than ten (10) business days prior to the date on which the first payment is due.

If the Borrower seeks forgiveness under the PPP, it shall submit an application with supporting documentation in accordance with the PPP. If the Loan is not fully forgiven, Borrower will remain liable for the full and punctual payment and satisfaction of the remaining outstanding principal balance of the Loan plus accrued but unpaid interest.

**Maturity:** This Note will mature five (5) years from date of first disbursement of this Loan.

**Repayment Terms:** The interest rate on this Note is one percent (1.00%) per year, calculated on a non-adjustable, non-compounding basis. The interest rate is fixed and will not be changed during the life of the Loan.

Borrower must pay principal and interest payments every month, beginning the eleventh (11th) month from the date of end of the Covered Period.  Payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

All remaining principal and accrued interest is due and payable in five (5) years from first disbursement of this Loan.

**Loan Repayment:** Notwithstanding any provision in this Note to the contrary, Borrower may prepay this Note at any time without penalty.

**Non-Recourse:** Lender and SBA shall have no recourse against any individual shareholder, member or partner of Borrower for non-payment of the Loan, except to the extent that such shareholder, member or partner uses the Loan proceeds for an unauthorized purpose.

SBA Form 147 (Hanmi Bank 01.22.2021)

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

4.  DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.  Fails to do anything required by this Note and other Loan Documents;

B.  Defaults on any other loan with Lender;

C.  Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

D.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

E.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

F.  Fails to pay any taxes when due;

G.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;

H.  Has a receiver or liquidator appointed for any part of their business or property;

I.  Makes an assignment for the benefit of creditors;

J.  Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower 's ability to pay this Note;

K.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender 's prior written consent; or

L.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5.  LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note;
B.  Collect all amounts owning from the Borrower; or
C.  File suit and obtain judgment.

6.  LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.  Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document. If Among other things, the expenses may include reasonable attorney's fees and costs. Lender incurs any such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

B.  Transfer or sell this Note;

C.  Release anyone obligated to pay this Note; and

D.  Take any action necessary to collect amounts owing on this Note.

7.  WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

SBA Form 147 (Hanmi Bank 01.22.2021)

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

8. SUCCESSORS AND ASSIGNS:

    Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

    A.  All individuals and entities signing this Note are jointly and severally liable;

    B.  Borrower waives all suretyship defenses;

    C.  Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to comply with SBA requirements pursuant to the CARES Act and the PPP;

    D.  Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them;

    E.  Borrower may not use an oral statement of Lender or SBA that contradict or alter the written terms of this Note.

    F.  If any part of this Note is unenforceable, all other parts remain in effect;

    G.  To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee.

10. ASSIGNMENT: AGREEMENT TO MAKE CHANGES TO THIS NOTE.

This Note is assignable by Lender in whole or in part without the consent of Borrower (including, without limitation, any assignment to SBA or any third-party at SBA's direction) and is assignable by Borrower with the written consent of Lender. Borrower acknowledges that in order to disburse the loan proceeds to Borrower at the earliest possible time, Lender has prepared this Note based on its current understanding of the PPP. Borrower agrees that, if Lender deems it necessary or appropriate to amend this Note in any respect in order for this Note to comply with the PPP or for the SBA to guarantee all or any portion of the amounts outstanding under this Note, Borrower will sign and deliver to Lender any amendment to this Note or a new note in replacement of this Note, with the terms of any amendment or new Note retroactive to the date of this Note. Borrower will also execute any additional documentation the Lender or SBA requests that Lender or SBA believes is consistent with the purposes of the PPP.

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

11.  STATE-SPECIFIC PROVISIONS:

Unless otherwise prohibited by law, the following additional provisions will apply:

Release of Lender. In consideration of the agreement of the Lender to provide this Note, and other good and valuable consideration, which consideration is agreed by Borrower to be good and sufficient, Borrower RELEASES, ACQUITS AND FOREVER DISCHARGES the Lender, its directors, officers, shareholders, agents, contractors, employees, affiliates, attorneys, successors and assigns from any and all claims, demands, liens, damages, actions or suits, of whatsoever nature or character, whether statutory (including without limitation usury and deceptive trade practices claims), in contract or in tort, known or unknown, which have accrued or may accrue to Borrower or any creditor or affiliate of Borrower on account of any injuries, damages or losses or otherwise arising out of or in any way connected to (i) any extension of credit by the Lender to Borrower on or prior to the date hereof, or (ii) any matter or thing done, omitted or suffered to be done by the Lender, its directors, officers, shareholders, agents, employees, affiliates, attorneys, predecessors or assignors on or prior to the date hereof.

Notwithstanding anything else contained herein, this Note is not secured and there are no guarantors.

SBA Form 147 (Hanmi Bank 01.22.2021)

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

12. BORROWER 'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

---

**BORROWER:** Eric Greathouse

By _____
711447A2B1B3404...

