# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

| | | |
|---|---|---|
| **Eric Greathouse**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Capital Plus Financial, LLC** and **Crossroads Systems, Inc.**,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:21–cv–1243–BRW |

---

### Brief in Support of Defendants Capital Plus Financial, LLC's and Crossroads Systems, Inc.'s Motion to Dismiss

---

Katherine G. Treistman (*pro hac vice*)
Andrew D. Bergman (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002–2755
Tel.:  (713) 576–2400
Fax:  (713) 576–2499
Katherine.Treistman@arnoldporter.com
Andrew.Bergman@arnoldporter.com

Eric N. Whitney (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019–9710
Tel.:  (212) 836–8000
Fax:  (212) 836–8689
Eric.Whitney@arnoldporter.com

Karen P. Freeman (Ark. Bar No. 2009094)
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
4206 South J.B. Hunt Drive, Suite 200
Rogers, Arkansas 72758
Tel.:  (479) 464–5650
Fax:  (479) 464–5680
Kfreeman@mwlaw.com

Graham Talley (Ark. Bar No. 2015159)
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Tel.:  (501) 688–8800
Fax:  (501) 688–8807
Gtalley@mwlaw.com

*Counsel for Defendants Capital Plus Financial, LLC and Crossroads Systems, Inc.*

Submitted:  February 25, 2022

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

I.   Plaintiff's Claims ............................................................................................................ 4

II.  Plaintiff's Class Action Allegations. ............................................................................. 6

III. Plaintiff's Lack of Support for Personal Jurisdiction. ................................................... 7

   A.   The Complaint. ........................................................................................................... 7

   B.   Declaration in Support of Defendants' Challenge to Personal Jurisdiction. .................... 7

LEGAL STANDARD ............................................................................................................. 10

ARGUMENT .......................................................................................................................... 12

I.   The Complaint Should be Dismissed for Lack of Personal Jurisdiction over Both CPF and Crossroads. ......................................................................................................... 12

   A.   The Court May Not Exercise General Jurisdiction Over Defendants. ........................... 14

   B.   The Court May Not Exercise Specific Jurisdiction Over Defendants. .......................... 15

   C.   The Exercise of Personal Jurisdiction over Defendants Would Not Comport with Traditional Notions of Fair Play and Substantial Justice. ............................................. 20

II.  If the Court Exercises Personal Jurisdiction, the Complaint Should Still be Dismissed for Lack of Standing and for Failure to State a Claim. ................................... 23

   A.   Plaintiff's Breach of Contract Claims Should be Dismissed. ......................................... 23

      1.   Plaintiff Lacks Article III Standing. ..................................................................... 24

      2.   Plaintiff Lacks Statutory Standing. ...................................................................... 26

      3.   Plaintiff Failed to Plead the Existence of a Contract. ........................................... 29

      4.   Plaintiff's Contract Claims Are Released. ............................................................ 30

   B.   Plaintiff's Unjust Enrichment Claim Should be Dismissed. ........................................... 31

      1.   Plaintiff Fails to Plead that He Conferred the Benefit on Defendants that he Seeks to Recover, and his Pleadings Affirmatively Establish that he Did Not Confer the Benefit. ................................................................................................ 32

      2.   Plaintiff's Unjust Enrichment Claim, like his Contract Claims, is also Released. ...... 35

   C.   Crossroads Should be Dismissed Because Plaintiff Fails to Properly Plead an Alter Ego Claim. ......................................................................................................... 35

CONCLUSION ....................................................................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Aon Risk Servs., Inc. v. Meadors,*
   100 Ark. App. 272, 267 S.W.3d 603 (2007)...........................................................................29

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).................................................................................................................11

*Auer v. Trans Union, LLC,*
   902 F.3d 873 (8th Cir. 2018)...................................................................................................25

*Baldwin v. Saline RC Operations, LLC,*
   2014 WL 1874876 (E.D. Ark. May 8, 2014)...........................................................................31

*Bell Paper Box, Inc. v. Trans Western Polymers, Inc.,*
   53 F.3d 920 (8th Cir. 1995) .....................................................................................................19

*Bender v. Xcel Energy, Inc.,*
   507 F.3d 1161 (8th Cir. 2007) .................................................................................................31

*Brown v. Lockheed Martin Corp.,*
   814 F.3d 619 (7th Cir. 2016) ...................................................................................................14

*Burlington N. R. Co. v. Sw. Elec. Power Co.,*
   925 S.W.2d 92 (Tex.App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex.
   1998) ........................................................................................................................................33

*Campbell v. Asbury Auto., Inc.,*
   2011 Ark. 157 381 S.W.3d 21 (2011).......................................................................................34

*Carlsen v. GameStop, Inc.,*
   833 F.3d 903 (8th Cir. 2016) ...................................................................................................11

*Centers v. Centennial Mortg., Inc.,*
   398 F.3d 930 (7th Cir. 2005) ...................................................................................................30

*Creative Calling Solutions, Inc. v. LF Beauty Ltd.,*
   799 F.3d 975 (8th Cir. 2015) ...................................................................................................14

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)......................................................................................................13, 14, 15

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006)..................................................................................................................24

*David O. Kemp, P.C. v. Nationwide Agribusiness Ins. Co.*,
2012 WL 13019688 (N.D. Tex. June 12, 2012) ....................................................33

*Davis v. Davis*,
2016 Ark. App. 33, 480 S.W.3d 878 (2016)..........................................................31

*Dews v. Halliburton Indus., Inc.*,
288 Ark. 532, 708 S.W.2d 67 (1986)...................................................................32

*Elizabeth M. Byrnes, Inc. v. Fountainhead Commercial Capital, LLC*,
2021 WL 5507225 (C.D. Cal. Nov. 24, 2021)...................................................3, 25

*Epps v. Stewart Info. Servs. Corp.*,
327 F.3d 642 (8th Cir. 2003) .........................................................................20, 36

*Fastpath, Inc. v. Arbela Technologies Corp.*,
760 F.3d 816 (8th Cir. 2014) .................................................................13, 14, 17

*Federated Mut. Ins. Co. v. FedNat Holding Co.*,
928 F.3d 718 (8th Cir. 2019) ...............................................................................12

*Friedman v. Farmer*,
2014 WL 11516249 (E.D. Ark. Mar. 25, 2014) .....................................................37

*Frigillana v. Frigillana*,
266 Ark. 296, 584 S.W.2d 30 (1979)..............................................................33, 34

*Hartness v. Nuckles*,
2015 Ark. 444, 475 S.W.3d 558 .....................................................................32, 33

*In re Holiday Intervals, Inc.*,
931 F.2d 500 (8th Cir. 1991) (contemplating that a loan to which promissory
note is attached could be a unilateral contract)......................................................29

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945)...............................................................................13, 20, 21

*Johnson v. JPMorgan Chase Bank, N.A.*,
488 F. Supp. 3d 144 (S.D.N.Y. 2020).....................................................................4

*JP Morgan Chase Bank, N.A. v. Robinson & Hoskins, L.L.P.*,
2017 WL 4479652 (Tex. App.—Dallas Oct. 9, 2017, no pet.)...............................26

*Kipp v. Ski Enter. Corp. of Wisc., Inc.*,
783 F.3d 695 (7th Cir. 2015) ...............................................................................14

*Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt.*,
519 F.2d 634 (8th Cir. 1975) ...............................................................................20

*Lifshutz v. Lifshutz,*
    61 S.W.3d 511 (Tex. App.—San Antonio 2001, pet. denied) ................................36

*M & E Endeavours LLC v. Cintex Wireless LLC,*
    2016 WL 1590642 (Tex.App.—Houston. [1st Dist.] Apr. 19, 2016, no pet.)
    (mem. op.) ................................................................................................................33

*Martinez v. Aero Caribbean,*
    764 F.3d 1062 (9th Cir. 2014) ................................................................................14

*McKay v. Cap. Res. Co. Ltd.,*
    327 Ark. 737, 940 S.W.2d 869 (1997)....................................................................26

*Miller v. Redwood Toxicology Lab., Inc.,*
    688 F.3d 928 (8th Cir. 2012) ..................................................................................12

*Monkton Ins. Servs., Ltd. v. Ritter,*
    768 F.3d 429 (5th Cir. 2014) ..................................................................................14

*Moore v. Wallace,*
    90 Ark. App. 298, 205 S.W.3d 824 (2005).............................................................31

*New England Power Generators Ass'n, Inc. v. F.E.R.C.,*
    707 F.3d 364 (D.C. Cir. 2013) ...............................................................................25

*Nguyen v. Watts,*
    605 S.W.3d 761 (Tex.App.—Houston [1st Dist.] 2020, pet. denied)......................33

*One Bank & Trust, N.A. v. Galea,*
    2012 WL 6019091 (E.D. Ark. Dec. 3, 2012).........................................................31

*Pangaea, Inc. v. Flying Burrito, LLC,*
    647 F.3d 741 (8th Cir. 2011) ..................................................................................12

*Patin v. Thoroughbred Power Boats Inc.,*
    294 F.3d 640 (5th Cir. 2002) ..................................................................................20

*Perry v. Baptist Health,*
    358 Ark. 238, 189 S.W.3d 54 (2004)......................................................................29

*Pinehurst Neuropsychology, PLLC v. First-Citizens Bank & Trust Co.,*
    2021 WL 4460273 (M.D.N.C. Sept. 29, 2021).................................................3, 25

*Pro-Comp Mgmt., Inc. v. R.K. Enterprises, LLC,*
    366 Ark. 463, 237 S.W.3d 20 (2006)......................................................................34

*Profiles, Inc. v. Bank of Am., Corp.,*
    453 F. Supp. 3d 742 (D. Md. 2020) ...................................................................3, 25

*Pucket v. Hot Springs Sch. Dist. No. 23-2*,
    526 F.3d 1151 (8th Cir. 2008) ......................................................24

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ......................................................................12

*Scherer v. Wells Fargo Bank, N.A.*,
    No. H–20–cv–1295, Order, Dkt. # 20
    (S.D. Tex. Apr. 29, 2020) (unpublished) ......................................25

*Scholtes v. Signal Delivery Serv., Inc.*,
    548 F. Supp. 487 (W.D. Ark. 1982) .............................................29