By _____

By _____

By _____

---

SBA Form 147 (Hanmi Bank 01.22.2021)

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

**ADDITIONAL AND CORRECTION DOCUMENTS AGREEMENT**
**(ERRORS AND OMISSIONS AGREEMENT)**

RE:   **Loan by Lender, Capital Plus Financial, LLC to** Eric Greathouse_____ **, a(n)**

Independent Contractor_____ **, in the amount of $** 15665_____ .

In consideration of Capital Plus Financial, LLC, located at 2247 Central Drive, Bedford, Texas 76021, (hereinafter called "Lender") making the above loan, each of the undersigned, jointly and severally, do hereby agree as follows:

1.      In the event the promissory note or any other document or other writing evidencing, securing or pertaining to the above loan is misplaced or lost or incorrectly reflects the true and correct terms, conditions or provisions of the loan in the opinion of Lender, each of the undersigned shall execute, acknowledge, initial and deliver to Lender all documents and other writings that Lender requests which Lender deems necessary to replace or correct any misplaced, lost or incorrect document or other writing; and

2.      In the event Lender deems it necessary that any additional documents or other writings be executed by any of the undersigned in connection with or pertaining to the above loan which have not been requested to be executed by the undersigned on or before the date hereof (or which were requested but not executed for any reason whatsoever), each of the undersigned shall execute, acknowledge, initial and deliver to Lender all such additional documents or other writings that Lender may reasonably request in connection with such loan; and

3.      Each of the undersigned further agrees to execute, acknowledge, initial and deliver to Lender all such documents and writings and pay such additional sums requested by Lender within ten (10) days after Lender requests same.  Any request by Lender shall be deemed given and received on the earlier of (i) the date such request is actually received by one of the undersigned or (ii) three (3) days after such request is mailed, postage prepaid and addressed to any of the undersigned at the last known address of the undersigned in accordance with the records of Lender, whichever date occurs first; and

4.      If any of the undersigned refuses or fails within such ten (10) day period to (i) execute, acknowledge, initial and deliver any such document or other writing requested by Lender, or (ii) pay any such fees, expenses, costs or interest, each of the undersigned, jointly and severally, agree to pay to Lender all losses, damages and expenses paid or incurred by Lender in any manner emanating therefrom or connected therewith, including (but not limited to) reasonable attorney's fees, and each of the undersigned further agree that any such failure or refusal shall constitute a default and an Event of Default under the note and all other writings evidencing, securing or pertaining to said loan; and

5.      Each of the undersigned hereby acknowledges that Lender is relying upon this agreement in making the above loan and that Lender would not make such loan unless each of the undersigned execute and deliver this agreement; and each of the undersigned further agree that this agreement (i) shall inure to the benefit of Lender and each subsequent holder of the note evidencing such loan, and (ii) shall be binding upon each of the undersigned and upon each of the heirs, personal representatives, successors and assigns of each of the undersigned.

EXECUTED  4/18/2021

**BORROWER:**

Eric Greathouse_____ ,

A(n)                      Independent Contractor

By: _____

Name: Eric Greathouse_____

Title: Owner_____

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

**BUSINESS PURPOSE STATEMENT**
**(SBA Paycheck Protection Program)**


I, Eric Greathouse            , Owner      of  Eric Greathouse                    ,

a(n) _____ Independent Contractor          , state as follows:


1.     To induce Capital Plus Financial, LLC, 2247 Central Drive, Bedfiord, Texas 76021, to

extend credit to Eric Greathouse                    , a(n) _____ Independent Contractor   ,

I represent that the proceeds of the loan in the amount of $ 15665                    will   be   used

only for the following purpose(s):


Business related purposes as authorized by the U.S. Small Business Administration Paycheck
Protection Program and as specified in the loan application.

2.     I understand that the above-stated purpose is for business or commercial purposes only

and that you are relying upon these representations in not making Truth-in-Lending disclosures pursuant

to 15 U.S.C. Section 1601, in connection with this loan.


**EXECUTED** 4/18/2021


_(Authorized Person)_

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

### NOTICE - NO ORAL AGREEMENTS

RE:    Loan by Lender, Capital Plus Financial, LLC to Borrower, Eric Greathouse                    ,

   a(n)                    Independent Contractor      , in the amount of $ 15665                    .


### THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE

### PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR

### SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

### THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.


"Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation.


**EXECUTED**  4/18/2021


**LENDER:**

CAPITAL PLUS FINANCIAL, LLC

By:    _____

Name:   Farzana Giga

Title:    CFO


**BORROWER:**

Eric Greathouse

A(n)                    Independent Contractor

By:    _____

Name:   Eric Greathouse

Title:   Owner

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

## WRITTEN CONSENT OF GOVERNING BODY
### (SBA PPP loan)

Pursuant to applicable law, the undersigned, being the appropriate governing body pursuant to the governing documents for the borrowing entity designated on the signature page hereof ("Company"), hereby consent to the adoption of and do hereby adopt the following resolutions and acknowledge that Capital Plus Financial, LLC ("Lender") is relying on the effectiveness hereof in making a loan to Company under the Paycheck Protection Program Second Draw Loans of the Small Business Administration ("SBA") as authorized under Section 311 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act ("Economic Aid Act"):