*Shell Oil Co. v. F.E.R.C.*,
    47 F.3d 1186 (D.C. Cir. 1995) ......................................................25

*Spokeo v. Robins*,
    578 U.S. 330 (2016) .................................................................24, 32

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
    300 S.W.3d 348 (Tex. App.—Dallas 2009, pet. denied) ...............34

*Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*,
    646 F.3d 589 (8th Cir. 2011) ........................................................20

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................15, 16, 17, 19

*Weatherly v. Ford Motor Co.*,
    994 F.3d 940 (8th Cir. 2021) ...................................................12, 30

*Wells Dairy, Inc. v. Food Movers Int'l, Inc.*,
    607 F.3d 515 (8th Cir. 2010) ........................................................11

*Whaley v. Esebag*,
    946 F.3d 447 (8th Cir. 2020) ..................................................13, 21

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ......................................................................21

**Statutes**

ARK. CODE ANN. § 4–1–201(b)(21) ......................................................28

ARK. CODE ANN. § 4–3–103(a)(6) ........................................................28

ARK. CODE ANN. § 4–3–104(a) .......................................................26, 27

ARK. CODE ANN. § 4–3–108(b) ...........................................................27

ARK. CODE ANN. § 4–3–301 ................................................................................................27

ARK. CODE ANN. § 4–3–309 ...........................................................................................27, 28

ARK. CODE ANN. § 4–4–418(d) .........................................................................................28

ARK. CODE ANN. § 16–4–101 ............................................................................................12

TEX. BUS. & COMM. CODE § 3.104(a) ...............................................................................26

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(A) .....................................................................................................12

Fed. R. Civ. P. 10(c) ............................................................................................................30

Fed. R. Civ. P. 12(b)(1) ...........................................................................2, 4, 10, 11, 32, 37

Fed. R. Civ. P. 12(b)(2) ..............................................................................10, 23, 37

Fed. R. Civ. P. 12(b)(6) ...........................................................2, 4, 10, 11, 12, 30, 37

Fed. R. Civ. P. 23(b)(3) ..........................................................................................................6

## INTRODUCTION

In this putative class action, one named Plaintiff, Arkansas resident Eric Greathouse, asserts breach of contract and unjust enrichment claims against Capital Plus Financial LLC ("CPF"), a Texas-based, certified Community Development Financial Institution ("CDFI"), and its Texas-based parent company Crossroads Systems, Inc. ("Crossroads").  Plaintiff's Complaint (ECF 1) ("Complaint") alleges that he and a putative class of prospective borrowers under the Paycheck Protection Program ("PPP") did not receive PPP loans that CPF allegedly agreed to fund, and that CPF wrongfully withheld the loans while receiving PPP loan processing fees and credit advances for use in funding PPP loans.  Plaintiff also claims that CPF's parent, Crossroads, is its alter ego.

The Court lacks personal jurisdiction over both Defendants and should grant Defendants' Motion to Dismiss this case on that basis alone.  The Complaint offers no allegations to justify exercising personal jurisdiction over either Defendant in Arkansas, and in fact, none exists. Neither Defendant is registered to transact business in Arkansas, has any operations in Arkansas, owns any property in Arkansas, maintains any offices in Arkansas, nor has any employees or registered agents in Arkansas.  Plaintiff also fails to plead that Defendants' conduct relating to the claims he asserts in this case created any connection with Arkansas, and, indeed, no such connection exists.  The only nexus to Arkansas proffered in this case is that the named Plaintiff happens to currently reside there, which, as a matter of law, is of no consequence in the jurisdictional analysis.

Beyond its glaring jurisdictional defects, the Complaint fails to plead sufficient facts to establish both standing to sue and actionable claims for relief on Plaintiff's causes of action— breach of contract and unjust enrichment—and, subject to and without waiver of Defendants' challenge to personal jurisdiction, this Motion also requests dismissal of both causes of action

under Rules 12(b)(1) and 12(b)(6).  Plaintiff's contract claim fails because PPP loans were widely available from thousands of lenders, and a borrower's inability to obtain a PPP loan from one specific lender is not an injury sufficient to confer Article III standing.  The documents Plaintiff claims to be an enforceable "contract" are not a contract, but, even if they were, they are unenforceable for two reasons:  first, the purported contract would be governed by Article 3 of the UCC, which does not permit Plaintiff to enforce it, and second, the purported contract contains a release that precludes recovery on Plaintiff's claims in this case.  Plaintiff's unjust enrichment claim fails because he does not allege that he conferred either of the alleged "benefits" on Defendants that he seeks to disgorge.  Plaintiff's claims against Crossroads also fail for the additional reason that they are based on an alleged "alter ego" relationship between Crossroads and CPF, supported by nothing more than threadbare allegations that Crossroads was merely in "control" of CPF, and which are grossly inadequate to state a claim of alter-ego liability.

CPF is committed to its borrowers' satisfaction and takes seriously any concerns that are raised about its services.  Neither CPF nor its parent company Crossroads violated any contractual obligations relating to any PPP loans, and the vast majority of CPF's borrowers have reported no issues receiving their loans.  Because Plaintiff has opted to sue Defendants to redress the issues he raises, his Complaint must be measured against the standards applicable to jurisdiction and pleading in federal court.  In that regard, Plaintiff's allegations in the Complaint come up demonstrably short and the Court should dismiss the case.

## BACKGROUND

CPF is a CDFI that principally serves the Hispanic community in Texas.  A CDFI certification is a designation given by the U.S. Department of the Treasury to organizations that specialize in providing financial services in low-income communities and to people who lack access to financing.  CPF has been a certified CDFI since 2017 and since that time has focused

principally on providing residential mortgage financing in the Hispanic single-family residential markets in the Dallas, Fort Worth, Houston, and San Antonio areas.  In December 2017, CPF was acquired by Crossroads, a holding company focused on investing in businesses that promote economic vitality and community development.  Beginning in around June 2020, the United States Small Business Administration ("SBA") approved CPF to act as a lender for the PPP.

Plaintiff's Complaint allegedly arises from CPF's PPP lending program.  He claims that he was approved for a PPP loan from CPF and that CPF failed to fund the loan.  *See, e.g.*, Complaint ¶¶ 82–84.  While Defendants accept these allegations as true for purposes of their challenge to the pleadings, it bears noting from the outset that these allegations are unequivocally false, and Defendants dispute them.  CPF <u>did</u> fund Plaintiff's PPP loan.  The only reason he did not receive the funds was because his bank, to which the funds were transferred, <u>rejected</u> the funds and Plaintiff failed to provide the additional verifying documentation required for the funds to be accepted.

Plaintiff's factual misrepresentations are perhaps not entirely surprising.  Federal courts nationwide have rejected most varieties of private-party claims seeking damages against lenders in connection with loans under the PPP, including, among others, claims by a prospective borrower against a PPP lender for violations of the CARES Act, *Profiles, Inc. v. Bank of Am., Corp.*, 453 F. Supp. 3d 742, 751 (D. Md. 2020); claims for fraudulent concealment and unfair competition by a prospective borrower against a PPP lender, *Elizabeth M. Byrnes, Inc. v. Fountainhead Commercial Capital, LLC*, 2021 WL 5507225, at *4–*5 (C.D. Cal. Nov. 24, 2021); claims by a prospective borrower against a lender for delaying payment of a PPP loan, *Pinehurst Neuropsychology, PLLC v. First-Citizens Bank & Trust Co.*, 2021 WL 4460273, at *3 (M.D.N.C. Sept. 29, 2021); and claims by "agents" seeking "fees" from lenders for helping borrowers apply for PPP loans.

*Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 149 (S.D.N.Y. 2020).  Plaintiff's misleading claim in this case, that CPF "failed to fund" a loan that it agreed to make, suggests that litigants seeking to exploit the PPP for private gain are simply running out of ideas.

As explained below, the Complaint is grossly defective on its face and should be dismissed for several reasons, most notably that the Court lacks personal jurisdiction over both Defendants. Should this case proceed past the initial pleading stage (and it should not), Defendants would vigorously dispute Plaintiff's claim that CPF did not fund his loan.  In the meantime, Defendants will accept Plaintiff's allegations in the Complaint as true only for purposes of this motion, consistent with the standards for evaluating motions to dismiss under Rule 12(b)(6) and facial challenges to subject-matter jurisdiction under Rule 12(b)(1), which Defendants raise by this Motion to Dismiss in addition to and without waiver of the challenge to personal jurisdiction.

## I.      Plaintiff's Claims.

Plaintiff, a current resident of Russellville, Arkansas, filed the Complaint in this case on December 29, 2021.  Complaint ¶ 10.  The Complaint alleges that Plaintiff, who is a sole proprietor of an insurance inspection business also in Russellville, *id.* ¶¶ 10, 73, applied to receive a PPP loan from CPF on or about April 8, 2021.  *Id.* ¶ 75.  He alleges that the SBA approved his PPP loan in the amount of $15,665.00 on or about April 9, 2021.  *Id.* ¶¶ 76–77.  According to the Complaint, on April 18, 2021, Plaintiff received a PPP promissory note (the "Note") and "accompanying documents for him to sign," *id.* ¶ 78, which he, in turn, signed and returned the same day.  *Id.* ¶ 81.

The Note and accompanying documents, which Plaintiff describes in paragraph 80 of the Complaint, and which he attaches as Exhibit A to the Complaint, included the following:

> 1.  The Note itself, signed only by Plaintiff, in which he agrees to pay back the PPP loan and provides the various payment and other terms (*id.*, Ex. A at 1–6 (PDF 36–41));

4

2. An "Additional and Correction Documents Agreement (Errors and Omissions Agreement)," signed only by Plaintiff, which provides for replacement or execution of other documents in connection with the loan if necessary (*id.*, Ex. A at 7 (PDF 42));

3. A "Business Purpose Statement," signed only by Plaintiff, stating that he intends to use the PPP loan for "Business related purposes as authorized by the U.S. Small Business Administration Paycheck Protection Program and as specified in the loan application[]" (*id.*, Ex. A at 8 (PDF 43));

4. A "Notice–No Oral Agreements," signed by both Plaintiff and CPF, indicating that the written agreement between the parties shall represent the final agreement of the parties and that there are no unwritten oral agreements (*id.*, Ex. A at 9 (PDF 44));

5. A "Written Consent of Governing Body," signed only by Plaintiff, verifying that he has authority on behalf of the borrowing entity to borrow and repay the contemplated loan (*id.*, Ex. A at 10–11 (PDF 45–46));

6. A standard IRS W-9 form, signed by Plaintiff and listing Plaintiff's address (*id.*, Ex. A at 12 (PDF 47)); and

7. An "Information and Bank Account Certification and Authorization," that is not signed by Plaintiff (or anyone else), but that purports to authorize the lender on Plaintiff's behalf to transfer loan funds to his bank account. *Id.*, Ex. A at 13 (PDF 48).