RESOLVED, that the undersigned hereby authorizes the Authorized Person named below as the appropriate person pursuant to the governing documents of the Company ("Authorized Person"), for and on behalf and in the name of the Company, to take such action necessary for the Company to borrow money and to obtain credit from the Lender, with its principal office located in Dallas, Texas, in the amount stated in the promissory note executed by Company and payable to Lender (the "Loan") and dated on or about the date hereof, hereinafter called the "Loan", including any renewals, extensions, consolidations or rearrangements of such indebtedness, upon such terms and at such rates as he or she deems reasonable;

BE IT FURTHER RESOLVED, that the undersigned hereby authorizes the Authorized Person, for and on behalf and in the name of the Company to prepare, execute and deliver any and all applications, certifications, promissory notes, loan agreements and any and all other documents and to perform any and all acts which may be necessary or proper to effect the borrowing and to execute and deliver any and all instruments and perform any and all acts required by the Lender and/or the SBA in connection with any matters herein contained, including any renewals, extensions, consolidations or rearrangements of such indebtedness, upon such terms and at such rates as the Authorized Person, in his or her sole discretion, deems reasonable;

BE IT FURTHER RESOLVED, that all the acts and deeds done or to be done by the Authorized Person, in connection with the execution and delivery of any promissory notes, loan agreements, and any and all other documents, and any and all acts which may be necessary or proper to effect the borrowing, are hereby authorized, adopted, ratified, confirmed and approved as the acts and deeds of Company;

BE IT FURTHER RESOLVED, that the Authorized Person be and is hereby authorized and directed to take such other action and deliver such additional instruments in the name of and on behalf of Company, or otherwise to do all such further acts and things that the Authorized Person shall deem necessary or proper in order to effectively perform all of the obligations and agreements expressed to be kept and performed by Company, pursuant to the provisions of any promissory notes, loan agreements and any and all other documents and to perform any and all acts which may be necessary or proper to effect the borrowing described above;

BE IT FURTHER RESOLVED, that any government agency, including but not limited to, the SBA, may also rely on this Written Consent when identifying any Authorized Person for purposes of any loan guaranty, loan forgiveness, or other government program related to the Loan; and

BE IT FURTHER RESOLVED, that any and all acts authorized pursuant to this Written Consent and performed prior to the execution of this Written Consent are hereby ratified and approved. This Written Consent shall be continuing and shall remain in full force and effect until written notice of its revocation shall have been delivered to the Lender and receipt acknowledged by the Lender in writing.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK - SIGNATURES ON FOLLOWING PAGE]**

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

**IN WITNESS WHEREOF,** the undersigned have executed this consent effective as of  4/18/2021

**AUTHORIZED PERSON:**

Eric Greathouse

A(n)                                    Independent Contractor

By: _____

Name:  Eric Greathouse

Title:  Owner

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

Form **W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

### Request for Taxpayer
### Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

Give Form to the
requester. Do not
send it to the IRS.

*Print or type.*
*See Specific Instructions on page 3.*

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

Eric Greathouse

**2** Business name/disregarded entity name, if different from above

Eric Greathouse

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only **one** of the following seven boxes.

[X] Individual/sole proprietor or single-member LLC
[ ] C Corporation
[ ] S Corporation
[ ] Partnership
[ ] Trust/estate

[ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner.  Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

[ ] Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

2103 W 5th St

**6** City, state, and ZIP code

Russellville          AR          72801

Requester's name and address (optional)

**7** List account number(s) here (optional)

---

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

**Social security number**

[ ][ ][ ] – [ ][ ] – [ ][ ][ ][ ]

or

**Employer identification number**

[ ][ ] – [ ][ ][ ][ ][ ][ ][ ]

---

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here**

Signature of U.S. person ▶ *Eric Greathouse*   Date ▶ 4/18/2021

DocuSigned by:
7S1447A2B1B3404...

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9.*

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

DocuSign Envelope ID: 3424CDB9-3987-48B9-A86C-D846687B7A3F

**Information and Bank Account Certification and Authorization:**

I acknowledge that the lender has to its best ability confirmed the ownership and active status of the depository account at the Financial Institution listed as required in the documents submitted to the SBA for PPP loan approval. I understand, acknowledge, and agree that the Lender or its' partners can share any financial information that I have provided with along with the SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, or any of its affiliates or partners for the purpose of compliance, accuracy, and verification of good standing to comply with all SBA Loan Program Requirements and or any and all SBA reviews.

I, Eric Greathouse_____ certify in good faith to the below information to be the rightful and correct owner of the account and am responsible for the accuracy and information provided below and authorize the lender and or its affiliates or partners to deposit the loan proceeds on the company's behalf. I further certify that the account information provided below is true and accurate in all material respects.

BANK NAME:   Evolve Bank & Trust

ACCOUNT NAME:   Eric Greathouse

ACCOUNT NUMBER:   ████████████

ROUTING NUMBER:   084106768