Plaintiff alleges that on April 18, 2021, he was advised by email that his loan was approved and would be funded, yet that he did not actually receive the funds. *Id.* ¶ 82–83. He goes on to allege that CPF "fail[ed] to fund his PPP loan." *Id.* ¶ 84.

The Complaint asserts two causes of action against both Defendants CPF and Crossroads: (1) breach of contract and (2) unjust enrichment. The breach of contract claim against CPF alleges that the "Note and accompanying Loan Documents" are "binding, enforceable agreements" requiring CPF to tender Plaintiff's requested PPP loan and that CPF violated the contract by not doing so, causing damages in an amount no less than the amount of the loan itself. *Id.* ¶ 106; *see id.* ¶¶ 113, 117. The breach of contract claim as to Crossroads is not based on any alleged contract that Plaintiff had with Crossroads, but rather on the allegation that Crossroads was "in control over

CPF" when CPF failed to fund Plaintiff's PPP loan and that Crossroads is liable to Plaintiff "as CPF's alter ego." *Id.* ¶¶ 121, 123.

The second claim, unjust enrichment, is asserted "only in the alternative, to the extent Plaintiff's breach of contract claims fail to adequately compensate Plaintiff." *Id.* ¶ 126. However, unlike Plaintiff's contract claims, the unjust enrichment claim does <u>not</u> seek damages for the allegedly un-funded PPP loan. Rather, the unjust enrichment claim seeks to disgorge benefits that CPF and Crossroads allegedly received in the form of "PPPLF advances and PPP loan processing fees based, at least in part, on the unfunded loan[] of the Plaintiff[.]" *Id.* ¶ 128; *see also id.* ¶ 135 (seeking to "disgorge … for the benefit of Plaintiff … proceeds that [Defendants] unjustly received as a result of Plaintiff's … PPP loan[.]"). The PPPLF, or "Paycheck Protection Program Liquidity Facility" that Plaintiff refers to is a credit facility administered by the Federal Reserve from which PPP lenders may borrow. *Id.* ¶ 63. The PPP loan processing fees are fees paid by the SBA to lenders who extend PPP loans. *Id.* ¶ 24–25. However, nowhere in the Complaint does Plaintiff allege that he (or any other borrower) actually paid any PPP loan processing fees or provided PPPLF advances to either Defendant. To the contrary, he affirmatively pleads that PPP loan processing fees were "payable by the SBA" (*id.* ¶ 4) and that the PPPLF advances were administered by the U.S. Federal Reserve. *Id.* ¶ 63–68.

## II.     Plaintiff's Class Action Allegations.

In addition to asserting his own claims, Plaintiff also seeks to represent a putative nationwide class of other borrowers whose loans he alleges CPF failed to fund. He proposes a class definition that would include "[a]ll persons and entities in the United States who, in 2021, timely applied for PPP loans with defendant CPF as the lender, and who had their loans approved by the SBA but did not receive the PPP loan proceeds." *Id.* ¶ 93. He alleges that the class should proceed as a Rule 23(b)(3) (*i.e.*, damages) class, *id.* ¶ 96, and, with regard to each of his two causes

of action, incorporates the allegedly similar claims asserted by the members of the putative class. *See, e.g.*, *id.* ¶¶ 106, 113, 121, 123, 126–28, 131.

III.    **Plaintiff's Lack of Support for Personal Jurisdiction.**

A.    **The Complaint.**

Missing from Plaintiff's Complaint is any section or set of allegations specifically addressing personal jurisdiction in the forum state of Arkansas. Indeed, the Complaint mentions Arkansas only three times: (1) alleging that Plaintiff currently resides in Russellville, Arkansas, *id.* ¶ 10; (2) alleging that Plaintiff currently maintains his business in Russellville, Arkansas, *id.* ¶ 73; and (3) in one of the attached documents, the W-9 form, Plaintiff appears to have handwritten his current home address. *Id.*, Ex. A at 12 (PDF 47).

Regarding CPF and Crossroads, however, the Complaint discloses only connections between Defendants and other states. For CPF, the Complaint alleges that both its state of incorporation and principal place of business are maintained in Texas. *Id.* ¶ 11. As to Crossroads, the Complaint alleges that its state of incorporation is Delaware and that its principal place of business is in Texas. *Id.* ¶ 12. The Complaint pleads that CPF serves the Hispanic community in Texas (*id.* ¶ 39) and that Crossroads maintains a headquarters in Texas. *Id.* ¶ 59. The documents attached to the Complaint further reiterate CPF's contacts with Texas, including in provisions Plaintiff expressly calls out in the Complaint. *Id.* ¶ 107; *see also id.*, Ex. A at 7–8, 10 (PDF 42,–43, 45) (all referencing CPF's principal office location in Texas). None of these documents reference any connection between either Defendant and Arkansas.

B.    **Declaration in Support of Defendants' Challenge to Personal Jurisdiction.**

Given the extraordinary lack of allegations regarding any possible contacts between either Defendant and Arkansas for purposes of personal jurisdiction, CPF and Crossroads respectfully submit to the Court, the declaration of Ms. Farzana Giga ("Decl. of F. Giga") (attached as **Exhibit**

A) for consideration in connection with Defendants' challenge to personal jurisdiction—and <u>only</u> in connection with the personal-jurisdiction challenge (<u>not</u> Defendants' 12(b)(1) or 12(b)(6) challenges). Ms. Giga is the Chief Financial Officer of both CPF and Crossroads. Decl. of F. Giga ¶ 2. She is responsible for overseeing both companies' financial affairs, including, for CPF, oversight of its PPP lending. *Id.* ¶ 4.

As detailed in the declaration, "CPF is not registered to transact business in Arkansas. CPF owns no property in Arkansas, maintains no offices in Arkansas, has no registered agent in Arkansas, has no employees residing in Arkansas, and has no operations in Arkansas." *Id.* ¶ 6. The same is true of Crossroads. *Id.* ¶ 7. Ms. Giga also explains that CPF's PPP lending activities were coordinated in substantial part by a third-party lender service provider, Arizona-based Blueacorn PPP, LLC ("Blueacorn"). *Id.* ¶ 9. Blueacorn is not a PPP lender itself, but rather conducts advertising to prospective PPP borrowers, assists borrowers with the process of applying for PPP loans and seeking approval from the SBA, and matches borrowers with SBA-approved lenders, who in turn may fund the borrower's loan subject to their own underwriting and other requirements. *Id.* ¶¶ 9–10. Neither CPF nor Crossroads have any involvement or control in Blueacorn's advertising, nor has either Defendant ever conducted any advertising targeted to Arkansas residents or otherwise. *Id.* ¶ 9.

Ms. Giga's declaration further explains that, because the PPP application and SBA-approval processes are coordinated with the borrower entirely by Blueacorn, a borrower does not apply directly for a PPP loan from CPF, but rather submits an application first to Blueacorn and Blueacorn then designates a lender when it submits the application for SBA approval. *Id.* ¶ 11–12. Once the SBA approves the loan, Blueacorn then prepares the loan documents in CPF's name, which Blueacorn then provides to the borrower. *Id.* ¶ 12. Because of the way in which the process

is structured, "[a] prospective borrower would have no contact with CPF, and would not even know that CPF is its potential lender, until the loan is approved by the SBA and he or she signs the promissory note and other loan agreement documentation, which identify CPF as the lender, and upon application of CPF's underwriting requirements to which payment of the loan is subject." *Id.* ¶ 11. Even in transmitting the promissory note and associated documents for the borrower to sign, it is Blueacorn, not CPF, that actually communicates with the borrower. *Id.* CPF's role in PPP lending is thus limited to applying its own internal underwriting requirements to loan applications it receives from Blueacorn, making a decision of whether to fund the loan, and then ultimately funding the loan if appropriate. *Id.* These operations—including decisions whether to fund PPP loans and the actual funding—all occur from CPF's offices in Texas. *Id.* ¶ 10.

Plaintiff's PPP loan application followed this same process. *Id.* ¶ 12. While Plaintiff's Complaint pleads generally that CPF contracted with Blueacorn to "identify borrowers to whom CPF could make PPP loans and assist in the PPP paperwork process" (Complaint ¶ 46), curiously, Plaintiff omitted Blueacorn's participation from the allegations about his own PPP loan. Instead Plaintiff alleges that he directly "applied for a PPP loan with CPF." *Id.* ¶ 75. He does, however, claim that, after CPF allegedly failed to fund his PPP loan, he "made numerous calls to CPF and Blueacorn to try to follow up and get funded." *Id.* ¶ 84 (emphasis added). This suggests either that Plaintiff made numerous phone calls to a company unrelated to his PPP loan, for which he purportedly applied "with CPF," or that he was simply unsuccessful in his efforts to artfully plead around Blueacorn's role in his loan application process. Regardless, Mr. Giga's declaration makes clear that Plaintiff's PPP loan application was received and facilitated by Blueacorn:

> CPF did not direct any communications, advertisements, or documents to Mr. Greathouse until after his loan was approved by the SBA and was in the process of being serviced and funded. CPF received Mr. Greathouse's signed promissory note and loan

> agreement documentation from Blueacorn.  It was not until CPF received Mr. Greathouse's signed documents from Blueacorn that it made a decision regarding funding of the loan, based on its own underwriting requirements.

Decl. of F. Giga ¶ 12.

Regarding Plaintiff's purported "follow-up" efforts, he fails to mention—and thus Defendants have attached as **Exhibit B**—an October 2, 2021 email from Plaintiff to CPF in which he not only admits that the application and approval process for requesting his PPP loan was coordinated by Blueacorn, but also, importantly, that he considers CPF to be "a local company to [him]," because he "used to work in Bedford and Euless," Texas.  Emails from Plaintiff E. Greathouse to CPF's E. Donnelly, attached as **Exhibit B**.  Notably, Bedford, Texas, is where CPF is located.  *See* Complaint ¶ 11.  As with Ms. Giga's declaration, Defendants offer Plaintiff's emails only for consideration of its challenge to personal jurisdiction—<u>not</u> the other bases for dismissal set forth in Defendant's Motion to Dismiss and in this accompanying brief in support.

Finally, and regarding the conduct Plaintiff attempts to allege in connection with his unjust enrichment claims—as distinguished from his contract claims—Ms. Giga's declaration explains that the SBA loan processing fees and the PPPLF liquidity advances, both of which are the subject of Plaintiff's unjust enrichment claims, similarly lack any connection to Arkansas.  The PPP lender fees CPF has received were paid from the SBA's Office of Credit and Risk Management in Washington, DC, and have only ever been received into CPF's accounts in Texas.  Decl. of F. Giga ¶ 8.  Similarly, the PPPLF liquidity advances that CPF has received were administered by the Federal Reserve, and have only ever been received and processed by CPF in Texas.  *Id.*

## LEGAL STANDARD

This motion seeks dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(1), and 12(b)(6).  Rule 12(b)(2) requires dismissal of a complaint in which the Court lacks

personal jurisdiction over the Defendants.  "To allege personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state."  *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (alterations and internal quotation marks omitted).  "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction."  *Id.*  The plaintiff's showing must then be "tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto."  *Id.*

Rule 12(b)(1) requires dismissal of a complaint over which the Court lacks subject-matter jurisdiction.  A motion to dismiss for lack of Article III standing is properly considered pursuant to Rule 12(b)(1).  *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) ("if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction.").  In a case such as this, in which a Defendant's 12(b)(1) motion is a "facial attack," involving only matters set forth in the pleadings, "the court restricts itself to the face of the pleadings."  *Id.*  In doing so, the Court should "accept[] as true all facts alleged in the complaint" and "consider only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint."  *Id.* (internal quotation marks, alterations, and citations omitted).

Rule 12(b)(6) requires dismissal of a complaint that fails to state a claim on which relief may be granted.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  For a 12(b)(6) motion, in addition to the pleadings themselves, the Court may properly consider "matters

incorporated by references or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).  If a complaint does state a claim, it may still be dismissed under Rule 12(b)(6) if "the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense." *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 943–44 (8th Cir. 2021).

## ARGUMENT

The Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction.  In the alternative, and subject to and without waiver of Defendants' challenge to personal jurisdiction, the Complaint should be dismissed for lack of standing or for failure to state a claim.[1]

## I.     The Complaint Should be Dismissed for Lack of Personal Jurisdiction over Both CPF and Crossroads.

The lack of personal jurisdiction in this case is glaring.  Apart from Plaintiff's current residence in the forum, the Complaint offers no allegations to support personal jurisdiction over Defendants, and the evidence in the record overwhelmingly proves that neither Defendant has any jurisdictionally relevant connection to Arkansas.  Under Federal Rule of Civil Procedure 4(k)(1)(A), a district court may exercise personal jurisdiction consistent with that of a state court of general jurisdiction in the state where the district court is located—in this case, Arkansas.  Under Arkansas's long-arm statute, state courts may exercise personal jurisdiction to the full extent permitted under the due process clause of the U.S. Constitution.  ARK. CODE ANN. § 16–4–101; *see Pangaea, Inc. v. Flying Burrito, LLC*, 647 F.3d 741, 745 (8th Cir. 2011).

---

[1] In cases involving challenges to both personal jurisdiction and subject-matter jurisdiction (which includes Article III standing), a district court may consider the issue of personal jurisdiction first, when, as is true in this case, personal jurisdiction raises issues that are less complicated.  *See Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999)).

Under the due process clause, the exercise of personal jurisdiction requires that the defendant have sufficient minimum contacts with the forum such that exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The Supreme Court has recognized two different methods of satisfying the "minimum contacts" requirement:  specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  Specific jurisdiction may be exercised where "the suit arises out of or relates to the defendant's contacts with the forum."  *Id.* (alterations omitted).  General jurisdiction may be exercised where the defendant's operations within a state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."  *Id.*

In cases of either specific or general jurisdiction, courts in the Eighth Circuit consider a five-factor test to measure the strength of a defendant's contacts with the forum, with the first three being "of primary importance":  (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.  *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020).  The Eight Circuit applies additional factors in cases involving contract claims:  "A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state."  *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) (internal quotation marks and citations omitted).  In contract cases, "[p]ersonal jurisdiction … does not turn on mechanical tests or on conceptualistic theories of the place of contracting or of performance.  Instead, courts should consider the terms of the contract and its

contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists." *Id.* (internal quotation marks and citations omitted).

Neither the allegations set forth in the Complaint nor the facts before the Court provide a remotely sufficient basis on which to exercise either general *or* specific jurisdiction and demonstrate that both are improper.

### A.      The Court May Not Exercise General Jurisdiction Over Defendants.

General jurisdiction is plainly lacking.    General jurisdiction exists only where the defendant's "affiliations with the State are so continuous and systematic as to render it **essentially at home in the forum State**." *Daimler AG*, 571 U.S. at 139 (emphasis added) (alterations and internal quotation marks omitted); *Creative Calling Solutions, Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (same).   For a corporate defendant, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG*, 571 U.S. at 137 (alterations and internal quotation marks omitted).   Courts have recognized that it is virtually impossible to establish general jurisdiction in a state other than the two paradigms. *E.g.*, *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("[it is] incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").[2]

The Complaint itself defeats any possibility of establishing general jurisdiction.  Plaintiff affirmatively pleads that "Defendant CPF is a limited liability company organized under the laws of the state of Texas with its principal place of business at 2247 Central Drive, Bedford, Texas

---

[2] *See also Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015) ("The [Supreme] Court has identified only two places where [a corporation is essentially at home]:  the state of the corporation's principal place of business and the state of its incorporation."); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (7th Cir. 2016); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("The Supreme Court's … decision in *Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation.").

76021."  Complaint ¶ 11.  He also pleads that "Defendant Crossroads is a corporation organized under the laws of Delaware with its principal place of business at 4515 Cole Avenue, Suite 1600, Dallas, Texas 75205."  *Id.* ¶ 12.  These facts are confirmed by Ms. Giga's declaration.  Decl. of F. Giga ¶¶ 6–7.  And while the Supreme Court has left open "the possibility that in an exceptional case … a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," *Daimler AG*, 571 U.S. at 139 n.19, this is not an "exceptional case."  Both Defendants have <u>no operations</u> in Arkansas, let alone any that would render them "at home" in Arkansas, *see* Decl. of F. Giga  ¶¶ 6–7, and the Complaint makes no attempt to say otherwise. Simply put, there is no basis for general jurisdiction in Arkansas over Defendants for whom there is no dispute that their states of incorporation and principal places of business are all in other states.

### B.    The Court May Not Exercise Specific Jurisdiction Over Defendants.

The Court may not exercise specific jurisdiction either.  Specific jurisdiction requires that the "defendant's suit related conduct … create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  This inquiry "focuses on the relationship among the defendant, the forum, and the litigation."  *Id.* at 284 (internal quotation marks and citations omitted).  To that end, the Supreme Court has emphasized two key principles for evaluating specific jurisdiction.  First, the defendant's relationship with the forum must arise out of "contacts that the defendant <u>himself</u> creates with the forum State."  *Id.* at 284 (emphasis in original) (internal quotation marks and citations omitted).  Second, only the "defendant's contacts with the forum State itself" are relevant, "not the defendant's contacts with persons who reside there."  *Id.* at 285. In this case, none of Defendants' suit-related conduct—either as alleged or in fact—has any connection to Arkansas, let alone a "substantial connection."  *Id.* at 284.

The only times the Complaint even mentions Arkansas are in paragraphs 10 and 73, where Plaintiff alleges that he currently resides and works in Arkansas.  Complaint ¶¶ 10, 73.  But the Plaintiff's locus has no relevance to personal jurisdiction over <u>Defendants</u>.  Indeed, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284 (citing cases).  This is because "the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the **defendant's conduct that must form the necessary connection with the forum State** that is the basis for its jurisdiction over him." *Id.* at 285 (emphasis added).  And, as explained, neither CPF nor Crossroads conduct <u>any</u> operations in Arkansas:  no employees in Arkansas, no offices in Arkansas, and no advertising in Arkansas. Decl. of F. Giga ¶¶ 6–9.

Beyond Plaintiff's residence and business location, the case arises principally from Plaintiff's request for a PPP loan, which he alleges CPF refused to fund in breach of a contract. Complaint ¶¶ 73–88.  As to Crossroads, Plaintiff does not allege that he had a contract with Crossroads, but rather that Crossroads exercised control over CPF's conduct. *E.g.*, *id.* ¶¶ 118–24. Plaintiff's only other claim, unjust enrichment, is based on PPP loan fees and PPPLF advances that he alleges that Defendants wrongfully received because CPF did not fund his loan, while, again, under the direction and control of Crossroads. *Id.* ¶¶ 127–32.  None of this conduct comes anywhere close to providing a hook for personal jurisdiction in Arkansas with respect to either the breach-of-contract or unjust enrichment claims.

**Breach of contract.**  While, as explained, the Complaint fails to allege any express link between Defendants and forum, a charitable reading of the contract claims suggests that the pertinent forum contact would be that CPF allegedly entered into a contract with Plaintiff

presumably while he was in Arkansas (although he does not actually plead this), *see id.* ¶¶ 10, 73, 50, 106, and that Crossroads is connected to Arkansas because it was in control of CPF when it entered into the contract (although he does not plead this either). *See id.* ¶ 120–21. But even this generous reading of the Complaint still cannot provide a basis for specific jurisdiction, because it is well-settled law in the Eighth Circuit that "[a] **contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state**." *Fastpath, Inc.*, 760 F.3d at 821 (emphasis added).

Nor do the alleged contract's "terms or contemplated future consequences" involve any conduct relating to Arkansas. *Id.* The promissory note and other loan documentation that Plaintiff attached to the Complaint, and which he claims to have created the contract at issue (Complaint ¶¶ 109–10), never mention Arkansas even once, with the exception of Plaintiff listing his own address on a standard W-9 form. *Id.*, Ex. A at 12 (PDF 47). This is a far cry from the "substantial connection" to Arkansas required to establish specific jurisdiction. *Walden*, 571 U.S. at 284. Much the opposite, the loan documents attached to the Complaint repeatedly reference Texas as CPF's principal office and the location from which any loan would be funded. *See, e.g.*, Complaint, Ex. A at 7 (PDF 42) ("In consideration of Capital Plus Financial, LLC, located at 2247 Central Drive, Bedford Texas 76021, (hereinafter called 'Lender') making the above loan ….").[3] And as made clear in Ms. Giga's declaration, all of CPF's operations and personnel that underwrite loans and make decisions related to funding loans are located in Texas. Decl. of F. Giga ¶ 10. In

---

[3] *See also* Complaint, Ex. A at 8 (PDF 43) ("I, Eric Greathouse, Owner of Eric Greathouse, a(n) Independent Contractor, state as follows: 1. To induce Capital Plus Financial, LLC, 2247 Central Drive, Bedford, Texas 76021, to extend credit to Eric Greathouse, a(n) Independent Contractor, I represent …."); *id.* at 10 (PDF 45) (authorizing CPF, the "Lender" to "take such action necessary for the Company [i.e., Plaintiff] to borrow money and to obtain credit from the Lender, with its principal office located in Dallas, Texas, in the amount stated in the promissory note ….").

sum, neither the alleged contract nor the conduct relating to funding can provide a hook for specific jurisdiction in Arkansas.

**Unjust enrichment.**   Similarly, there is no conceivable connection between Defendants and Arkansas for purposes of the unjust enrichment claim.  This claim rests on the allegations that CPF and Crossroads were unjustly enriched by "PPP loan processing fees" and by "PPPLF advances" that they received.  Complaint ¶¶ 128–31.  But Ms. Giga's declaration makes clear that all PPP loan fees that CPF received were paid by the SBA's Office of Credit Risk Management in Washington, DC and were received into CPF's accounts in Texas.  Decl. of F. Giga (**Exhibit A**) ¶ 8.  Further, all PPPLF liquidity advances that CPF received were administered by the Federal Reserve, and were received and processed by CPF in Texas.  *Id.*  Neither the fees nor the advances have any connection to Arkansas.

**Other factors.**   The factors used by the Eighth Circuit for measuring forum contacts similarly compel the conclusion that there is no personal jurisdiction over the Defendants as to both the contract and unjust enrichment claims.  For example, the "nature and quality" and the "quantity" of the contacts are, to the extent they can be discerned at all, slim at best.  Even if there were a contract between Plaintiff and CPF (which, as explained below, Plaintiff has failed to allege), Ms. Giga's declaration makes clear that virtually all borrower-facing communications and services were conducted by its third-party contractor, Blueacorn, a non-party in this case.  *Id.* ¶ 9– 11.  Blueacorn conducted public-facing advertising, provided PPP loan applications to borrowers, maintained the online system for completing the applications, submitted the applications to the SBA for approval, and transferred the actual loan documentation between borrowers and lenders. *Id.*  Whatever connections there may have been between Blueacorn and Plaintiff or between Blueacorn and Arkansas, these are not sufficient to establish personal jurisdiction over <u>Defendants</u>

in Arkansas.  *See Walden*, 571 U.S. at 284 (contacts between third parties and forum state cannot satisfy "defendant-focused" minimum contacts inquiry); *see also Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995) ("The use of interstate facilities, such as telephones or mail … cannot alone provide the minimum contacts required by due process." (internal quotation marks omitted)).

Similarly, the "relation of the cause of action to the contacts" is virtually non-existent because neither the alleged contract at issue in the contract claim, nor the alleged fees and advances at issue in the unjust enrichment claim, in any way implicate Arkansas.  Plaintiff himself admits that PPP loans were made widely available to American businesses (Complaint ¶ 1), that "numerous … business owners across the country" applied for PPP loans (Complaint ¶ 8), and that "CPF reportedly processed 472,036 PPP loans."  Complaint ¶ 5.  And the promissory note attached to the Complaint, on which Plaintiff's contract claim is based, was adapted from a standard form available on the SBA's website.  *Compare* Complaint, Ex. A (PDF 36) *with* U.S. SMALL BUSINESS ADMINISTRATION, *SBA Standard Loan Note (Form 147)*, https://www.sba.gov/sites/default/files/2020-08/040720note-508.pdf.  Simply put, PPP loans, and agreements relating to PPP loans, were available in all U.S. states and thus no individual loan or loan agreement would have any relationship to the borrower's home state.

The same holds true for the PPP loan fees and PPPLF advances that form the basis of Plaintiff's unjust enrichment claims against Defendants.  Plaintiff admits that the PPP loan fees were paid by the SBA and that the PPPLF advances were administered by the Federal Reserve.  Complaint ¶¶ 27, 63–66; *accord* Decl. of F. Giga ¶ 8.  Just like the PPP loans themselves, PPP loan fees and PPPLF advances have no connection to the borrower's home state.

**Crossroads**.  Even if Plaintiff might be able to establish some pertinent contacts between CPF and Arkansas (and he cannot), there is no basis for applying those contacts to Crossroads. Again, Plaintiff alleges no specific, suit-related conduct by Crossroads except bare and unsupported allegations that it controlled and directed CPF.  *E.g.*, Complaint ¶¶ 52, 120, 130. Thus, at best, Plaintiff presumably wants (although the Complaint does not specifically ask) the Court to impute CPF's contacts to Crossroads.  This approach also fails.  A court may exercise personal jurisdiction over a parent company by imputing its subsidiary's contacts <u>only</u> when the subsidiary itself is subject to the court's personal jurisdiction.  *E.g.*, *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (citing cases).  And, as explained, CPF lacks the minimum contacts with Arkansas required to establish personal jurisdiction.  Even if CPF were somehow subject to personal jurisdiction in Arkansas, the case law imputing jurisdictional contacts to a parent company allows this to be done only when the subsidiary is an <u>in-state</u> subsidiary.  *See, e.g.*, *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011); *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648–49 (8th Cir. 2003); *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt.*, 519 F.2d 634, 637 (8th Cir. 1975).  Of course, CPF is plainly <u>not</u> an in-state subsidiary (*see* Complaint ¶ 11; Decl. of F. Giga ¶ 6), and the threadbare attempt at alleging forum contacts in the Complaint provides no justification for the Court to expand the boundaries of imputed-contacts jurisprudence.

### C.     The Exercise of Personal Jurisdiction over Defendants Would Not Comport with Traditional Notions of Fair Play and Substantial Justice.

Finally, even if Plaintiff could demonstrate the minimum contacts between Defendants and Arkansas needed to establish general or specific jurisdiction (and he cannot), the exercise of jurisdiction would not meet the second requirement under *International Shoe*, namely that maintaining the suit in the forum "not offend traditional notions of fair play and substantial

justice." *International Shoe Co.*, 326 U.S. at 316 (internal quotation marks omitted).  The Supreme Court has explained that this requirement focuses on whether the exercise of jurisdiction would be "reasonable," an analysis which is guided by four factors:   (1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interest in obtaining convenient and effective relief; (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the interest of the several States in furthering fundamental substantive social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  These factors overlap with the last two (non-dispositive) factors under the Eighth Circuit's test for measuring jurisdictional contacts.  *Whaley*, 946 F.3d at 452.  All of these factors weigh heavily against maintaining suit in Arkansas.

The first factor—"the forum state's interest in adjudicating the dispute"—easily favors dismissal.  Arkansas has virtually no interest in providing a forum for this dispute.  Plaintiff admits that he wanted the loan from CPF, because CPF was local to Texas, where Plaintiff <u>used to be located</u>, rather than Arkansas, where he is currently located.  *See* Emails from E. Greathouse to E. Donnelly (Oct. 2, 2021).  As explained, the alleged contract does not reference Arkansas, nor does it designate any particular event to occur in Arkansas.  *See* Complaint, Ex. A at 1–11 (PDF 36–46).  This case is also not one in which the forum state has a generalized interest in providing a forum for an injured resident.  Because PPP loans were widely available and were fully backed by the SBA, any "injury" to Plaintiff was limited to his inability to get money under an essentially gratuitous federal program.

The second factor—"the plaintiff's interest in obtaining convenient and effective relief"— similarly favors dismissal.  Apart from Plaintiff's own choice to file this case in Arkansas, there is no reason to believe that maintaining suit in Arkansas (subject to Defendants' 12(b)(1) and

12(b)(6) challenges set forth in this motion) would be more convenient or effective than doing so in, for example, Texas, where at least personal jurisdiction over Defendants could easily be established.  Plaintiff admits that CPF was a local company to him because he used to work in Texas (*see* Emails from E. Greathouse to E. Donnelly (Oct. 2, 2021) (**Exhibit B**) and so litigating in Texas would not require him to submit to a foreign or unfamiliar forum.  Furthermore, most of Plaintiff's counsel are based in Washington, DC and New York (Complaint at 34) and would be required to travel regardless of whether the case proceeds, if at all, in Arkansas or Texas.

The third factor—"the interstate judicial system's interest in obtaining the most efficient resolution of controversies"—weighs in favor of dismissal.  As explained, neither CPF nor Crossroads have any operations or employees in Arkansas, and rather maintain virtually the entirety of their businesses in Texas, including making decisions about whether to fund PPP loans. Decl. of F. Giga ¶ 6–10.  Nearly all of the witnesses in this case would be located in Texas, except for Plaintiff, who, again, previously worked in Texas.  Emails from E. Greathouse to E. Donnelly (Oct. 2, 2021).  There is thus no efficiency to be gained from litigating in Arkansas.  This conclusion is only bolstered by the fact that Plaintiff has sued on behalf of a putative class.  He affirmatively admits that CPF "reportedly processed 472,036 PPP loans" and did so for borrowers "across the country."  Complaint ¶¶ 8, 52.  In the event a class were ever certified, it would make no sense to consolidate those claims in Arkansas—which has no significance to the class apart from being the current residence of the first plaintiff to sue—rather than Texas, the state in which all of Defendants' decisions regarding the putative class members' PPP loans would have been made.  Decl. of F. Giga ¶ 10.

The final factor—"the interest of the several States in furthering fundamental substantive social policies"—similarly supports dismissal.  Of course, any one state has little interest relative

to another in adjudicating whether an individual plaintiff should have received money under a federal government program.  But to the extent Plaintiff is alleging misconduct by CPF and Crossroads—Texas, rather than Arkansas, would have the superior interest in regulating the conduct of these Texas-based and Texas-regulated financial institutions.

*     *     *

Personal jurisdiction is lacking in this case under well-settled precedent.  Even a charitable reading of the Complaint discloses little if any nexus to Arkansas apart from it being the state in which Plaintiff currently resides.  And the record before the Court establishes that both Defendants lack the connection to Arkansas necessary for the exercise of either general or specific jurisdiction. This is not a close case, and Defendants respectfully request that the Court dismiss the Complaint under Rule 12(b)(2), after which it need not consider the alternative bases for dismissal presented in this Motion.

## II.    If the Court Exercises Personal Jurisdiction, the Complaint Should Still be Dismissed for Lack of Standing and for Failure to State a Claim.

Should the Court determine that it may exercise personal jurisdiction in this case, Plaintiff's Complaint should still be dismissed under Rules 12(b)(1) and 12(b)(6) for lack of standing and for failure to state a claim.

### A.    Plaintiff's Breach of Contract Claims Should be Dismissed.

Plaintiff's breach of contract claims against Defendants should be dismissed for four reasons.  First, Plaintiff lacks Article III standing because he fails to demonstrate a legally-cognizable injury.  Second, Plaintiff lacks statutory standing, because the Note he seeks to enforce is a negotiable instrument governed by Article 3 of the Uniform Commercial Code ("UCC"), and under Article 3, a borrower is not one of the parties permitted to enforce a negotiable instrument. Third, Plaintiff failed to plead the existence of a contract because the documents he claims are a

23

"contract" lack any actual promise by Defendants to fund the loan.  Finally, even if Plaintiff did plead the existence of a contract, he has pled himself out of court, because the documents he claims to be the contract contain a release that preclude his claims in this case.

### 1.    Plaintiff Lacks Article III Standing.

Plaintiff lacks Article III standing to sue because he fails to demonstrate that his inability to obtain a PPP loan from CPF was a concrete injury.  Under Article III of the Constitution, federal courts may adjudicate only actual cases or controversies, for which standing is a prerequisite.  *See Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).  Article III standing requires that Plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo v. Robins*, 578 U.S. 330, 338 (2016).  "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element."  *Id.* (alterations, internal quotation marks, and citations omitted).  The "injury in fact" requirement demands that a plaintiff establish "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id.* at 339.

Plaintiff fails to demonstrate a concrete injury because the Complaint does not allege that Plaintiff even <u>tried</u> to obtain a PPP loan from another authorized lender despite that PPP loans were broadly available, and he affirmatively pleads that other lenders offered PPP loans as well.  *See* Complaint ¶¶ 5, 52 (pleading that "Bank of America, PNC Bank, TD Bank and Wells Fargo" participated in PPP lending); *see also id.* ¶ 23 ("Congress provided for PPP loan processing and funding through private lenders …."); *id.* ¶ 49 ("SBA section 7(a)-approved lenders were approved to make PPP loans …").  Plaintiff's claim that he allegedly could not obtain from one lender a type of loan that was widely available, without alleging that he even tried to obtain the

loan elsewhere, is at best too speculative to serve as injury to support Article III standing. *See New England Power Generators Ass'n, Inc. v. F.E.R.C.*, 707 F.3d 364, 369 (D.C. Cir. 2013) ("conceivable yet 'hypothetical' scenario" not an injury sufficient to support standing); *cf. Auer v. Trans Union, LLC*, 902 F.3d 873, 879 (8th Cir. 2018) (injury that may have occurred "theoretically" not sufficient to support standing); *Shell Oil Co. v. F.E.R.C.*, 47 F.3d 1186, 1202 (D.C. Cir. 1995) (rejecting standing where "allegations of injury rest on a hypothetical scenario").

Indeed, other courts have recognized that because there are thousands of PPP lenders, a plaintiff's inability to obtain a PPP loan from <u>one particular lender</u> is not a cognizable injury. *See Pinehurst Neuropsychology, PLLC v. First-Citizens Bank & Trust Co.*, 2021 WL 4460273, at *3 (M.D.N.C. Sept. 29, 2021); *see also Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 755 (D. Md. 2020) ("Since … there are thousands of institutions participating in PPP, and several that accept loans from new customers, BofA, by definition, has not denied Plaintiffs access to the PPP."); *Scherer v. Wells Fargo Bank, N.A.*, No. H–20–cv–1295, Order, Dkt. # 20 at 3 (S.D. Tex. Apr. 29, 2020) (unpublished) ("As of April 16, 2020, the Administration has identified 4,975 lenders. Plaintiffs fails to show how Plaintiffs would suffer irreparable injury if not given access to a loan specifically from Wells Fargo. Plaintiffs also fail to explain why Plaintiffs could not obtain loans under the PPP through another lender."); *Elizabeth M. Byrnes, Inc. v. Fountainhead Commercial Capital, LLC*, 2021 WL 5507225, at *4 (C.D. Cal. Nov. 24, 2021) (dismissing claim in which plaintiff's only injury was the "loss of use of money [from the PPP]," when plaintiff caused her own harm "by refraining from applying elsewhere"). Accordingly, Plaintiff lacks Article III standing because the Complaint fails to demonstrate a concrete injury stemming from his inability to obtain a PPP loan <u>from CPF</u>.

2.      **Plaintiff Lacks Statutory Standing.**

Plaintiff's breach of contract claim also fails for lack of statutory standing under Article 3 of the UCC.  Plaintiff's contract claims are based exclusively on the Note and its accompanying documents.  *See* Complaint ¶ 106 (alleging that "[t]he standard form promissory Note and accompanying Loan Documents that CPF and the members of the proposed Class entered into are binding, enforceable agreements."); *see also id.*, Ex. A (PDF 36–48).[4]  Plaintiff's contract claim against Crossroads rests on the same basis, because he alleges that Crossroads is liable on the contract claims only as CPF's alter ego.  *See id.* ¶ 123.  Under Article 3, however, a promissory note is considered a "negotiable instrument," which only certain parties may enforce, and a borrower, like Plaintiff, is not one of those parties.

**The Note is a "negotiable instrument."**   Under Arkansas Law, a promissory note is considered a "negotiable instrument" subject to Article 3 of the UCC.  *See McKay v. Cap. Res. Co. Ltd.*, 327 Ark. 737, 739, 940 S.W.2d 869, 870 (1997); ARK. CODE ANN. § 4–3–104(a).[5]  A negotiable instrument is defined as:

> an unconditional promise … to pay a fixed amount of money, with or without interest … if it (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money ….

---

[4] Regarding the "accompanying documents," Plaintiff affirmatively pleads that these were all "included" as part of the Note.  Complaint ¶ 80 ("[t]he Note also included an Additional and Correction Documents Agreement … ; a Business Purpose Statement; a Notice–No Oral Agreements … ; a Written Consent of Governing Body … ; an IRS W-9 … ; and an Information and Bank Account Certification and Authorization form ….").

[5] We assume, but do not necessarily agree, that Arkansas law would apply to issue of enforceability of the Note.  The applicable substantive law does not matter, however, because Article 3 has been adopted in most states, including Texas, the state in which Defendants were located at the time the Note was created.  And under Texas law, promissory notes are similarly considered negotiable instruments. *See e.g.*, *JP Morgan Chase Bank, N.A. v. Robinson & Hoskins, L.L.P.*, 2017 WL 4479652, at *2 (Tex. App.—Dallas Oct. 9, 2017, no pet.).  Texas has also enacted the same material provisions as Arkansas for determining whether a note is a negotiable instrument and who may enforce a negotiable instrument.  *See* TEX. BUS. & COMM. CODE § 3.104(a).

*Id.*  The Note at issue in this case  meets this definition of a "negotiable instrument."

First, a promise is "payable to the bearer" if it "indicates that the person in possession of the promise or order is entitled to payment."  *Id.* § 4–3–109(a).  In this case, on April 18, 2021, the date the note was issued, CPF is clearly defined as the "lender" and is identified as the recipient of the promise to pay.  *See* Complaint, Ex. A at 1 (PDF at 36) (defining "Lender" as "Capital Plus Financial" and indicating that "Borrower promises to pay to the order of Lender ….").

Second, a promise is "payable at a definite time" if it is payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order issued[.]"ARK. CODE ANN. § 4–3–108(b).  The Note satisfies the specification of a "definite time" because the Note provides that the "Borrower must pay principal and interest payments every month, beginning the eleventh (11th) month from the date of end of the Covered Period" and that "Payments must be made on the first calendar day in the months they are due."  Complaint, Ex. A at 2 (PDF 37).

Finally, the Note meets the third definitional requirement of a "negotiable instrument", because it does not require the borrower to do any other acts apart from payment.  *See* Complaint, Ex. A at 1–5 (PDF at 36–40).  Accordingly, the Note is a negotiable instrument.

**Plaintiff may not enforce the Note.**  Under Article 3, a negotiable instrument may only be enforced by (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person in possession of the instrument who is entitled to enforce the instrument pursuant to § 4–3–309 or § 4–3–418(d).  ARK. CODE ANN. § 4–3–301. Plaintiff does not qualify as any of these three parties eligible to enforce the Note.

First, Plaintiff is not the holder of the Note.  Under the UCC, a "holder" is defined as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified

person that is the person in possession." ARK. CODE ANN. § 4–1–201(b)(21).  While Plaintiff does

<u>possess</u> the Note, the Note does not state that it is payable to any bearer, nor does it identify Plaintiff

as a person to whom the Note is payable.  *See* Complaint, Ex A at 1–5 (PDF 36–41).  To the

contrary, the Note identifies a different payee altogether, namely CPF.  *Id.*, Ex. A at 1 (PDF 36)

(providing that "Borrower promises to pay to the order of Lender the amount of $15665" and

defining "Lender" as "Capital Plus Financial").  Plaintiff is simply not the Note's holder.  Indeed,

Article 3 separately defines the obligor/payor on a note as the "maker."  ARK. CODE ANN. § 4–3–

103(a)(6) ("'Maker' means a person who signs or is identified in a note as a person undertaking to

pay.").  And nothing under Article 3 gives the maker of a negotiable instrument the right to enforce

it.

Second, Plaintiff is not a "nonholder in possession of the instrument who has the rights of

a holder."  The Note provides that CPF, the payee and Lender, may assign, sell, or transfer the note

to other parties *See* Complaint, Ex. A at 3 (PDF 38 §§ 6.A–B).  But no assignment, sale, or transfer

has occurred, nor does Plaintiff allege any of dispositions of the Note.

Finally, Plaintiff is not a person entitled to enforce the Note pursuant to § 4–3–309 or § 4–

3–418(d), which are the final categories of people who may enforce a negotiable instrument,

simply because neither section applies here (ARK. CODE ANN. § 4–3–309 applies to lost, destroyed,

or stolen instruments and ARK. CODE ANN. § 4–4–418(d) applies to acceptance or payment of an

instrument by mistake).

Because Plaintiff does not fall into any of the Article 3 categories of persons permitted to

enforce the Note, he lacks statutory standing to do so, and his breach of contract claims should

accordingly be dismissed.

### 3.      Plaintiff Failed to Plead the Existence of a Contract.

Plaintiff's contract claims also fail, because he does not plead the existence of a contract. The existence of a contract is a bare minimum requirement to bring a claim for breach of contract. *E.g.*, *Perry v. Baptist Health*, 358 Ark. 238, 244, 189 S.W.3d 54, 58 (2004).  In the Complaint, Plaintiff alleges that the "standard form promissory note" and its "accompanying Loan Documents," all attached as Exhibit A to the Complaint, constitute a binding, enforceable contract. Complaint ¶ 106; *see also id.* ¶ 109 (alleging that Exhibit A is a "complete copy" of the loan documents).  But the Note and the attached documents were not a contract requiring CPF to fund a loan to Plaintiff.  While these documents <u>contemplate</u> a forthcoming loan, they lack any express promise by CPF to fund it.  *See id.*, Ex. A at 1–13 (PDF 36–48).  This was by design.  As is common in the commercial lending and other industries, the Note here constituted Plaintiff's offer to enter into a unilateral contract which CPF could accept by performance through funding the loan.  *Scholtes v. Signal Delivery Serv., Inc.*, 548 F. Supp. 487, 491 (W.D. Ark. 1982) ("The traditional distinction between a unilateral contract and a bilateral contract is that, in the former, the offer or promise of one party does not become binding or enforceable until there is performance by the other party, whereas, in the latter, it is not performance which makes the contract binding, but rather than giving of a promise by one party for the promise of the other party."); *see also Aon Risk Servs., Inc. v. Meadors*, 100 Ark. App. 272, 281, 267 S.W.3d 603, 610 (2007) ("Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, and not by their subjective intentions."); *cf. In re Holiday Intervals, Inc.*, 931 F.2d 500, 504 (8th Cir. 1991) (contemplating that a loan to which promissory note is attached could be a unilateral contract).  Because the Note and accompanying documents lack any express promise to fund the loan, and rather merely contemplate a forthcoming loan which Plaintiff

alleges was not funded, the claim as pled establishes nothing more than an unaccepted offer of a unilateral contract.

### 4.       Plaintiff's Contract Claims Are Released.

Finally, even assuming arguendo that Plaintiff has both standing and an enforceable contract (which he does not have), the terms of the loan documents attached to the Complaint—and which Plaintiff contends constitute the contract at issue (Complaint ¶¶ 106, 109)—contain a release of all claims against the Lender.  Section 11 of the Note states:

> In consideration of the agreement of the Lender to provide this Note, and other good and valuable consideration … Borrower RELEASES, ACQUITS AND FOREVER DISCHARGES the Lender , its directors, officers, shareholders, agents, contractors, employees, affiliates, attorneys, successors and assigns **from any and all claims, demands, liens, damages, actions or suits, of whatsoever nature or character**, whether statutory (including without limitation usury and deceptive trade practices claims), in contract or in tort, known or unknown, which have accrued or may accrue to Borrower or any creditor or affiliate of Borrower on account of any injuries, damages or losses or otherwise arising out of or in any way connected to (i) any extension of credit by the Lender to Borrower on or prior to the date hereof, or (ii) any matter or thing done, omitted or suffered to be done by the Lender, its directors, officers, shareholders, agents, employees, affiliates, attorneys, predecessors or assignors on or prior to the date hereof.

Complaint, Ex. A at 5 § 11 (PDF 40) (emphasis added).[6]

Plaintiff's contract claims are covered under the express terms of the release, which applies to "all claims, demands, liens, damages, actions or suits, of whatsoever nature or character" including claims "in contract or tort."  *Id.*  The release applies to any claim that has "accrued or

---

[6] Under Federal Rule 10(c) a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Such documents may require dismissal of the complaint if they demonstrate that the plaintiff is not entitled to relief.  *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate he or she is not entitled to judgment." (alterations in original)); accord *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 943–44 (8th Cir. 2021) ("when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense … a complaint that otherwise states a claim [may] be dismissed under Rule 12(b)(6).").

may accrue to Borrower, "which also applies here, as long as the claim is "arising out of or in any way connected to … any matter or thing done … by the Lender … on or prior to the date [of the Note]"—which similarly applies here because Plaintiffs' claims are expressly connected to things done by CPF on or before the date of the Note, April 18, 2021.  *See, e.g.*, Complaint ¶¶ 78–80 (on April 18, 2021, Plaintiff received the Note identifying CPF as the lender and which included a document "bearing the signature of CPF Chief Financial Officer Giga"); *id.* ¶ 82 ("Also on April 18, 2021, Greathouse was advised by email that his loan was approved and would be funded."); *id.* ¶ 71 (alleging that "CPF received" dozens of "specific cash advances from the PPPLF" throughout February, March, and April 2021).  Any contract that may have been created by the Note plainly releases Plaintiff's claims against CPF.[7]  These types of releases of "any and all claims" are permitted and are routinely enforced. *See, e.g.*, *Bender v. Xcel Energy, Inc.*, 507 F.3d 1161, 1170–71 (8th Cir. 2007); *One Bank & Trust, N.A. v. Galea*, 2012 WL 6019091, at *6 (E.D. Ark. Dec. 3, 2012); *Baldwin v. Saline RC Operations, LLC*, 2014 WL 1874876, at *1 (E.D. Ark. May 8, 2014).  To the extent the Court determines that Plaintiff pled the existence of a contract, Plaintiff has pled himself by alleging a contract that contains a release precluding his claims.

### B.    Plaintiff's Unjust Enrichment Claim Should be Dismissed.

Plaintiff's unjust enrichment claim should be dismissed for two reasons.[8]  First, he fails to plead that he conferred a benefit on Defendants, which is required for a claim of unjust enrichment. Second, to the extent any contract exists, the unjust enrichment claim is covered by the release.

---

[7] Furthermore, section 11 of the Note also releases Crossroads, CPF's parent company, which is both an "affiliate" and a "shareholder" of CPF, and therefore among the released parties subject to the release.  Complaint, Ex. A at 5 § 11 (PDF 40) (emphasis added); *see* Complaint ¶¶ 6, 45, 52 (admitting that Crossroads is CPF's "corporate parent").

[8] It bears noting that, should Plaintiff be able to establish a contract claim (and, as explained, he cannot, *see supra* § II.A), the existence of a contract would preclude him from maintaining a claim for unjust enrichment.  *See, e.g.*, *Davis v. Davis*, 2016 Ark. App. 33, 11–12, 480 S.W.3d 878, 885 (2016); *Moore v. Wallace*, 90 Ark. App. 298, 300–02, 205 S.W.3d 824, 825–27 (2005).

1.   **Plaintiff Fails to Plead that He Conferred the Benefit on Defendants that he Seeks to Recover, and his Pleadings Affirmatively Establish that he Did Not Confer the Benefit.**

Plaintiff's unjust enrichment claim should be dismissed, because he fails to plead that he conferred the benefit on Defendants that he is seeking to recover, and, indeed, his Complaint otherwise confirms that the benefit he seeks to recover was conferred by third parties.   These failures impede Plaintiff's Article III standing to sue and his ability to state a claim.   Accordingly, the Court may dismiss the unjust enrichment claim under either Rule 12(b)(1) *or* 12(b)(6).

**Article III standing.**   First, Plaintiff fails to demonstrate standing.   Standing requires that the plaintiff have (1) suffered and injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision.   *Spokeo*, 578 U.S. at 338; *see id.* ("at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." (alterations, internal quotation marks, and citations omitted)).   An "injury in fact" requires that the plaintiff establish "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339.

The allegations supporting Plaintiff's unjust enrichment claims do not establish that he suffered an injury in fact and rather affirmatively show that he did not.   Under Arkansas law, the "underlying principle" behind unjust enrichment "is that one person should not unjustly enrich himself at the expense of another."   *Dews v. Halliburton Indus., Inc.*, 288 Ark. 532, 536, 708 S.W.2d 67, 69 (1986).   For this reason, "a party is not entitled to expectation damages for unjust enrichment; instead he is entitled to restitution." *Hartness v. Nuckles*, 2015 Ark. 444, 8, 475 S.W.3d 558, 564.   "[T]o measure restitution, the courts look at the defendant's gain or benefit," and thus, "a claimant seeking restitution for unjust enrichment can generally recover the value of

the benefit conferred upon the party unjustly enriched." *Id.*[9]   Accordingly, only the party who

conferred the benefit has standing to seek restitution for the unjust enrichment. *Frigillana v.*

*Frigillana*, 266 Ark. 296, 306, 584 S.W.2d 30, 34 (1979) ("A person who has been unjustly

enriched <u>at the expense of another</u> is required to make restitution <u>to the other</u>"(emphasis added)).[10]

In the case before the Court, Plaintiff lacks standing because he fails to allege that the

benefit he seeks to recover from Defendants is one that <u>he</u> actually conferred.   The unjust

enrichment claim seeks recovery of "PPPLF advances and PPP loan processing fees" that

Defendants have received in connection with allegedly un-funded PPP loans.   Complaint ¶ 128.

But neither Plaintiff nor any other borrower conferred these benefits on CPF.   Rather, and as the

Complaint makes clear, the PPP loan fees were "payable by the SBA" (Complaint ¶ 4) and

liquidity advances under the PPPLF were administered by the Federal Reserve.   Complaint ¶¶ 63–

68.   Thus, not only does Plaintiff fail to plead facts establishing standing to sue for unjust

enrichment, he also pleads facts affirmatively negating standing.

**Failure to state a claim.**   Even if Plaintiff could somehow establish Article III standing to

seek unjust enrichment, his failure to allege that he conferred a benefit renders him unable to state

a claim.   A claim for unjust enrichment requires that the plaintiff conferred a benefit on the

---

[9] As with Plaintiff's contract claims, Defendants assume, but do not necessarily agree that Arkansas would apply to the unjust enrichment claim.  At this stage, however, the applicable law likely does not matter.  For example, under Texas law, where Defendants are located, an unjust enrichment plaintiff may recover only the benefit conferred.  *See Burlington N. R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex.App.—Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998) ("When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon the defendant to restore the benefits to the plaintiff.").

[10] Similarly, under Texas law, only the party who conferred the benefit on the defendant may sue for unjust enrichment.  *Nguyen v. Watts*, 605 S.W.3d 761, 789 (Tex.App.—Houston [1st Dist.] 2020, pet. denied) ("It follows, then, that a plaintiff seeking restitution from an unjustly enriched defendant must show that she is the source of the alleged improper benefit rather than having only a remote or attenuated connection to it."); *M & E Endeavours LLC v. Cintex Wireless LLC*, 2016 WL 1590642, at *3 (Tex.App.—Houston. [1st Dist.] Apr. 19, 2016, no pet.) (mem. op.) ("To recover for unjust enrichment, a plaintiff must show that the defendant has obtained a benefit from her by fraud, duress, or the taking of an undue advantage."); *David O. Kemp, P.C. v. Nationwide Agribusiness Ins. Co.*, 2012 WL 13019688, at *3 (N.D. Tex. June 12, 2012) ("[plaintiff] conferred no benefit on [defendant], as required under an unjust enrichment theory, and thus, his purported claim for unjust enrichment fails.").

defendant.  *See Fringillana*, 266 Ark. at 306, 584 S.W.2d at 34.  The Complaint does not identify any such benefit that Plaintiff conferred on Defendants, and negates Plaintiff's claims by affirmatively pleading that the benefits Plaintiff seeks to recover were conferred by third parties. *See* Complaint ¶¶ 4, 63–68.

Furthermore, as it relates specifically to Plaintiff's allegation that Defendants were unjustly enriched by having received liquidity advances from the PPPLF, *id.* ¶ 128, he pleads himself out of Court by separately alleging that under the PPPLF, "the Federal Reserve Banks ('Reserve Banks') <u>will lend to eligible borrowers [*i.e.*, PPP lenders]</u> on a non-recourse basis, taking PPP Loans as collateral."  *Id.* ¶ 64 (emphasis added) (bracketing in original); *see also id.* ¶ 65 (noting that all "[PPP] lenders that are eligible to originate PPP loans are eligible to borrow under the Facility.").  In other words, Plaintiff affirmatively pleads the purported "benefit" CPF received in the form of PPPLF advances was not a "benefit" that was "retained," but was rather just money borrowed from the Federal Reserve that had to be repaid.  He therefore fails to state a claim for unjust enrichment of the advances, because funds that have to be repaid (and with interest) are not a "benefit," let alone a benefit that is retained, as is required for a claim of unjust enrichment.  *See Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 21 381 S.W.3d 21, 36 (2011) (unjust enrichment is a claim for "restitution of or for property or benefits received, retained, or appropriated" (quoting *Pro-Comp Mgmt., Inc. v. R.K. Enterprises, LLC*, 366 Ark. 463, 469, 237 S.W.3d 20, 24 (2006))).[11]

As matter of law, Plaintiff has not, and cannot, establish his unjust enrichment claim, and the Court should dismiss it.

---

[11] Texas law similarly requires a retained benefit for purposes of an unjust enrichment claim.  *See Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 368 (Tex. App.—Dallas 2009, pet. denied) ("Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain.").

### 2.    Plaintiff's Unjust Enrichment Claim, like his Contract Claims, is also Released.

Finally, even if Plaintiff both has standing to seek unjust enrichment and has stated a claim for doing so (and he has established neither), the claim should still be dismissed because he pled himself out of Court by proffering the loan documents containing the release.  As explained above, the release contained in the Note covers "any and all claims" which "have accrued or may accrue to Borrower" as long as the claim is "arising out of or in any way connected to … any matter or thing done … by the Lender … on or prior to the date [of the Note].  Complaint, Ex. A at 5 § 11 (PDF 40).  Unjust enrichment is covered by "any and all claims;" the claims would have "accrued or may accrue" at the time the release became effective; and the claims are connected to various things done by CPF on or prior to the date of the note, April 18, 2021.  *See, e.g.*, Complaint ¶ 71 (citing advances received by CPF from February 2021 through April 2021); ¶ 53 (alleging that Crossroads earned fees in 2021 throughout the period ending July 31, 2021); ¶ 78 (Plaintiff was provided PPP loan documents April 18, 2021.  To the extent that Plaintiff's Complaint has in any way alleged a contract (*i.e.*, even if he lacks standing or is unable to enforce it), the contract's release requires dismissal of the unjust enrichment claim.

### C.    Crossroads Should be Dismissed Because Plaintiff Fails to Properly Plead an Alter Ego Claim.

The Court should dismiss Plaintiff's breach of contract and unjust enrichment claims against Crossroads for the same reasons those claims against CPF are subject to dismissal, as explained above (*supra* §§ B.1–2), because the claims against Crossroads are not based on conduct by Crossroads itself but rather Plaintiff's allegation that Crossroads was CPF's alter ego.  Complaint ¶ 123 (alleging for breach of contract that "Crossroads is liable to Plaintiff and Class members as CPF's alter ego …."); *id.* ¶¶ 125, 130 (incorporating above allegations into unjust

enrichment claim and alleging for purposes of unjust enrichment that "Crossroads controlled and directed the activities of CPF for purposes of the PPP ….").

Plaintiff's claims against Crossroads should also be dismissed for the independent reason that he fails to properly plead that the corporate separation between Crossroads and CPF should be disregarded.  Under Arkansas law:

> A parent corporation is not liable for the debts of its subsidiary merely because the parent holds the controlling interest or because the two are managed by the same officers.  Rather, it is only when the privilege of transacting business in corporate form has been <u>illegally abused</u> to the injury of a third person that the corporate entities should be disregarded.

*Epps v. Stewart Information Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (citing cases).  The law in Texas, where CPF is incorporated and where both CPF and Crossroads are headquartered, requires:

> (1) such unity between corporation and individual that the separateness of the corporation has ceased, and (2) a finding that holding only the corporation liable would result in injustice. … Mere domination of corporate affairs by a sole stockholder or financial unity between shareholder and corporation will not justify disregard of the corporate entity.

*Lifshutz v. Lifshutz*, 61 S.W.3d 511, 516 (Tex. App.—San Antonio 2001, pet. denied) (internal quotation marks and citations).

The Complaint fails to allege facts sufficient to state an alter ego claim under the law of either state (regardless of which law would apply here).  Plaintiff fails to plead any unity between the companies that would rise to the level of an alter ego beyond mere "control" or "direction."  The Complaint alleges that the Crossroads owns CPF (Complaint ¶¶ 41–42, 61), exercised control over CPF's PPP lending program (*id.* ¶ 52, 60–61, 120–21, 130), received funds that were generated by CPF in connection with PPP lending.  (*id.* ¶ 45, 52–53), and that Crossroads generated income and paid dividends.  *Id.* ¶ 56–58.  But parent companies routinely exercise

ownership and control over subsidiaries (including having overlapping management or directors), and there is nothing unusual about a parent company generating income or paying dividends in connection with business conducted by its subsidiary. Plaintiff has failed to plead anything more than an ordinary parent-subsidiary relationship and cannot state an alter ego claim on the threadbare allegations of control in the Complaint. *See, e.g.*, *Friedman v. Farmer*, 2014 WL 11516249, at *2 (E.D. Ark. Mar. 25, 2014) (plaintiff failed to allege alter ego claim above a speculative level where he alleged that subsidiary was an "agent" of the parent, that the officer was acting on behalf of both companies, and that the companies shared assets). Furthermore, nowhere in the Complaint does Plaintiff offer any non-conclusory allegation that Crossroads's exercise of control over CPF in any way amounts to an abuse of the corporate form, be it through illegality, fraud, or otherwise. *See id.* (rejecting alter ego allegations where complaint failed to "allege that the corporate veil was abused and should be disregarded.").

## CONCLUSION

Accordingly and for the foregoing reasons, Defendants Capital Plus Financial, LLC and Crossroads Systems, Inc. respectfully request pursuant to Federal Rule of Civil Procedure 12(b)(2) that the Court issue an order dismissing the Complaint for lack of personal jurisdiction. In the alternative, and subject to and without waiver of Defendants' challenge to personal jurisdiction, Defendants request that the Court dismiss the Complaint for lack of standing pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). Defendants also request all further relief to which they may be justly entitled.

Respectfully submitted this February 25th, 2022.

Karen P. Freeman
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
4206 South J.B. Hunt Drive, Suite 200
Rogers, Arkansas 72758
Tel.:  (479) 464–5650
Fax:  (479) 464–5680
Kfreeman@mwlaw.com

Graham Talley
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Tel.:  (501) 688–8800
Fax:  (501) 688–8807
Gtalley@mwlaw.com

Katherine G. Treistman (*pro hac vice*)
Andrew D. Bergman (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002–2755
Tel.:  (713) 576–2400
Fax:  (713) 576–2499
Katherine.Treistman@arnoldporter.com
Andrew.Bergman@arnoldporter.com

Eric N. Whitney (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019–9710
Tel.:  (212) 836–8000
Fax:  (212) 836–8689
Eric.Whitney@arnoldporter.com

*Attorneys for Defendants Capital Plus*
*Financial, LLC and Crossroads Systems, Inc.*