## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| **Eric Greathouse, Ernesto Covarrubias, Tiffany Sumrall, and Barbara Myles**, individually and on behalf of all others similarly situated, | §<br>§<br>§<br>§<br>§ | |
| Plaintiff, | §<br>§ | Case No. 4:21–cv–1243–BRW |
| v. | §<br>§ | |
| **Capital Plus Financial, LLC** and **Crossroads Systems, Inc.**, | §<br>§<br>§ | |
| Defendants. | § | |

---

### Defendants Capital Plus Financial, LLC's and Crossroads Systems, Inc.'s Brief in Support of Their Motion to Dismiss Plaintiffs' Amended Class Action Complaint

---

Katherine G. Treistman (*pro hac vice*)
Andrew D. Bergman (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002–2755
Tel.:  (713) 576–2400
Fax:  (713) 576–2499
Katherine.Treistman@arnoldporter.com
Andrew.Bergman@arnoldporter.com

Eric N. Whitney (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019–9710
Tel.:  (212) 836–8000
Fax:  (212) 836–8689
Eric.Whitney@arnoldporter.com

Karen P. Freeman (Ark. Bar No. 2009094)
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
4206 South J.B. Hunt Drive, Suite 200
Rogers, Arkansas 72758
Tel.:  (479) 464–5650
Fax:  (479) 464–5680
Kfreeman@mwlaw.com

Graham Talley (Ark. Bar No. 2015159)
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Tel.:  (501) 688–8800
Fax:  (501) 688–8807
Gtalley@mwlaw.com

*Counsel for Defendants Capital Plus Financial, LLC and Crossroads Systems, Inc.*

Submitted:  April 29, 2022

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 3

I.    The Amended Complaint's Factual Allegations. ................................................. 3

II.   Plaintiffs' Claims. ................................................................................................ 4

III.  Plaintiffs' Class Action Allegations. .................................................................. 5

IV.   Plaintiffs' Inadequate Allegations in Support of Personal Jurisdiction. ............ 5

    A.   Declaration in Support of Defendants' Challenge to Personal Jurisdiction. ................... 6

    B.   Jurisdictional Allegations Added in the Amended Complaint. .......................................... 7

LEGAL STANDARD .................................................................................................. 9

ARGUMENT .............................................................................................................. 10

I.    The Complaint Should be Dismissed for Lack of Personal Jurisdiction over Both CPF and Crossroads. ....................................................................................... 11

    A.   The Court May Not Exercise General Jurisdiction Over Defendants. ........................... 12

    B.   The Court May Not Exercise Specific Jurisdiction Over Defendants. ......................... 13

        1.   The Non-Arkansas Plaintiffs Cannot Establish Specific Jurisdiction. ...................... 14

        2.   Plaintiff Greathouse Cannot Establish Specific Jurisdiction. .................................... 15

        3.   Connections with Third Parties and with the SBA Do Not Establish Specific Jurisdiction Over Defendants for the Named Plaintiffs' Claims. ............................. 21

    C.   The Exercise of Personal Jurisdiction over Defendants Would Not Comport with Traditional Notions of Fair Play and Substantial Justice. ............................................. 25

II.   Plaintiffs' Request for Jurisdictional Discovery Should be Denied. ................. 28

III.  If the Court Exercises Personal Jurisdiction, the Amended Complaint Should Still be Dismissed for Lack of Standing and for Failure to State a Claim. ........................... 30

    A.   Plaintiffs' Breach of Contract Claims Should be Dismissed. ........................................ 30

        1.   Plaintiffs Lack Article III Standing. ........................................................................... 31

        2.   Plaintiffs Lack Statutory Standing. ............................................................................ 32

        3.   Plaintiffs Fail to Plead the Existence of a Contract. .................................................. 36

        4.   Plaintiffs' Contract Claims Are Released. ................................................................. 38

    B.   Plaintiffs' Unjust Enrichment Claims Should be Dismissed. ........................................ 40

        1.   Plaintiff Covarrubias Has No Claim for Unjust Enrichment, because California Law Does Not Recognize Unjust Enrichment as an Independent Cause of Action. .......... 40

2.    Plaintiffs Fail to Plead that they Conferred the Benefit on Defendants that they Seek to Recover, and their Pleadings Affirmatively Establish that they Did Not Confer the Benefit. .................................................................................................... 41

3.    Plaintiffs' Unjust Enrichment Claims, like their Contract Claims, are also Released. .......................................................................................................... 44

C.    Plaintiff Covarrubias Fails to State a Claim Under the California Unfair Competition Law. ............................................................................................................................. 44

1.    Covarrubias Does Not Allege "Unlawful" or "Unfair" Conduct. ............................... 45

2.    Covarrubias Does Not Allege Facts That Would Entitle Him to Any Form of Relief Available Under the UCL. ........................................................................... 47

3.    Covarrubias's UCL Claim is Barred by the "Safe Harbor" Rule. ............................. 49

4.    Covarrubias's UCL Claim is Released. .................................................................... 50

5.    Even if Covarrubias Has Stated a Valid UCL Claim, the Court Should Dismiss It on Abstention Grounds. ......................................................................... 50

D.    Plaintiff Myles Fails to State a Claim Under the North Carolina Unfair and Deceptive Trade Practices Act. ....................................................................................................... 51

1.    Myles Has Not Pled an "Unfair" or "Deceptive" Practice. ........................................ 51

2.    Myles Fails to Satisfy the Requirements of Rule 9(b) ................................................ 53

3.    Myles also Has Not Pled Facts Demonstrating Reliance. .......................................... 54

4.    Myles's NCUDTPA Claim Is Released. .................................................................... 55

E.    All of Plaintiff Myles's Claims Should be Dismissed Because She Was Not an Eligible Borrower under the PPP. ................................................................................................ 56

F.    Crossroads Should be Dismissed Because Plaintiffs Fail to Properly Plead an Alter Ego Claim. ................................................................................................................................ 57

CONCLUSION .................................................................................................................... 59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACS Partners, LLC v. Americon Grp., Inc.*,
2010 WL 883663 (W.D.N.C. Mar. 5, 2010)...........................................................52

*Allied Distribs., Inc. v. Latrobe Brewing Co.*,
847 F. Supp. 376 (E.D.N.C. 1993)........................................................................53

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................10

*Auer v. Trans Union, LLC*,
902 F.3d 873 (8th Cir. 2018) .................................................................................31

*Baldwin v. Saline RC Ops., LLC*,
2014 WL 1874876 (E.D. Ark. May 8, 2014)..........................................................39

*Beasley v. Wells Fargo Bank*,
235 Cal.App.3d 1383, 1 Cal. Rptr. 446 .................................................................50

*Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*,
53 F.3d 920 (8th Cir. 1995) ...................................................................................20

*Bender v. Xcel Ener., Inc.*,
507 F.3d 1161 (8th Cir. 2007) ...............................................................................39

*Biscone v. JetBlue Awys. Corp.*,
681 F. Supp. 2d 383 (E.D.N.Y. 2010), 3 ...............................................................23

*Branch Banking & Tr. Co. v. Thompson*,
418 S.E.2d 694 (N.C. Ct. App. 1992).............................................................52, 53

*Brazil v. Ark. Dep't of Hum. Servs.*,
892 F.3d 957 (8th Cir. 2018) .................................................................................47

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)..........................................................................14, 15, 22, 25

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (7th Cir. 2016) .................................................................................12

*Bumpers v. Cmty. Bank of N. Virginia*,
747 S.E.2d 220 (N.C. 2013).............................................................................52, 54

*Cal. Grocers Assn. v. Bank of Am.,*
    22 Cal.App.4th 205, 27 Cal. Rptr. 2d 396 (1994) ................................................... 50

*Calder v. Jones,*
    465 U.S. 783 (1984) ............................................................................... 17, 18, 19

*Campbell v. Asbury Auto., Inc.,*
    2011 Ark. 157 381 S.W.3d 21 ................................................................................ 43

*Carlsen v. GameStop, Inc.,*
    833 F.3d 903 (8th Cir. 2016) ............................................................................ 9, 10

*Carson v. Nat. Life Ins. Co.,*
    161 N.C. 441, 77 S.E. 353 (1913) .......................................................................... 38

*Carter v. United States,*
    123 Fed. App'x 253 (8th Cir. 2005) ...................................................................... 56

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal.4th 163, 973 P.2d 527 (Cal. 1999) .............................................................. 49

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,*
    752 A.2d 1175 (Del. Ch. 1999) .............................................................................. 58

*In re Checking Account Overdraft Litig.,*
    780 F.3d 1031 (11th Cir. 2015) ............................................................................. 23

*City of Harker Heights v. Sun Meadows Land, Ltd.,*
    830 S.W.2d 313 (Tex. App.—Austin 1992, no writ) ............................................... 41

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ................................................................................................. 47

*Clifford v. Quest Software, Inc.,*
    38 Cal. App. 5th 745, 251 Cal. Rptr.3d 269 (2019) ............................................... 47

*Colgan v. Leatherman Tool Grp., Inc.,*
    135 Cal. App. 4th 663, 38 Cal.Rptr. 3d 36 (2006), *as modified on denial of*
    *reh'g* (Jan. 31, 2006) ........................................................................................... 47

*Container Life Cycle Mgmt. LLC v. Safety Mgmt. Servs. Co.,*
    2020 WL 2843224 (W.D. Ark. June 1, 2020) ......................................................... 57

*Cruson v. Jackson Nat. Life Ins. Co.,*
    954 F.3d 240 (5th Cir. 2020) ................................................................................. 23

*D.W.H. Painting Co., Inc. v. D.W. Ward Const. Co., Inc.,*
    174 N.C.App. 327, 620 S.E.2d 887 (2005) ............................................................. 42

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)...................................................................................11, 12, 13, 24

*Dalton v. Camp*,
  548 S.E.2d 704 (N.C. 2001)..................................................................................52

*Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*,
  869 S.E.2d 34 (N.C. Ct. App. 2022) ................................................................52, 54

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ...............................................................................45

*Davis v. Liberty Mut. Ins. Co.*,
  55 F.3d 1365 (8th Cir. 1995) ................................................................................40

*Dever v. Hentzen Coatings, Inc.*,
  380 F.3d 1070 (8th Cir. 2004) .................................................................................7

*Dews v. Halliburton Indus., Inc.*,
  288 Ark. 532, 708 S.W.2d 67 (1986).....................................................................41

*Doberstein v. G–P Indus., Inc.*,
  2015 WL 6606484 (Del. Ch. Oct. 30, 2015) ....................................................57, 58

*Elizabeth M. Byrnes, Inc. v. Fountainhead Com'l Cap., LLC*,
  2021 WL 5507225 (C.D. Cal. Nov. 24, 2021)........................................................32

*Ener. Marine Servs., Inc. v. DB Mobility Logistics AG*,
  2016 WL 284432 (D. Del. Jan. 22, 2016)...............................................................59

*Env't Rsch. Int'l, Inc. v. Lockwood Greene Engineers, Inc.*,
  355 A.2d 808 (D.C. 1976) ......................................................................................24

*Epps v. Stewart Info. Servs. Corp.*,
  327 F.3d 642 (8th Cir. 2003) ...........................................................................21, 58

*Fastpath, Inc. v. Arbela Techs. Corp.*,
  760 F.3d 816 (8th Cir. 2014) ...........................................................................12, 17

*Federated Mut. Ins. Co. v. FedNat Holding Co.*,
  928 F.3d 718 (8th Cir. 2019) ................................................................................10

*Feitelberg v. Credit Suisse First Boston, LLC*,
  134 Cal.App.4th 997, 36 Cal. Rptr. 3d 592 (2005)................................................50

*First Nat. Bank of Lewisville v. First Nat. Bank of Clinton*,
  258 F.3d 727 (8th Cir. 2001) ................................................................................20

*First Union Nat. Bank v. Richmont Cap. Partners I, L.P.,*
    168 S.W.3d 931 (Tex. App.—Dallas 2005, no pet.)..................................41

*Frigillana v. Frigillana,*
    266 Ark. 296, 584 S.W.2d 30 (1979).............................................................42, 43

*Gibson v. Chrysler Corp.,*
    261 F.3d 927 (9th Cir. 2001) .........................................................................23

*Goodyear Dunlop Tires Ops., S.A. v. Brown,*
    564 U.S. 915 (2011)........................................................................................22

*Hamilton v. Bank of Blue Valley,*
    746 F. Supp. 2d 1160 (E.D. Cal. 2010)......................................................45

*Hartness v. Nuckles,*
    2015 Ark. 444, 475 S.W.3d 558 .................................................................41, 42

*Hinson v. United Fin. Servs., Inc.,*
    123 N.C.App. 469, 473 S.E.2d 382 (1996)...............................................41

*In re Holiday Intervals, Inc.,*
    931 F.2d 500 (8th Cir. 1991) .......................................................................38

*Holmes v. Solon Automated Servs.,*
    231 N.C. App. 44, 752 S.E.2d 179 (2013).................................................44

*Hooked Media Grp., Inc. v. Apple Inc.,*
    55 Cal.App.5th 323, 269 Cal.Rptr.3d 406 (2020)...................................40

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.,*
    797 F.3d 538 (8th Cir. 2015) .......................................................................45

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)...............................................................................11, 25, 26

*J.B.B. Inv. Partners Ltd. v. Fair,*
    37 Cal. App. 5th 1, 249 Cal. Rptr. 3d 368 (2019)...................................37

*Jarrett v. Panasonic Corp. of N. Am.,*
    8 F. Supp. 3d 1074 (E.D. Ark. 2013).........................................................40

*Kahn v. Lasorda's Dugout, Inc.,*
    109 Cal. App. 4th 1118, 135 Cal. Rptr. 790 (2003)................................33

*Kipp v. Ski Enter. Corp. of Wisc., Inc.,*
    783 F.3d 695 (7th Cir. 2015) .......................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134, 63 P.3d 937 (2003) ........................................................47, 48, 49

*Lamb v. Turbine Designs, Inc.*,
    41 F. Supp. 2d 1362 (N.D. Ga. 1999), *aff'd*, 240 F.3d 1316 (11th Cir. 2001) .......................24

*Lawrence v. Wilson*,
    44 Cal. App. 690, 187 P. 30 (1919) ...............................................................48

*Madrinas Brands, LLC v. Horseshoe Bev. Co., LLC*,
    2022 WL 823055 (E.D. Mo. Mar. 18, 2022) ...................................................30

*Marnavi S.p.A. v. Keehan*,
    900 F.Supp.2d 377 (D. Del. 2012)....................................................................59

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) .........................................................................12

*Mathews v Gov't Emps. Ins. Co.*,
    23 F. Supp. 2d 1160 (S.D. Cal 1998)..............................................................47

*Max Factor & Co. v. Kunsman*,
    5 Cal.2d 446, 55 P.2d 177 (1936) ...................................................................51

*McKay v. Cap. Res. Co. Ltd.*,
    327 Ark. 737, 940 S.W.2d 869 (1997)..............................................................33

*MicroStrategy Inc. v. Acacia Rsch. Corp.*,
    2010 WL 5550455 (Del. Ch. Dec. 30, 2010) ..................................................58

*Miller v. Redwood Toxicology Lab., Inc.*,
    688 F.3d 928 (8th Cir. 2012) ...........................................................................10

*Mobil Oil Corp. v. Linear Films, Inc.*,
    718 F. Supp. 260 (D. Del. 1989)......................................................................58

*Modern Leasing Inc., of Iowa v. Falcon Mfg. of Cal., Inc.*,
    888 F.2d 59 (8th Cir. 1989) .............................................................................57

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ...........................................................................12

*Morningside Church, Inc. v. Rutledge*,
    9 F.4th 615 (8th Cir. 2021) ........................................................................18, 19

*New England Power Generators Ass'n, Inc. v. F.E.R.C.*,
    707 F.3d 364 (D.C. Cir. 2013) .........................................................................31

*One Bank & Trust, N.A. v. Galea*,
    2012 WL 6019091 (E.D. Ark. Dec. 3, 2012)........................................................39

*Ozeran v. Jacobs*,
    798 F. App'x 120 (9th Cir. 2020) ...................................................................48

*Pangaea, Inc. v. Flying Burrito, LLC*,
    647 F.3d 741 (8th Cir. 2011) .........................................................................11

*Patin v. Thoroughbred Power Boats Inc.*,
    294 F.3d 640 (5th Cir. 2002) .........................................................................21

*Penick v. Penick*,
    783 S.W.2d 194 (Tex. 1988).....................................................................42, 43

*Perry v. Baptist Health*,
    358 Ark. 238, 189 S.W.3d 54 (2004).............................................................37

*Pinehurst Neuropsychology, PLLC v. First-Citizens Bank & Trust Co.*,
    2021 WL 4460273 (M.D.N.C. Sept. 29, 2021).........................................32, 50

*Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*,
    366 Ark. 463, 237 S.W.3d 20 (2006).............................................................43

*Profiles, Inc. v. Bank of Am. Corp.*,
    453 F. Supp. 3d 742 (D. Md. 2020)...........................................................32, 49

*Progressive Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*,
    184 N.C.App. 688, 647 S.E.2d 111 (2007)................................................42, 43

*Prudential Ins. Co. of Am. v. Herman*,
    2009 WL 10674431 (C.D. Cal. Aug. 31, 2009)..............................................46

*Pucket v. Hot Springs Sch. Dist. No. 23-2*,
    526 F.3d 1151 (8th Cir. 2008) .......................................................................31

*Quan v. Delgado*,
    2007 WL 1704652 (Cal. App. Jun. 14, 2007)................................................38

*Revenexx v. Regenex Health LLC*,
    446 F. Supp. 3d 469 (S.D. Iowa 2020) ..........................................................30

*Salone v. Bank of Am., N.A.*,
    2018 WL 3815041 (C.D. Cal. June 22, 2018) ................................................46

*Sasso v. Tesla, Inc.*,
    --- F. Supp. 3d ----, 2022 WL 363850 (E.D.N.C. Feb. 7, 2022)......................54

*Scherer v. Wells Fargo Bank, N.A.*,
 No. H–20–cv–1295, Order, Dkt. # 20 (S.D. Tex. Apr. 29, 2020) (unpublished) ..................32

*Scholtes v. Signal Delivery Serv., Inc.*,
 548 F. Supp. 487 (W.D. Ark. 1982).........................................................................................37

*Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*,
 328 F. Supp. 598 (N.D. Tex. 2018) .........................................................................................38

*Simone v. VSL Pharms., Inc.*,
 2017 WL 658711 (D. Md. Feb. 16, 2017) ...............................................................................24

*Spokeo v. Robins*,
 578 U.S. 330 (2016)............................................................................................................31, 41

*Sprint Commc'ns Co. L.P. v. Mediacom Commc'ns Corp.*,
 2020 WL 5606843 (D. Del. May 6, 2020)...............................................................................59

*Summerhill v. Terminix, Inc.*,
 637 F.3d 877 (8th Cir. 2011) ..................................................................................................53

*Sybersound Recs., Inc. v. UAV Corp.*,
 517 F.3d 1137 (9th Cir. 2008) ................................................................................................46

*Synovus Bank v. Okay Props., LLC*,
 2012 WL 3745280 (W.D.N.C. Aug. 28, 2012)........................................................................55

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*,
 300 S.W.3d 348 (Tex. App.—Dallas 2009, pet. denied).........................................................44

*Thompson v. Bass*,
 261 N.C. App. 285, 819 S.E.2d 621 (2018).............................................................................37

*In re Tobacco II Cases*,
 46 Cal. 4th 298, 207 P.3d 20 (2011) .......................................................................................48

*Tyler v. Alltel Corp.*,
 265 F.R.D. 415 (E.D. Ark. 2010).............................................................................................40

*US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp.*,
 2006 WL 1367383 (W.D.N.C. May 15, 2006) .......................................................................53

*Valero Mktg. & Supply Co. v. Kalama Int'l*,
 51 S.W.3d 345 (Tex. App.—Houston [1st Dist.] 2001, no pet.) .............................................37

*Vallone v. CJS Sols. Grp., LLC*,
 9 F.4th 861 (8th Cir. 2021) ...............................................................................................14, 22

*Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*,
  646 F.3d 589 (8th Cir. 2011) ....................................................................21, 28, 30

*Walden v. Fiore*,
  571 U.S. 277 (2014)..........................................13, 14, 16, 17, 18, 20, 24

*Walker v. Fleetwood Homes of N.C., Inc.*,
  653 S.E.2d 393 (N.C. 2007).......................................................................52

*Weatherly v. Ford Motor Co.*,
  994 F.3d 940 (8th Cir. 2021) .............................................................10, 38

*Wells Dairy, Inc. v. Food Movers Int'l, Inc.*,
  607 F.3d 515 (8th Cir. 2010) ......................................................................9

*Wenske v. Blue Bell Creameries, Inc.*,
  2018 WL 5994971 (Del. Ch. Nov. 13, 2018) ...........................................59

*Wesson v. Lamb AB*,
  2018 WL 11320712 (W.D. Ark. June 18, 2018) .......................................29

*Whaley v. Esebag*,
  946 F.3d 447 (8th Cir. 2020) .............................................................11, 26

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)..................................................................................26

*Zeneca Ltd. v. Pharmachemie B.V.*,
  1996 WL 873910 (D. Md. Nov. 22, 1996) ...............................................24

**Statutes**

15 U.S.C. § 636(a)(36)(F)(ii)(I)....................................................................50

15 U.S.C. § 636(a)(36)(J) .............................................................................49

15 U.S.C. § 636(a)(36)(T).............................................................................56

ARK. CODE ANN. § 4–1–201(b)(21)..............................................................35

ARK. CODE ANN. §§ 4–3–101, *et seq.*..........................................................33

ARK. CODE ANN. § 4–3–103(a)(6) ................................................................36

ARK. CODE ANN. § 4–3–104(a).....................................................................34

ARK. CODE ANN. § 4–3–104(a)(1) ................................................................34

ARK. CODE ANN. § 4–3–108(b)....................................................................34

ARK. CODE ANN. § 4–3–109(a) ................................................................................34

ARK. CODE ANN. § 4–3–301 ....................................................................................35

ARK. CODE ANN. §§ 4–3–309, 4–3–418(d) ...........................................................36

ARK. CODE ANN. § 16–4–101 ..................................................................................11

CAL. BUS. & PROF. CODE § 17200 ...........................................................................45

CAL. COM. CODE § 1201(b)(21) ...............................................................................35

CAL. COM. CODE §§ 3101, *et seq.* ...........................................................................33

CAL. COM. CODE § 3103(a)(55) ................................................................................36

CAL. COM. CODE § 3104(a) .......................................................................................34

CAL. COM. CODE § 3108(b) .......................................................................................34

CAL. COM. CODE § 3109(a) .......................................................................................34

CAL. COM. CODE § 3301 ...........................................................................................35

CAL. COM. CODE §§ 3309, 3418(d) ..........................................................................36

N.C. GEN. STAT. ANN. 25–3–103(a)(5) ....................................................................36

N.C. GEN. STAT. ANN. § 25–1–201(b)(21) ..............................................................35

N.C. GEN. STAT. ANN. §§ 25–3–101, *et seq.* ..........................................................33

N.C. GEN. STAT. ANN. § 25–3–104(a) ......................................................................34

N.C. GEN. STAT. ANN. § 25–3–108(b) ......................................................................34

N.C. GEN. STAT. ANN. § 25–3–109(a) ......................................................................34

N.C. GEN. STAT. ANN. § 25–3–301 ..........................................................................35

N.C. GEN. STAT. ANN. §§ 25–3–309, 25–3–418(d) .................................................36

N.C. GEN. STAT. ANN. § 75–1.1(a) ...........................................................................51

TEX. BUS. & COM. CODE § 1.201(b)(21) ..................................................................35

TEX. BUS. & COM. CODE §§ 3.101, *et seq.* .............................................................33

TEX. BUS. & COM. CODE § 3.103(a)(7) ....................................................................36

TEX. BUS. & COM. CODE § 3.104(a) .........................................................................34

TEX. BUS. & COM. CODE § 3.108(b) .........................................................................34

TEX. BUS. & COM. CODE § 3.109(a) .........................................................................34

TEX. BUS. & COM. CODE § 3.301 ...........................................................................35

TEX. BUS. & COM. CODE § 3.309 ...........................................................................36

TEX. BUS. & COM. CODE § 3.418(d) .........................................................................36

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(A) .....................................................................................11

Fed. R. Civ. P. 9(b) ...................................................................................53, 54

Fed. R. Civ. P. 10(c) ..........................................................................................38

Fed. R. Civ. P.12(b) ............................................................................................3

Fed. R. Civ. P. 12(b)(1).........................................................................9, 30, 41, 60

Fed. R. Civ. P. 12(b)(2).........................................................................9, 28, 59

Fed. R. Civ. P. 12(b)(6).........................................................................10, 30, 38,60

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 7:12 (5th ed. 2021) ..........................23

**INTRODUCTION**

This is a putative class action in which four named Plaintiffs assert breach-of-contract, unjust enrichment, and deceptive trade practices claims against Defendants Capital Plus Financial, LLC ("CPF"), a Texas-based certified Community Development Financial Institution ("CDFI") and its Texas-based parent company Crossroads Systems, Inc. ("Crossroads"). Plaintiffs allege that they and a putative class of prospective borrowers under the Paycheck Protection Program ("PPP") did not receive PPP loans that CPF agreed to fund and that CPF wrongfully withheld the loans. Plaintiffs also claim that Crossroads is CPF's alter ego.

The current Amended Class Action Complaint (ECF 31) ("Amended Complaint" or "Am. Compl.") is Plaintiffs' second attempt to state a case against Defendants. The original complaint made similar claims on behalf of just one Plaintiff, Arkansas resident Eric Greathouse. After Defendants moved to dismiss for (*inter alia*) lack of personal jurisdiction, the Amended Complaint was filed, which adds three new non-Arkansas-resident Plaintiffs: Ernesto Covarrubias, Tiffany Sumrall, and Barbara Myles (the "Non-Arkansas Plaintiffs"), who similarly allege that CPF wrongfully withheld their PPP loans.

The Court lacks personal jurisdiction and should dismiss the Amended Complaint. Plaintiffs did not cure the original complaint's jurisdictional defects but rather compounded them by joining Non-Arkansas Plaintiffs with non-Arkansas claims who have no connections to Arkansas. While the Amended Complaint does offer some jurisdictional allegations, those allegations—even if true—are legally insufficient to establish personal jurisdiction. Plaintiffs allege essentially five reasons they believe personal jurisdiction exists: (1) CPF contracted with Greathouse; (2) CPF conducted an internal review regarding Greathouse's loan; (3) CPF earned fees in connection with Greathouse's loan; (4) CPF had contracts, conducted reviews, and received

fees in connection with PPP loans to others in Arkansas; and (5) CPF communicated regarding the PPP with the U.S. Small Business Administration's service center in Little Rock.

None of these allegations, either separately or together, come within throwing distance of establishing personal jurisdiction. Eighth Circuit precedent provides that a forum resident's contract with a non-resident defendant is insufficient to establish personal jurisdiction unless the contract's terms or future consequences establish a connection to the forum, which does not exist in this case (nor do Plaintiffs so allege). Plaintiffs also do not allege that any of CPF's underwriting or review activities or that its receipt of fees for any loans occurred in Arkansas; this is because none of these things occurred in Arkansas and rather occurred principally in Texas, where CPF and its operations are based. Plaintiffs' attempts to base personal jurisdiction for their claims on alleged communications or agreements between CPF and <u>other borrowers</u> in Arkansas, or with the SBA's Arkansas office, ignore settled precedent holding that these types of connections are not jurisdictionally relevant. These defects are all in addition to Plaintiffs' failure to plead personal jurisdiction over Crossroads apart from grossly deficient alter-ego allegations and their failure to allege any jurisdictional hook regarding the three Non-Arkansas Plaintiffs' claims.

Should the Court reach the merits of Plaintiffs' claims (and Defendants respectfully submit that it should not), those claims are defective as pled and should be dismissed pursuant to Federal Rules 12(b)(6) and 12(b)(1). Notably, the Amended Complaint <u>made virtually no changes to those claims</u> challenged in Defendants' original motion to dismiss (ECF 25 at 23–27), and the Court should dismiss them. The Amended Complaint added new claims under the California Unfair Competition Law and the North Carolina Unfair and Deceptive Trade Practices Act, which are also defective as pled and should similarly be dismissed.

## BACKGROUND

CPF is a CDFI that principally serves the Hispanic community in Texas.  A CDFI is an institution designated by the U.S. Treasury Department as specializing in providing financial services in low-income communities.  CPF has been a certified CDFI since 2017 and since that time has focused principally on providing single-family residential mortgage financing in the Dallas, Fort Worth, Houston, and San Antonio markets.  In December 2017, CPF was acquired by Crossroads, a holding company focused on investing in businesses that promote community development.  Beginning around June 2020, the SBA approved CPF to act as a PPP lender.

Plaintiffs' alleged claims in the Amended Complaint arise from CPF's PPP lending program.  Plaintiffs claim that they were approved for PPP loans from CPF and that CPF failed to fund those loans.  Am. Compl. ¶¶ 104–119 (Greathouse); *id.* ¶¶ 120–135 (Covarrubias); *id.* ¶¶ 136–146 (Sumrall): *id.* ¶¶ 147–157 (Myles).   While Defendants will accept these and all allegations as true for purposes of their challenge to the pleadings, it bears noting that these allegations are unequivocally false.  CPF <u>did</u> fund Plaintiffs' PPP loans.  The only reason Plaintiffs did not receive the funds is because their own banks, to which the funds were transferred, rejected the funds, and Plaintiffs either failed to provide additional verifying documentation required for the funds to be accepted or did not have valid bank accounts into which the funds could be transferred.  Should this case proceed past the pleading stage—and it should not—Defendants will strongly dispute Plaintiffs' claims that CPF did not fund their loans.  In the meantime, Defendants will accept Plaintiffs' allegations in the Amended Complaint as true <u>only</u> for purposes of this motion, consistent with the standards for evaluating motions to dismiss under Rule 12(b).

## I.     The Amended Complaint's Factual Allegations.

The factual allegations in the Amended Complaint do not differ dramatically from those in the original complaint.   The four named Plaintiffs, like Plaintiff Greathouse in the original

complaint, all claim that they were approved for PPP loans from CPF and that CPF failed to fund the loans.  Am. Compl. ¶¶ 104–157.  Similar to Greathouse, the original Plaintiff, all of the newly-added Non-Arkansas Plaintiffs allege that they applied and were approved for PPP loans, that CPF was their assigned lender, and that, despite their understanding that their loans would be funded, they did not ultimately receive the funds.  Am. Compl. ¶¶ 106–114, 122–128, 138–142, 149–153.

The new Non-Arkansas Plaintiffs each allege that they signed the same promissory note and accompanying documents (the "Note") that were signed by Plaintiff Greathouse and which, like in the original complaint, are attached as an exhibit to the Amended Complaint.  *See* Am. Compl. ¶¶ 125, 141, 152, 177 & Ex. A.  Because the Note attached to the original and amended complaints are identical, Defendants respectfully refer the Court to their motion to dismiss the original complaint for a summary of the terms of the Note.  *See* ECF 25 at 4–5.

## II.   Plaintiffs' Claims.

The Amended Complaint asserts four causes of action against Defendants:  (1) breach of contract, (2) unjust enrichment, (3) violation of the California Unfair Competition Law ("UCL"), and (4) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA").  Am. Compl. ¶¶ 172–230.  Apart from now being asserted on behalf of the new Non-Arkansas Plaintiffs, the breach of contract and unjust enrichment claims in the Amended Complaint are materially the same as in the original complaint, and so Defendants respectfully refer the Court to their motion to dismiss the original complaint for a summary of those claims.  ECF 25 at 5–6.

The UCL and NCUDTPA claims are newly asserted in the Amended Complaint.  The UCL claim, brought on behalf of Plaintiff Covarrubias (a California resident), alleges that CPF's failure to fund his loan, and its receipt of lender fees in connection with the loan were "unlawful" or "unfair" practices in violation of the UCL.  Am. Compl. ¶¶ 208–215.  Covarrubias seeks restitution for the amount of the loan or an injunction directing CPF to pay the same amount.  *Id.* ¶ 216.

The NCUDTPA claim, brought on behalf of Plaintiff Myles (a North Carolina resident) alleges that CPF's failure to fund her loan amounted to unfair or deceptive trade practices in violation of the NCUDTPA.  *Id.* ¶¶ 221–224.  Myles also claims that CPF misrepresented its "willingness" to fund her loan by delivering the Note to her and then by "[o]mitting, suppressing, and concealing" the reasons why her loan was not disbursed.  *Id.* ¶ 222.  Myles then alleges that she relied on these misrepresentations because, had she been informed that CPF would not fund the loan, she "would not have done business with CPF."  *Id.* ¶ 227.

As with the original complaint, the Amended Complaint includes Crossroads, CPF's parent company, as a defendant.  *Id.* ¶ 7.  Plaintiffs allege that Crossroads is CPF's alter ego because it "controlled and dominated" CPF, because the companies shared certain executives, engaged in coordinated business activities, such as promoting CPF on Crossroads's website and because Crossroads referred to the two companies as being "one and the same company" and operating CPF "as if they were one and the same company."  *Id.*

III.     **Plaintiffs' Class Action Allegations.**

Like the original complaint, the Amended Complaint seeks a nationwide class, defined as "[a]ll persons and entities in the United States who, in 2021, applied for PPP loans with defendant CPF as the lender for whom the SBA provided an SBA loan number, and who executed and submitted their Loan Documents but did not receive the PPP loan proceeds."  *Id.* ¶ 161.  The Amended Complaint also <u>adds</u> California-only and North Carolina-only putative subclasses, which Plaintiffs seek to represent in this case in Arkansas.  *Id.*

IV.     **Plaintiffs' Inadequate Allegations in Support of Personal Jurisdiction.**

As explained in Defendants' prior motion to dismiss, the original complaint lacked virtually any allegations to support personal jurisdiction over Defendants in the state of Arkansas

apart from the threadbare allegation that Plaintiff Greathouse resides and works in Arkansas.  ECF 25 at 7.

### A.    Declaration in Support of Defendants' Challenge to Personal Jurisdiction.

Defendants previously submitted the declaration of Farzana Giga in support of the personal jurisdiction challenge in the original motion to dismiss.  Ms. Giga is the Chief Financial Officer for both CPF and Crossroads and is responsible for overseeing both companies' financial affairs, including oversight of CPF's PPP lending.  Defendants hereby re-submit Ms. Giga's declaration in support of their personal jurisdiction challenge in this motion.  *See* Declaration of Farzana Giga ("Decl. of F. Giga") (attached as **Exhibit A**).  The declaration is submitted <u>only</u> in connection with the personal-jurisdiction challenge (<u>not</u> Defendants' 12(b)(1) or 12(b)(6) challenges) and does not dispute any facts alleged in the Amended Complaint.

Ms. Giga's declaration explains, generally, that neither CPF nor Crossroads have any offices, employees, or operations in Arkansas (*id.* ¶¶ 6–7); that CPF's PPP lending activities were principally coordinated by a third-party lender service provider, an Arizona company called Blueacorn (*id.* ¶ 9); that CPF is not involved in the application or approval process for PPP borrowers, which is coordinated entirely by Blueacorn who also prepares the loan documents in CPF's name once a borrower is approved.  *Id.* ¶¶ 10–11.  CPF's activities regarding PPP lending were limited to applying their own internal underwriting requirements to loan applications it received from Blueacorn, deciding whether to fund the loans, and then issuing the funding.  *Id.* None of these activities, however, took place in Arkansas and were instead conducted out of Texas. *Id.* ¶ 10–11.  Defendants respectfully refer the Court to their motion to dismiss the original complaint for a short summary of what the declaration says (*see* ECF 24, Ex. A), or of course, to the declaration itself, *see* Decl. of F. Giga, which is properly considered by the Court in evaluating

Defendants' challenge to personal jurisdiction.  *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004).[1]

### B.   Jurisdictional Allegations Added in the Amended Complaint.

The Amended Complaint adds some new allegations intended to support personal jurisdiction over Defendants.  *See* Am. Compl. ¶¶ 23–38.  The new jurisdictional allegations do not materially dispute Ms. Giga's declaration, apart from characterizing it as "self-serving."  *Id.* ¶ 24.  Rather, the Amended Complaint takes the view that the declaration describes "facts regarding what [Defendants] did *outside* Arkansas," but does not describe other facts, which, according to Plaintiffs, "clearly demonstrate, even at this pleading stage … that Defendants purposefully availed themselves of, and benefitted directly from, substantial business in Arkansas and this judicial District at all relevant times concerning the claims at issue."  *Id.* (emphasis in original).  The Amended Complaint also alleges these other "facts" in support of personal jurisdiction.

First, the Amended Complaint alleges that personal jurisdiction is proper because CPF entered into an agreement with Plaintiff Greathouse, an Arkansas resident, and committed to fund his loan.  *See id.* ¶ 25.  Second, Plaintiffs allege that personal jurisdiction is proper because CPF conducted borrower-review and underwriting activities with regard to Greathouse's loan application.  *See id.*  Third, Plaintiffs allege that CPF received lender fees paid by the SBA in connection with Greathouse's loan.  *See id.*  Fourth, Plaintiffs allege that CPF entered into PPP loan agreements with other Arkansas residents, with respect to which it also conducted borrower

---

[1] Defendants also re-submit Exhibit B to their original motion to dismiss, which is the October 2, 2021 email from Plaintiff Greathouse to CPF in which he indicates that he believes CPF to be a "local company to [him]," because he "used to work in Bedford and Euless," Texas.  Emails from Plaintiff E. Greathouse to CPF's E. Donnelly (attached as **Exhibit B**).  As with Ms. Giga's declaration, Defendants offer Plaintiffs emails only for consideration of their challenge to personal jurisdiction, not the other bases for dismissal set forth in this motion.

review and underwriting, and that it received lender fees from the SBA in connection with those loans. *See id.* ¶¶ 25–30. Finally, Plaintiffs allege that CPF engaged in communications regarding PPP lending with the SBA's commercial loan service center located in Little Rock, Arkansas. *See id.* ¶ 32. Plaintiffs allege, however, that the Little Rock SBA service center is responsible for servicing loans to businesses in the "eastern half of the United States," covering "24 states." *Id.* ¶ 33. The Amended Complaint alleges generally that CPF "engaged in substantial and direct communications with personnel" in the SBA's Little Rock office regarding PPP lending and regarding CPF's PPP loan borrowers, *id.* ¶ 35, although they do not allege any particular communications. *See id.* ¶¶ 35–36.

Other than the alleged loan agreement between CPF and Plaintiff Greathouse, and CPF's underwriting and receipt lender fees from the SBA in connection with Greathouse's loan, the Amended Complaint does not offer any jurisdictional allegations particularized to the claims brought by Greathouse or by any of the Non-Arkansas Plaintiffs. *See id.* ¶¶ 23–38. Similarly, none of the jurisdictional allegations in the Amended Complaint are particularized to Defendant Crossroads and rather involve only alleged activities by CPF. *See, e.g.*, ¶¶ 31–32. As to Defendant Crossroads, the Amended Complaint offers jurisdictional allegations that essentially parrot Plaintiffs' alter ego allegations regarding Crossroads (*compare id.* ¶ 38 *with id.* ¶ 7), followed by a request that "CPF's contacts in this District in connection with the claims at issue" be "imputed to its corporate parent Crossroads." *Id.* ¶ 38.

Finally, the Amended Complaint indicates that while Plaintiffs believe their allegations "demonstrate that CPF has sufficient contacts in this District relating to the PPP lending at issue," they also believe that "jurisdictional discovery regarding CPF's and likely both Defendants' direct dealings with borrowers in this District and with the SBA Little Rock Servicing Center and lender

processing fees CPF generated thereby will provide <u>additional</u> evidence regarding the substantial and direct business Defendants did at all relevant times in this District." *Id.* ¶ 37 (emphasis added). Plaintiffs request that, "[i]f the Court has any doubt" as to whether personal jurisdiction is proper, that they "be permitted to take jurisdictional discovery" on the basis that such discovery "will further support Plaintiffs' allegations that the Court's exercise of personal jurisdiction over both Defendants in this case is fair." *Id.* n.1.

## LEGAL STANDARD

Defendants seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(1), and 12(b)(6). Rule 12(b)(2) requires dismissal of a complaint in which the Court lacks personal jurisdiction over the Defendants. "To allege personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (alterations and internal quotation marks omitted). "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Id.* This showing must then be "tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.*

Rule 12(b)(1) requires dismissal of a complaint over which the Court lacks subject-matter jurisdiction. A motion to dismiss for lack of Article III standing is properly considered pursuant to Rule 12(b)(1). *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) ("[I]f a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction."). In a case such as this, in which Defendants' 12(b)(1) motion is a "facial attack," involving only matters set forth in the pleadings, "the court restricts itself to the face of the pleadings." *Id.* In doing so, the Court should "accept[] as true all facts alleged in the complaint" and "consider only the materials that are

necessarily embraced by the pleadings and exhibits attached to the complaint." *Id.* (internal quotation marks, alterations, and citations omitted).

Rule 12(b)(6) requires dismissal of a complaint that fails to state a claim on which relief may be granted.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  For a 12(b)(6) motion, in addition to the pleadings themselves, the Court may properly consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).  If a complaint does state a claim, it may still be dismissed under Rule 12(b)(6) if "the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense." *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 943–44 (8th Cir. 2021).

## ARGUMENT

The Court should dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction. In the alternative, and subject to and without waiver of Defendants' challenge to personal jurisdiction, the Complaint should be dismissed for lack of standing or for failure to state a claim.[2]

---

[2] In cases involving challenges to both personal jurisdiction and subject-matter jurisdiction (which includes Article III standing), a district court may consider the issue of personal jurisdiction first, when, as is true in this case, personal jurisdiction raises issues that are less complicated.  *See Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019).

I.      **The Complaint Should be Dismissed for Lack of Personal Jurisdiction over Both CPF and Crossroads.**

The Court lacks personal jurisdiction over both CPF and Crossroads, and none of the allegations in the Amended Complaint, even if true, are legally sufficient to show otherwise. Under Federal Rule of Civil Procedure 4(k)(1)(A), a district court may exercise personal jurisdiction consistent with that of a state court of general jurisdiction in the state where the district court is located—in this case, Arkansas. Under Arkansas's long-arm statute, state courts may exercise personal jurisdiction to the full extent permitted by the federal due process clause. ARK. CODE ANN. § 16–4–101; *Pangaea, Inc. v. Flying Burrito, LLC*, 647 F.3d 741, 745 (8th Cir. 2011).

Under the due process clause, the exercise of personal jurisdiction requires that the defendant have sufficient minimum contacts with the forum such that exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Supreme Court has recognized two possible methods of satisfying the "minimum contacts" requirement:  general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General jurisdiction may be exercised where the defendant's operations within a state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* Specific jurisdiction may be exercised where "the suit arises out of or relates to the defendant's contacts with the forum." *Id.* (alterations omitted).

In cases of either specific or general jurisdiction, courts in the Eighth Circuit consider a five-factor test to measure the strength of a defendant's forum contacts, with the first three being of "primary importance":  (1) the nature and quality of the contacts with the forum; (2) the quantity of contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Whaley v. Esebag*, 946

F.3d 447, 452 (8th Cir. 2020).  The Eighth Circuit applies additional factors in cases involving contract claims:  "A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) (internal quotation marks omitted).  In contract cases, "[p]ersonal jurisdiction … does not turn on mechanical tests or on conceptualistic theories of the place of contracting or of performance" but rather the "terms of the contract and its contemplated future consequences."  *Id.* (internal quotation marks and citations omitted).

Neither the allegations set forth in the Amended Complaint nor the facts before the Court provide a remotely sufficient basis on which to exercise either general <u>or</u> specific jurisdiction and demonstrate that both are improper.

### A.     The Court May Not Exercise General Jurisdiction Over Defendants.

General jurisdiction is unquestionably lacking.  General jurisdiction exists only if the defendant's "affiliations with the State are so continuous and systematic as to render it **essentially at home in the forum State**."  *Daimler AG*, 571 U.S. at 139 (emphasis added) (alterations and internal quotation marks omitted).  For a corporate defendant, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction."  *Id.* at 137 (alterations and internal quotation marks omitted).  Courts have recognized that it is virtually impossible to establish general jurisdiction in a state other than the two paradigms.  *E.g.*, *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("[It is] incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").[3]

---

[3] *See also Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015) ("The [Supreme] Court has identified only two places where [a corporation is essentially at home]:  the state of the corporation's principal place of business and the state of its incorporation."); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (7th Cir. 2016); *Martinez v. Aero Caribbean*, 764 F.3d

The Amended Complaint itself defeats any possibility general jurisdiction. Plaintiffs affirmatively plead that "Defendant CPF is a limited liability company organized under the laws of the state of Texas with its principal place of business at 2247 Central Drive, Bedford, Texas 76021." Am. Compl. ¶ 20. They also plead that "Defendant Crossroads is a corporation organized under the laws of Delaware with its principal place of business at 4514 Cole Avenue, Suite 1600, Dallas, Texas 75205." *Id.* ¶ 21. These facts are confirmed by Ms. Giga's declaration. Decl. of F. Giga ¶¶ 6–7. And while the Supreme Court has left open "the possibility that in an exceptional case … a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," *Daimler AG*, 571 U.S. at 139 n.19, this is not an "exceptional case." Both Defendants have <u>no operations</u> in Arkansas, let alone any that would render them "at home," *see* Decl. of F. Giga ¶¶ 6–7, and the Amended Complaint does not allege otherwise. Simply put, there is no basis to exercise general jurisdiction over Defendants in Arkansas for whom there is no dispute that their states of incorporation and principal places of business are all in other states.

### B.   The Court May Not Exercise Specific Jurisdiction Over Defendants.

Specific jurisdiction is not proper either. Specific jurisdiction requires that the "defendant's suit related conduct … create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotation marks omitted). To that end, the Supreme Court has emphasized certain key principles for evaluating specific jurisdiction. First, the defendant's relationship with the forum must arise out of "contacts that the defendant <u>himself</u> creates with the forum State." *Id.* (emphasis in original) (internal quotation marks omitted).

---

1062, 1070 (9th Cir. 2014) ("The Supreme Court's … decision in *Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation.").

Second, only the "defendant's contacts with the forum State itself" are relevant, "not the defendant's contacts with persons who reside there." *Id.* at 285.  Third, specific jurisdiction requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (emphasis added).

### 1.      The Non-Arkansas Plaintiffs Cannot Establish Specific Jurisdiction

Specific jurisdiction is easily lacking over Defendants for all claims brought by the three Non-Arkansas Plaintiffs.  Consistent with the requirement of a "connection between the forum and the specific claims at issue," *id.*, the Eighth Circuit requires that "[p]ersonal jurisdiction must be determined on a claim-by-claim basis." *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021).  This means that "'[i]n order for a court to exercise specific jurisdiction over a claim,' there must be an 'affiliation between the forum and the underlying controversy.'" *Id.* (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1781) (emphasis in *Vallone*).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

In this case, there is no connection at all "between the forum and the specific claims" of the Non-Arkansas Plaintiffs.  *Id.*  The Amended Complaint concedes that Plaintiff Covarrubias resides and works in California (Am. Compl. ¶¶ 17, 120), Plaintiff Sumrall resides and works in Texas (Am. Compl. ¶¶ 18, 136), and Plaintiff Myles resides and works in North Carolina (Am. Compl. ¶¶ 19, 147).  The Amended Complaint contains no allegations regarding any connection between the Non-Arkansas Plaintiffs' claims and  Arkansas.  *See* Am. Compl. ¶¶ 120–157, 172–230.

Specific jurisdiction is lacking over the Non-Arkansas Plaintiffs' claims pursuant to a straightforward application of *Bristol-Myers*, which involved claims brought in California against a nonresident defendant pharmaceutical company by both California-resident and non-California-

resident plaintiffs arising out of the defendant's product, Plavix.  *Bristol-Myers Squibb*, 137 S. Ct. at 1781.  The Supreme Court held that the California court lacked specific jurisdiction over the nonresident plaintiffs for whom there was no "adequate link between the State and the nonresidents' claims."  *Id.*  Specifically, "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California."  *Id.*  Nor did it matter that the case included claims brought by other plaintiffs who were California residents:  "The mere fact that <u>other</u> plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents— does not allow the State to assert specific jurisdiction over the nonresidents' claims."  *Id.* (emphasis in original).

Just as in *Bristol-Myers*, the Non-Arkansas Plaintiffs cannot establish specific jurisdiction because they fail to allege that they applied for PPP loans in Arkansas, that they were entitled to receive PPP loans in Arkansas, or that they experienced any damages or losses in Arkansas.  *See* Am. Compl. ¶¶ 120–157; 172–230.  And just as in *Bristol-Myers*, specific jurisdiction over the Non-Arkansas Plaintiffs cannot be established merely because "<u>other</u> plaintiffs" may have applied for or expected to receive PPP loans in Arkansas or because other plaintiffs may have experienced damages or losses in Arkansas.  *Bristol-Myers Squibb*, 137 S. Ct. at 1781.

### 2.    Plaintiff Greathouse Cannot Establish Specific Jurisdiction.

Specific jurisdiction is also lacking for claims brought by Plaintiff Greathouse.[4]  While Greathouse does allege that he lived and worked in Arkansas (unlike the three Non-Arkansas

---

[4] As explained above, the Non-Arkansas Plaintiffs' cannot establish specific jurisdiction under a straightforward application of *Bristol-Myers Squibb.  Supra* §§ I.B.1.  However, even if apart from *Bristol-Myers Squibb*, the Non-Arkansas Plaintiffs would fail to establish specific jurisdiction for the same reasons as Greathouse, namely that their alleged loan contracts, the alleged underwriting activities by CPF, and the alleged fees received by CPF in connection with their loans have no jurisdictionally relevant connection to Arkansas.  *See infra* §§ I.B.2.

Plaintiffs), *see* Am. Compl. ¶ 16, he does not allege facts sufficient to establish that either Defendant's "suit related conduct … create[d] a substantial connection with" with Arkansas, as is required for specific jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Amended Complaint contains only a few allegations of suit-related contacts between CPF (but not Crossroads) and Arkansas that pertain to Greathouse's own claims, namely that CPF established contacts with Arkansas "by virtue of its entering into its agreement to fund plaintiff Greathouse's PPP loan," by "committing to fund" the loan, by conducting "borrower review and underwriting activities" with respect to the loan, and by "its obtaining PPP lender fees" in connection with the loan. Am. Compl. ¶ 25. But these alleged contacts are not sufficient to establish specific jurisdiction in Arkansas.

**Greathouse's location.** First, Greathouse's locus in Arkansas has no relevance to personal jurisdiction over <u>Defendants</u>. Indeed, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284 (citing cases). This is because "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the **defendant's conduct that must form the necessary connection with the forum State** that is the basis for its jurisdiction over him." *Id.* at 285 (emphasis added). And, as explained, neither CPF nor Crossroads conduct <u>any</u> operations in Arkansas: no employees, no offices, and no advertising. Decl. of F. Giga ¶¶ 6–9.

**The alleged loan contract.** Second, Greathouse cannot establish specific jurisdiction over Defendants based on the contract he alleges to have entered with CPF. It is settled law in the Eighth Circuit that "[a] **contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant** in the plaintiff's

forum state." *Fastpath, Inc.*, 760 F.3d at 821 (emphasis added).  Nor do the alleged contract's "terms" or "contemplated future consequences" involve any conduct relating to Arkansas.  *Id.*  The promissory note and other loan documentation that Plaintiff attached to the Complaint, and which he claims to have created the contract at issue (Am. Compl. ¶¶ 177–78), never mention Arkansas even once, with the exception of Plaintiff listing his own address on a standard W-9 form.  *Id.*, Ex. A at 12 (PDF 69).  This is a far cry from the "substantial connection" to Arkansas required to establish specific jurisdiction.  *Walden*, 571 U.S. at 284.  Much the opposite, the loan documents attached to the Complaint repeatedly reference <u>Texas</u> as CPF's principal office and the location from which any loan would be funded.  *See, e.g.*, Complaint, Ex. A at 7 (PDF 64) ("In consideration of Capital Plus Financial, LLC, located at 2247 Central Drive, Bedford, Texas 76021, (hereinafter called 'Lender') making the above loan ….").  Simply put, the alleged contract does not contemplate enough of a connection to Arkansas to establish specific jurisdiction.

**CPF's activities relating to the alleged loan.**  Third, Greathouse's allegations that CPF "commit[ed] to fund" his loan and conducted "borrower review and underwriting activities" with respect to his loan (Am. Compl. ¶ 25) do not establish specific jurisdiction either.  Critically, the Amended Complaint never alleges that CPF did either of these things <u>in Arkansas</u>.  *See id.*  And, indeed, Ms. Giga's declaration confirms that <u>none</u> of CPF's operations or employees involved in underwriting loans and making decisions related to funding loans were in Arkansas.  Decl. of F. Giga ¶ 10.  At most, Greathouse's reliance on these activities as a jurisdictional hook seem to draw from the suggestion that while these activities themselves did not occur in Arkansas, the <u>effect</u> of the activities—*i.e.*, Greathouse allegedly not receiving his PPP loan funds—occurred in Arkansas.  But this theory of specific jurisdiction has also been foreclosed by controlling precedents.  In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court allowed an assertion of specific

jurisdiction over a nonresident defendant in a libel case where the "effects" of the libel, which occurred outside the forum, created a connection between the defendant and forum.  *Id.* at 789–90.  But the Eighth Circuit and most other circuits, interpret the "effects" test from *Calder* as applying only to specific jurisdiction over claims that "sound in **intentional tort.**"  *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620 (8th Cir. 2021) (emphasis added).  And, more recently in *Walden v. Fiore*, 571 U.S. 277 (2014), the Supreme Court clarified *Calder*'s "effects" test by explaining that "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, <u>not just to the plaintiff</u>."  *Id.* at 287 (emphasis added).  *Walden* further clarified that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct <u>connects him to the forum in a meaningful way</u>."  *Id.* at 290 (emphasis added).

In this case, Greathouse's claims do not "sound in intentional tort," *Morningside Church Inc.*, 9 F.4th at 620, because he alleges only breach of contract and unjust enrichment based on the same material allegations.  *See* Am. Compl. ¶¶ 172–203.[5] And, even if *Calder*'s "effects" test did apply outside of intentional tort cases—which it does not—the Amended Complaint offers no basis for how the "effects" of CPF's alleged conduct (*i.e.*, "committing" to fund the loan and "borrower review and underwriting activities," (Am. Compl. ¶ 25) connected CPF "not just to the plaintiff," but rather "to the forum in a meaningful way."  *Walden*, 571 U.S. at 287, 290.  Indeed, the Amended Complaint acknowledges that CPF had borrowers in several "other states" in addition to Arkansas.  Am. Compl. ¶¶ 25, 36 (emphasis omitted); *see also id.* ¶ 14 (alleging borrowers

---

[5] While the Amended Complaint contains claims other than breach of contract and unjust enrichment, namely counts four and five, the North Carolina and California statutory claims, those claims are brought on behalf of Plaintiffs Myles and Covarrubias, not Greathouse.  *See* Am. Compl. ¶¶ 207, 225.

"across the country").  The effects of CPF's funding decisions and underwriting cannot possibly establish a "meaningful" connection to Arkansas if those same effects would have been felt in several other states as well.

**CPF's receipt of lender fees.**  Fourth, the allegation that CPF "obtain[ed] PPP lender fees" in connection with Greathouse's loan (Am. Compl. ¶ 25; *see also id.* ¶ 27) also does not establish specific jurisdiction.  As with CPF's funding decisions and its underwriting activities, the Amended Complaint does not allege that CPF's receipt of any lender fees ever occurred in Arkansas.  Indeed, Ms. Giga's declaration makes clear that all PPP loan fees that CPF received were paid by the SBA's Office of Credit Risk Management in Washington, DC and were received into CPF's accounts in Texas.  Decl. of F. Giga ¶ 8.  Moreover, because PPP lender fees are neither paid nor received by the borrower, Greathouse would not even be able to claim specific jurisdiction based on the *Calder* "effects" test, which, again, does not apply anyway because his claims do not sound in intentional tort.  *See Morningside Church, Inc.*, 9 F.4th at 620.

**Other factors.**  Nor do any of the other factors used by the Eighth Circuit for measuring forum contacts offer a basis for exercising specific jurisdiction.  For example, the "nature and quality" and the "quantity" of the contacts are slim at best.  Even if there were a contract between Greathouse and CPF, Ms. Giga's declaration makes clear that virtually all borrower-facing communications and services were conducted by its third-party contractor, Blueacorn, a non-party to this case.  *Id.* ¶ 9–11.  Blueacorn conducted public-facing advertising, provided PPP loan applications to borrowers, maintained the online system for completing the applications, submitted the applications to the SBA for approval, and transferred the actual loan documentation between borrowers and lenders.  *Id.*  Whatever connections there may have been between Blueacorn and Greathouse or between Blueacorn and Arkansas, these are not sufficient to establish specific

jurisdiction over <u>Defendants</u>.  *See Walden*, 571 U.S. at 284 (contacts between third parties and forum state cannot satisfy "defendant-focused" minimum contacts inquiry); *see also Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995) ("The use of interstate facilities, such as telephones or mail … cannot alone provide the minimum contacts required by due process." (internal quotation marks omitted)).

Similarly, the "relation of the cause of action to the contacts" is virtually non-existent because neither the alleged contract at issue in Greathouse's contract claim, nor the alleged fees and advances at issue in the unjust enrichment claim, in any way implicate Arkansas.   The Amended Complaint admits that PPP loans were made widely available to American businesses (Am. Compl. ¶ 1), that "numerous … business owners across the country" applied for PPP loans (Am. Compl. ¶ 13), and that "CPF reportedly processed 472,036 PPP loans."  Am. Compl. ¶ 9. And the Note attached to the Amended Complaint, on which Greathouse's contract claim is based, was adapted from a standard form available on the SBA's website.  *Compare* Am. Compl., Ex. A (PDF 58) *with* U.S. SM. BUS. ADMIN., *SBA Standard Loan Note (Form 147)*, https://www.sba.gov/sites/default/files/2020-08/040720note-508.pdf.  Simply put, PPP loans, and agreements relating to PPP loans, were available in all U.S. states and thus no individual loan or loan agreement would have any relationship to the borrower's home state.

The same is true for the PPP loan fees and PPPLF advances on which Greathouse's unjust enrichment claim is based.  The Amended Complaint admits that the PPP loan fees were paid by the SBA and that the PPPLF advances were administered by the Federal Reserve.  Am. Compl. ¶¶ 4, 92–95; *accord* Decl. of F. Giga ¶ 8.  Just like the PPP loans themselves, PPP loan fees and PPPLF advances have no connection to the borrower's home state.  *Cf. First Nat. Bank of Lewisville v. First Nat. Bank of Clinton*, 258 F.3d 727, 730 (8th Cir. 2001) (holding that "a foreign

bank with no other contacts in Arkansas does not subject itself to personal jurisdiction in Arkansas simply by issuing a cashier's check that is ultimately delivered to an Arkansas co-payee bank").

**Crossroads**.   Even if Greathouse might be able to establish some pertinent contacts between CPF and Arkansas (and he cannot), there is no basis for applying those contacts to Crossroads.   Again, the Amended Complaint alleges no specific, suit-related conduct by Crossroads except bare and unsupported allegations that it controlled and directed CPF.  *See*, Am. Compl. ¶¶ 78, 188, 198.  Rather, the Amended Complaint asks the Court to impute CPF's contacts to Crossroads.  *Id.* ¶ 38.  This approach fails as a matter of law.  A court may exercise personal jurisdiction over a parent company by imputing its subsidiary's contacts <u>only</u> when the subsidiary itself is subject to the court's personal jurisdiction.  *E.g.*, *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (citing cases).  And, as explained, CPF lacks the minimum contacts with Arkansas required to establish personal jurisdiction.  Even if CPF were somehow subject to personal jurisdiction in Arkansas, the case law regarding imputing jurisdictional contacts to a parent company allows this to be done only when the subsidiary is an <u>in-state</u> subsidiary.  *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011); *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648–49 (8th Cir. 2003).  Of course, CPF is plainly <u>not</u> an in-state subsidiary (*see* Am. Compl. ¶ 20; Decl. of F. Giga ¶ 6), and the threadbare attempt at alleging forum contacts in the Amended Complaint provides no justification for the Court to expand the boundaries of imputed-contacts jurisprudence.

> ### 3.   Connections with Third Parties and with the SBA Do Not Establish Specific Jurisdiction Over Defendants for the Named Plaintiffs' Claims.

The Amended Complaint attempts to establish specific jurisdiction over Defendants in Arkansas by alleging contacts between Defendants and others, specifically PPP loans made to borrowers in Arkansas, claims of putative class members in Arkansas, and alleged

communications between CPF and the SBA's service center in Arkansas.  Am. Compl. ¶¶ 25–28, 32–36.  These alleged contacts are—even assuming they are true—are legally insufficient to establish personal jurisdiction.

**Loans to borrowers in Arkansas and claims of putative class members.**  Loans that CPF made to borrowers in Arkansas do not establish personal jurisdiction over Plaintiffs' claims.  Again, "[p]ersonal jurisdiction must be determined on a claim-by-claim basis." *Vallone*, 9 F.4th at 865.  "In order for a court to exercise specific jurisdiction <u>over a claim</u>, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (emphasis added) (alterations, internal quotation marks, and citation omitted).  "When there is no such connection, specific jurisdiction is lacking "regardless of the extent of a defendant's unconnected activities in the State." *Id.*  "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Id.* (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011)) (alterations omitted).

In this case, neither loans that CPF made to borrowers residing in Arkansas, nor any claims those other individuals may have against CPF, have any relevance to specific jurisdiction over <u>Plaintiffs' claims</u>.  As explained, CPF conducts no activities or operations in Arkansas, Decl. of F. Giga ¶¶ 10–11, and the Amended Complaint alleges, at best, only conduct outside Arkansas that may have had an effect in Arkansas, *see, e.g.*, Am. Compl. ¶ 25, which, as explained, is not sufficient to give rise to personal jurisdiction anyway. *Supra* pp. 6–7, 12–13.  Loans made to people <u>other than</u> Plaintiffs, or claims that <u>other people may have</u> against Defendants—"regardless of the[ir] extent"—are not enough to establish specific jurisdiction. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.

Similarly, to the extent the named Plaintiffs seek to cobble together a jurisdictional hook by relying on claims of unnamed putative class members who may be in Arkansas, *see, e.g.*, Am. Compl. ¶¶ 28, 35, that attempt fails.  Courts have held that the issue of personal jurisdiction over putative class members' claims is "not yet before the court" at the pleading stage, where only the named putative class representatives' claims are at issue.  *Cruson v. Jackson Nat. Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020); *see In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015) ("Certification of a class is the critical act which reifies the unnamed class members and, critically, renders them subject to the court's power.").[6]  Because Defendants' personal jurisdiction challenge is a "pre-certification Rule 12 motion[]," "the only live claims belong[] to the named plaintiffs." *Cruson*, 954 F.3d at 250.   "[U]ntil a class action is certified … the claims of potential class members cannot be considered." *Biscone v. JetBlue Awys. Corp.*, 681 F. Supp. 2d 383, 386 (E.D.N.Y. 2010).[7]  While Defendants disagree that personal jurisdiction in Arkansas would be appropriate over claims of any putative class members because, again, Defendants have no operations or activities in Arkansas (Decl. of F. Giga ¶ 10–11)—even if there were some basis for personal jurisdiction in those claims, the issue simply is not yet before the Court, and the named Plaintiffs may not rely on those potential claims to cure their own claims' jurisdictional defects.

**The SBA regional office in Arkansas.**  Finally, the Amended Complaint alleges that CPF communicated with the SBA's "Commercial Loan Service Center" in Arkansas (Am. Compl.

---

[6] *See also Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001) ("[A] class action, when filed, includes only the claims of the named plaintiff or plaintiffs.  The claims of unnamed class members are added to the action later, when the action is certified as a class under Rule 23.").

[7] 3 William B. Rubenstein, Newberg on Class Actions § 7:12 (5th ed. 2021) (explaining that, before certification, "putative absent class members … remained complete nonparties").

¶¶ 32–36).   Even if these allegations are true, these types of "government contacts" cannot establish personal jurisdiction.   Subjecting an entity to personal jurisdiction in a forum based on the location of a government office with which the entity may have communicated does not comport with the requirement that contacts sufficient to create specific jurisdiction be those the defendant himself <u>creates</u> with the forum State," *Walden*, 571 U.S. at 271 (emphasis added), and would effectively turn the state where the government office is located—in this case Arkansas— into a "national judicial forum,"  a result Courts have generally sought to avoid.  *See Env't Rsch. Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976).

With these concerns in mind, most courts examining this issue recognize a "government contacts" exception, which prevents the exercise of personal jurisdiction based on the defendant's contact with a federal instrumentality located in the forum.  *See Lamb v. Turbine Designs, Inc.*, 41 F. Supp. 2d 1362, 1365 (N.D. Ga. 1999), *aff'd*, 240 F.3d 1316 (11th Cir. 2001) (finding lack of personal jurisdiction where defendant's contacts with the forum were applications and communications with the Federal Aviation Administration's Atlanta office);; *Zeneca Ltd. v. Pharmachemie B.V.*, 1996 WL 873910, at *5 (D. Md. Nov. 22, 1996) (denying personal jurisdiction based on filings with FDA); *Simone v. VSL Pharms., Inc.*, 2017 WL 658711, at *6 (D. Md. Feb. 16, 2017) (denying jurisdiction based on USPTO filings).  This Court should similarly not entertain Plaintiffs' jurisdictional theory based on communications with a federal government office.

Furthermore, even if communications with a government office could be considered jurisdictionally relevant, the communications Plaintiffs allege in this case are not.  Quoting the SBA's website, the Amended Complaint explains that the Commercial Loan Service Center "is one of two centers nationwide than handles all of SBA's commercial loans."  Am. Compl. ¶ 33

(quoting U.S. SM. BUS. ADMIN., *Mission/Contact Us*, https://www.sba.gov/content/mission-clsc-ar). The SBA has many office locations across the country, including regional and district offices. *See* U.S. SM. BUS. ADMIN., *SBA Office Locations*, https://www.sba.gov/about-sba/sba-locations. The SBA's "service centers," which include the Little Rock Service Center, are principally responsible for loan servicing. The same web page cited in the Amended Complaint makes clear that the Little Rock Service Center's mission is "the efficient and effective **servicing** of SBA's commercial loans." U.S. SM. BUS. ADMIN., *Mission/Contact Us*, https://www.sba.gov/content/mission-clsc-ar (emphasis added); *see also* Am. Compl. ¶ 33 (alleging that SBA's "Commercial Loan Service Centers … **service** all of the SBA's commercial loans." (emphasis added)). But the SBA's involvement in servicing of a loan, if any, does not begin until the loan's status moves to "regular servicing." According to the SBA's website, a loan's status does not move to "regular servicing," until, inter alia, "[t]he final disbursement has been made." U.S. SM. BUS. ADMIN., *Operate as a 7(a) lender*, https://www.sba.gov/partners/lenders/7a-loan-program/operate-7a-lender#section-header-0. This matters because Plaintiffs allege in this case that their loans were **not disbursed at all**. *See, e.g.*, Am. Compl. ¶ 12. Thus, taking Plaintiffs' allegations as true, any purported "communications" with the Little Rock service senter would not have implicated any of Plaintiffs' loans (or loans of any putative class members) and therefore do not establish a "connection between the forum and the <u>specific claims at issue</u>" required for specific jurisdiction. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (emphasis added).

## C.   The Exercise of Personal Jurisdiction over Defendants Would Not Comport with Traditional Notions of Fair Play and Substantial Justice.

Finally, even if Plaintiffs could demonstrate the minimum contacts between Defendants and Arkansas needed to establish general or specific jurisdiction (and they cannot), the exercise of jurisdiction would not meet the second requirement under *International Shoe*, namely that

25

maintaining the suit in the forum "not offend traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316 (internal quotation marks omitted).  The Supreme Court has explained that this requirement focuses on whether the exercise of jurisdiction would be "reasonable," an analysis which is guided by four factors:  (1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interest in obtaining convenient and effective relief; (3) the interstate judicial system's interest in obtaining efficient resolution of controversies; and (4) the interest of the several States in furthering fundamental substantive social policies.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  These factors overlap with the last two (non-dispositive) factors under the Eighth Circuit's test for measuring jurisdictional contacts. *Whaley*, 946 F.3d at 452.  All of the factors weigh heavily against maintaining suit in Arkansas.

The first factor—"the forum state's interest in adjudicating the dispute"—easily favors dismissal.  Arkansas has virtually no interest in providing a forum for this dispute.  With the exception of Greathouse, none of the Plaintiffs are even Arkansas residents.  Am. Compl. ¶¶ 16–19.  And even Greathouse, who is an Arkansas resident, admits that he wanted the loan from CPF, because CPF was local to Texas, where Greathouse used to be located, rather than Arkansas, where he is currently located.  *See* Emails from E. Greathouse to E. Donnelly (Oct. 2, 2021) (**Ex. B**).  As explained, the alleged contract does not reference Arkansas, nor does it designate any event to occur in Arkansas.  *See* Am. Compl., Ex. A at 1–11 (PDF 58–68).  This case is also not one in which the forum state has a generalized interest in providing a forum for an injured resident. Because PPP loans were widely available and fully backed by the SBA, any "injury" to Greathouse was limited to his inability to get money under an essentially gratuitous federal program.  And, of course, Arkansas has absolutely no interest in adjudicating the Non-Arkansas Plaintiffs' claims.

The second factor—"the plaintiff's interest in obtaining convenient and effective relief"—similarly favors dismissal.  Apart from Plaintiffs' own choice to file this case in Arkansas, there is no reason to believe that maintaining suit in Arkansas (subject to Defendants' 12(b)(1) and 12(b)(6) challenges set forth in this motion) would be more convenient or effective than doing so in, for example, Texas, where at least personal jurisdiction over Defendants could easily be established.  Plaintiff Sumrall is herself a resident of Texas (Am. Compl. ¶ 18), and so litigating in her home state would be objectively more convenient than doing so in Arkansas.  Plaintiff Greathouse, even though he is a resident of Arkansas (Am. Compl. ¶ 16), admits that CPF was a local company to him because he used to work in Texas (*see* Emails from E. Greathouse to E. Donnelly (Oct. 2, 2021)), and so litigating in Texas would not require him to submit to a foreign or unfamiliar forum.  Plaintiffs Covarrubias and Myles are  residents of California and North Carolina (Am. Compl. ¶¶ 17, 19), and so would be required to travel regardless of whether the case proceeds, if at all, in Arkansas or Texas.  The same is true for most of Plaintiffs' counsel, who are based in Washington, DC and New York.  Am. Compl. at 56.

The third factor—"the interstate judicial system's interest in obtaining the most efficient resolution of controversies"—weighs in favor of dismissal.  As explained, neither CPF nor Crossroads have any operations or employees in Arkansas, and rather have their operations based in Texas.  Decl. of F. Giga ¶¶ 6–10.  Most of the witnesses in this case, including one of the named Plaintiffs (Sumrall) reside in Texas.  There is thus no efficiency to be gained from litigating in Arkansas.  This conclusion is only bolstered by the fact that Plaintiffs have sued on behalf of a putative class.  The Amended Complaint alleges that CPF "reportedly processed 472,036 PPP loans" and did so for borrowers "across the country," Am. Compl. ¶¶ 9, 13, but that only "2,578" of those PPP loans were for "qualified borrowers residing in the State of Arkansas." *Id.* ¶ 26.  In

the event a class were ever certified (which Defendants would challenge), it would make no sense to consolidate those claims in Arkansas—a state in which only about 0.5% of the alleged PPP loans occurred, and a state which has no significance to the class apart from being the current residence of the first plaintiff to sue—rather than Texas, the state in which CPF is based and where its decisions regarding PPP lending principally were made.  Decl. of F. Giga ¶ 10.

The final factor—"the interest of the several States in furthering fundamental substantive social policies"—similarly supports dismissal.  Of course, any one state has little interest relative to another in adjudicating whether an individual plaintiff should have received money under a federal government program.  But to the extent Plaintiffs are alleging misconduct by CPF and Crossroads—Texas, rather than Arkansas, would have the superior interest in regulating the conduct of these Texas-based and Texas-regulated financial institutions.

*       *       *

Personal jurisdiction is lacking in this case under well-settled precedent.  This is not a close case, and Defendants respectfully request that the Court dismiss the Amended Complaint under Rule 12(b)(2), <u>which would obviate the Court's need to consider the alternative bases for dismissal presented in the remainder of this Motion</u>.

## II.   Plaintiffs' Request for Jurisdictional Discovery Should be Denied.

Plaintiffs' request for "jurisdictional discovery" (Am. Compl. ¶ 37 & n.1) is improper as a matter of law.  Under  Eighth Circuit precedent, a plaintiff bears the initial burden of establishing personal jurisdiction, and jurisdictional discovery is permitted only  if "certain facts necessary to resolving the jurisdictional inquiry are either unknown or undisputed."  *Viasystems, Inc. v. EBM-Pabst St. George GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011) (affirming trial court's denial of jurisdictional discovery in a case in which plaintiff failed to meet its initial burden but claimed that discovery would "likely show" that defendant had relationships in the forum).  That

is precisely the purpose of Plaintiffs' request for jurisdictional discovery in this case, purportedly to "provide additional evidence regarding the substantial and direct business Defendants did at all relevant times in this District." Am. Compl. ¶ 37.  This request is improper, and is at best a thinly veiled attempt to use jurisdictional discovery as a vehicle to investigate the scope and claims of their putative class.

This case requires no jurisdictional discovery because, as demonstrated in this Motion, Plaintiffs' allegations fail to establish personal jurisdiction over the Defendants in Arkansas.  No facts are in dispute:  Defendants do not dispute that CPF may have had borrowers in Arkansas or that it may have had communications with those borrowers and with the SBA's service center in Arkansas.  While Defendants have submitted a declaration attesting that they do not have any offices, operations, or employees in Arkansas, there is nothing in Ms. Giga's declaration which disputes the facts Plaintiffs have alleged in the Amended Complaint.  The same declaration was also submitted in support of Defendants' original motion to dismiss, yet the Amended Compliant does not allege that any facts stated in the declaration are inaccurate, apart from Plaintiffs' conclusory statement that the declaration is "self-serving." *Id.* ¶ 24.  Rather, the Amended Complaint simply purports to provide "other publicly available facts," that Plaintiffs believe were "omit[ted]" from the declaration. *Id.* (emphasis in original) (alteration added).

At the Court's telephonic conference on this issue, Plaintiffs argued that they should be permitted to depose Ms. Giga because she submitted a declaration in this case in support of the motion to dismiss.  This argument entirely misses the mark.  Plaintiffs are not entitled to jurisdictional discovery merely because Defendants have submitted a declaration. *See, e.g.*, *Wesson v. Lamb AB*, 2018 WL 11320712, at *7–8 (W.D. Ark. June 18, 2018) (denying plaintiff jurisdictional discovery including taking deposition of affiant where Plaintiff did not describe

29

"what specific information she seeks through jurisdictional discovery or how it would support personal jurisdiction.").[8]  Plaintiffs have to show that jurisdictional facts are either unknown or in dispute, *Viasystems, Inc.*, 646 F.3d at 598, which the Amended Complaint does not do, and rather confirms the opposite.

### III.   If the Court Exercises Personal Jurisdiction, the Amended Complaint Should Still be Dismissed for Lack of Standing and for Failure to State a Claim.

Should the Court determine that it may exercise personal jurisdiction in this case, the Amended Complaint should still be dismissed under Rules 12(b)(1) and 12(b)(6) for lack of standing and for failure to state a claim.

### A.   Plaintiffs' Breach of Contract Claims Should be Dismissed.

Plaintiffs' breach of contract claims against Defendants should be dismissed for four reasons.  First, Plaintiffs lack Article III standing because they fail to demonstrate a legally cognizable injury.  Second, Plaintiffs lack statutory standing, because the Notes they seek to enforce are negotiable instruments governed by Article 3 of the Uniform Commercial Code ("UCC"), and under Article 3, a borrower is not one of the parties permitted to enforce a negotiable instrument.  Third, Plaintiffs failed to plead the existence of a contract because the documents they claim are a "contract" lack any actual promise by Defendants to fund the loan.  Finally, even if Plaintiffs did plead the existence of a contract, they have pled themselves out of court, because the documents they claim to be the contract contain a release that precludes their claims in this case.

---

[8] *See also Madrinas Brands, LLC v. Horseshoe Bev. Co., LLC*, 2022 WL 823055, at *5 (E.D. Mo. Mar. 18, 2022) ("Challenging the veracity of a declarant is not a sufficient reason to permit jurisdictional discovery."); *Revenexx v. Regenex Health LLC*, 446 F. Supp. 3d 469, 476 n.2 (S.D. Iowa 2020) (denying jurisdictional discovery where plaintiff "offered no evidence to rebut the assertions" in defendant's declaration, and its request to "test the veracity" of the statements in the declaration amounted to "no more than a fishing expedition.").

### 1.     Plaintiffs Lack Article III Standing.

Plaintiffs lack Article III standing to sue because they fail to adequately allege that their inability to obtain PPP loans from CPF was a concrete injury.  Under Article III of the Constitution, federal courts may adjudicate only actual cases or controversies, for which standing is a prerequisite.  *See Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008). Article III standing requires that a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016).  "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id.* (alterations, internal quotation marks, and citations omitted).  The "injury in fact" requirement demands that a plaintiff establish "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339.

Plaintiffs fail to demonstrate a concrete injury because the Amended Complaint does not allege that they even <u>tried</u> to obtain a PPP loan from another authorized lender despite that PPP loans were broadly available, and they allege that other lenders offered PPP loans as well.  *See* Am. Compl. ¶¶ 9, 78 (pleading that "Bank of America, PNC Bank, TD Bank and Wells Fargo" participated in PPP lending).  Plaintiffs' claims that they allegedly could not obtain from one lender a type of loan that was widely available, without alleging that they even tried to obtain the loan elsewhere, is at best too speculative to serve as injury to support Article III standing.  *See New England Power Generators Ass'n, Inc. v. F.E.R.C.*, 707 F.3d 364, 369 (D.C. Cir. 2013) ("conceivable yet 'hypothetical' scenario" not an injury sufficient to support standing); *see also Auer v. Trans Union, LLC*, 902 F.3d 873, 879 (8th Cir. 2018) (injury that may have occurred "theoretically" not sufficient to support standing).

Indeed, other courts have recognized that because there were thousands of PPP lenders, a plaintiff's inability to obtain a PPP loan from <u>one particular lender</u> is not a cognizable injury. *See Pinehurst Neuropsychology, PLLC v. First-Citizens Bank & Trust Co.*, 2021 WL 4460273, at *3 (M.D.N.C. Sept. 29, 2021); *see also Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 755 (D. Md. 2020) ("Since … there are thousands of institutions participating in PPP, and several that accept loans from new customers, BofA, by definition, has not denied Plaintiffs access to the PPP."); *Scherer v. Wells Fargo Bank, N.A.*, No. H–20–cv–1295, Order, Dkt. # 20 at 3 (S.D. Tex. Apr. 29, 2020) (unpublished) ("As of April 16, 2020, the Administration has identified 4,975 lenders.  Plaintiffs fail to show how Plaintiffs would suffer irreparable injury if not given access to a loan specifically from Wells Fargo.  Plaintiffs also fail to explain why Plaintiffs could not obtain loans under the PPP through another lender."); *Elizabeth M. Byrnes, Inc. v. Fountainhead Com'l Cap., LLC*, 2021 WL 5507225, at *4 (C.D. Cal. Nov. 24, 2021) (dismissing claim in which plaintiff's only injury was the "loss of use of money [from the PPP]," when plaintiff caused her own harm "by refraining from applying elsewhere").  Accordingly, Plaintiffs lack Article III standing because the Amended Complaint fails to demonstrate a concrete injury stemming from their alleged inability to obtain a PPP loan <u>from CPF</u>.

### 2.    Plaintiffs Lack Statutory Standing.

Plaintiffs' breach of contract claims also fail for lack of statutory standing under Article 3 of the UCC.  Plaintiffs' contract claims are based exclusively on the Note and its accompanying documents.  *See* Am. Compl. ¶ 174 (alleging that "[t]he standard form promissory Note and accompanying Loan Documents that CPF and the members of the proposed Class entered into are binding, enforceable agreements.").  A "complete copy" of these documents for Plaintiff Greathouse is attached as Exhibit A to the Amended Complaint.  *See* Am. Compl. at Ex. A (PDF 58–70).  And the Non-Arkansas Plaintiffs all allege that they received and signed the "same

standard form PPP promissory Note and accompanying standard form Loan Documents … that Plaintiff Greathouse also received and signed."  *Id.* ¶¶ 125, 141, 152.  Similarly, all of the Plaintiffs' contract claims against Crossroads rest on same alleged contract (*i.e.*, the Note and attachments) because they allege that Crossroads is liable on the contract claims only as CPF's alter ego.  *See id.* ¶ 191.  Under Article 3, however, a promissory note is considered a "negotiable instrument," which only certain parties may enforce, and borrowers, like Plaintiffs, are not among those parties.

**Plaintiffs' Notes are "negotiable instruments."**  Article 3 of the UCC has been adopted by all four of the Plaintiffs' states of residence, Arkansas, California, Texas, and North Carolina. *See* ARK. CODE ANN. §§ 4–3–101, *et seq.*; CAL. COM. CODE §§ 3101, *et seq.*, TEX. BUS. & COM. CODE §§ 3.101, *et seq.*; N.C. GEN. STAT. ANN. §§ 25–3–101, *et seq.*[9]  A promissory note is generally considered a "negotiable instrument" subject to Article 3 of the UCC.[10]  A negotiable instrument is defined as:

> an unconditional promise … to pay a fixed amount of money, with or without interest … if it (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money ….

---

[9] Defendants assume for purposes of this motion to dismiss that the substantive law of each Plaintiff's home state would apply to the issue of whether any contract each Plaintiff had is enforceable.  However, because Arkansas, California, North Carolina, and Texas have all adopted the material provisions of Article 3 in substantially the same form, a choice-of-law determination is unnecessary, as the result would be the same under any of these states' laws.

[10] *See, e.g.*, *McKay v. Cap. Res. Co. Ltd.*, 327 Ark. 737, 739, 940 S.W.2d 869, 870 (1997); *Kahn v. Lasorda's Dugout, Inc.*, 109 Cal. App. 4th 1118, 1124 n.5, 135 Cal. Rptr. 790, 795 n.5 (2003).

ARK. CODE ANN. § 4–3–104(a); CAL. COM. CODE § 3104(a); TEX. BUS. & COM. CODE § 3.104(a); N.C. GEN. STAT. ANN. § 25–3–104(a).  Plaintiffs' Notes at issue in this case meet the definition of a "negotiable instrument."

First, a promise is "payable to the bearer" if it "indicates that the person in possession of the promise or order is entitled to payment."  ARK. CODE ANN. § 4–3–109(a); CAL. COM. CODE § 3109(a) (same); TEX. BUS. & COM. CODE § 3.109(a) (same); N.C. GEN. STAT. ANN. § 25–3–109(a) (same).  Here, CPF is clearly defined as the "lender" in Plaintiff Greathouse's Note attached to the Amended Complaint and is identified as the recipient of the promise to pay on the date the note was issued, April 18, 2021.  *See* Am. Compl., Ex. A at 1 (PDF at 58) (defining "Lender" as "Capital Plus Financial" and indicating that "Borrower promises to pay to the order of Lender ….").  The other Plaintiffs allege that their Notes were the same as Greathouse's.  *Id.* ¶¶ 125, 141, 152.  Plaintiffs' Notes would also be considered "payable … to order," under the alternative provided in part (1) of the "negotiable instrument" definition, *e.g.*, ARK. CODE ANN. § 4–3–104(a)(1), because the Note attached to the Amended Complaint plainly states that the borrower shall "pay to the order of Lender the amount of [the loan]."  Am. Compl., Ex. A at 1 (PDF 58) (emphasis added).

Second, a promise is "payable at a definite time" if it is "payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued."  ARK. CODE ANN. § 4–3–108(b); CAL. COM. CODE  § 3108(b); TEX. BUS. & COM. CODE § 3.108(b); N.C. GEN. STAT. ANN. § 25–3–108(b).  Plaintiffs' Notes satisfy the specification of a "definite time" because the Note attached to the Amended Complaint (which is the same as to all Plaintiffs, Am. Compl. ¶¶ 125, 141, 152), provides that the "Borrower must pay principal and interest payments every month, beginning the

eleventh (11th) month from the date of end of the Covered Period" and that "Payments must be made on the first calendar day in the months they are due."  Am. Compl., Ex. A at 2 (PDF 59).

Finally, Plaintiffs' Notes meet the third definitional requirement of a "negotiable instrument," because the Note attached to the Amended Complaint (again, the same for all Plaintiffs) does not require the borrower to do any other acts apart from payment.  *See* Am. Compl., Ex. A at 1–5 (PDF at 58–62).  Accordingly, the Notes at issue in this case are negotiable instruments.

**Plaintiffs may not enforce the Notes.**  Under Article 3, a negotiable instrument may only be enforced by (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person in possession of the instrument who is entitled to enforce the instrument pursuant to sections 3–309 or 3–418(d).  ARK. CODE ANN. § 4–3–301; CAL. COM. CODE § 3301; TEX. BUS. & COM. CODE § 3.301; N.C. GEN. STAT. ANN. § 25–3–301. Plaintiffs do not qualify as any of these three parties eligible to enforce their respective Notes.

First, Plaintiffs are not holders of their Notes.  Under the UCC, a "holder" is defined as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."  ARK. CODE ANN. § 4–1–201(b)(21); CAL. COM. CODE § 1201(b)(21); TEX. BUS. & COM. CODE § 1.201(b)(21); N.C. GEN. STAT. ANN. § 25–1–201(b)(21).  While Plaintiffs do purport to <u>possess</u> their Notes, the terms of Plaintiff Greathouse's Note attached to the Amended Complaint (which is the same Note possessed by the other Plaintiffs, Am. Compl. ¶¶ 125, 141, 152) do not state that it is payable to any bearer, nor does it identify Greathouse as a person to whom the Note is payable.  *See* Am. Compl., Ex A at 1–6 (PDF 58–63). To the contrary, the Note identifies a different payee altogether, namely CPF.  *Id.*, Ex. A at 1 (PDF 58) (providing that "Borrower promises to pay to the order of Lender the amount of $15665" and

defining "Lender" as "Capital Plus Financial").  Plaintiffs are simply not the Notes' holders.  Indeed, Article 3 separately defines the obligor/payor on a note as the "maker."  ARK. CODE ANN. § 4–3–103(a)(6) ("'Maker' means a person who signs or is identified in a note as a person undertaking to pay."); CAL. COM. CODE § 3103(a)(55); TEX. BUS. & COM. CODE § 3.103(a)(7); N.C. GEN. STAT. ANN. 25–3–103(a)(5).  And nothing under Article 3 gives the maker of a negotiable instrument the right to enforce it.

Second, none of the Plaintiffs is a "nonholder in possession of the instrument who has the rights of a holder."  Plaintiff Greathouse's Note attached to the Amended Complaint (which is the same as to all Plaintiffs, Am. Compl. ¶¶ 125, 141, 152), provides that CPF, the payee and Lender, may assign, sell, or transfer the Note to other parties  See Am. Compl., Ex. A at 3 (PDF 60 §§ 6.A–B).  But no assignment, sale, or transfer has occurred, nor do Plaintiffs allege any dispositions of their Notes.

Finally, Plaintiffs are not persons entitled to enforce the Note pursuant to section 3–309 or 3–418(d), which are the final categories of people who may enforce a negotiable instrument, simply because neither section applies here.  Section 3–309 applies to lost, destroyed, or stolen instruments and section 3–418(d) applies to acceptance or payment of an instrument by mistake.  ARK. CODE ANN. §§ 4–3–309, 4–3–418(d); CAL. COM. CODE §§ 3309, 3418(d); TEX. BUS. & COM. CODE §§ 3.309, 3.418(d); N.C. GEN. STAT. ANN. §§ 25–3–309, 25–3–418(d).

Because Plaintiffs do not fall into any of the Article 3 categories of persons permitted to enforce their respective Notes, they lack statutory standing to do so, and their breach of contract claims should accordingly be dismissed.

### 3.        Plaintiffs Fail to Plead the Existence of a Contract.

Plaintiffs' contract claims also fail because they do not plead the existence of a contract.  The existence of a contract is a bare minimum requirement for a breach of contract claim under

the laws of all four Plaintiffs' home states.  *E.g.*, *Perry v. Baptist Health*, 358 Ark. 238, 244, 189 S.W.3d 54, 58 (2004); *J.B.B. Inv. Partners Ltd. v. Fair*, 37 Cal. App. 5th 1, 9, 249 Cal. Rptr. 3d 368, 377 (2019); *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.— Houston [1st Dist.] 2001, no pet.); *Thompson v. Bass*, 261 N.C. App. 285, 290, 819 S.E.2d 621, 625 (2018).[11]

Plaintiffs allege that the "standard form promissory note" and its "accompanying Loan Documents," all attached as Exhibit A to the Amended Complaint, constitute a binding, enforceable contract.  Am. Compl. ¶ 174; *see also id.* ¶ 177 (alleging that Exhibit A is a "complete copy" of the loan documents).  And all Plaintiffs allege that they signed a Note that is the same as the one attached to the Amended Complaint.  *See id.* ¶¶ 109, 125, 141, 152, 177.  But the Note and its accompanying documents were not a contract requiring CPF to fund any loan.  While each Note contemplates a forthcoming loan, they lack any express promise by CPF to fund it.  *See id.*, Ex. A at 1–13 (PDF 58–70).  This was by design.  As is common in commercial lending and other industries, each Plaintiff's Note constituted his or her offer to enter into a unilateral contract, which CPF could accept by performance through funding the loan.  *Scholtes v. Signal Delivery Serv., Inc.*, 548 F. Supp. 487, 491 (W.D. Ark. 1982) ("The traditional distinction between a unilateral contract and a bilateral contract is that, in the former, the offer or promise of one party does not become binding or enforceable until there is performance by the other party, whereas, in the latter, it is not performance which makes the contract binding, but rather giving of a promise by one party for the promise of the other party.").  Because Plaintiffs' Notes and their accompanying documents

---

[11] Again, Defendants will assume for purposes of this motion to dismiss that the laws of each Plaintiff's' home state govern regarding the requirement of the existence of a contract in order to bring a breach of contract claim.  But, as with the issue of enforceability under Article 3, the laws of the four states on this particular issue are also similar.

lack any express promise to fund the loan, and rather merely contemplate forthcoming loans that Plaintiffs allege were not funded, their claim as pled establish nothing more than an unaccepted offer of a unilateral contract.[12]

### 4. Plaintiffs' Contract Claims Are Released.

Finally, even assuming <u>arguendo</u> that Plaintiffs have both standing and enforceable contracts (which they do not), the terms of the loan documents attached to the Amended Complaint—and which Plaintiffs contend constitute the contracts they are seeking to enforce (Am. Compl. ¶¶ 109, 125, 141, 152, 177)—contain a release of all claims against the Lender.  Under Federal Rule 10© a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Such documents may require dismissal of the complaint if they demonstrate that the plaintiff has pled himself out of court and is not entitled to relief.  *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 943–44 (8th Cir. 2021) ("[W]hen the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense … a complaint that otherwise states a claim [may] be dismissed under Rule 12(b)(6).").

Section 11 of the Note attached to the Amended Complaint provides that:

> In consideration of the agreement of the Lender to provide this Note, and other good and valuable consideration … Borrower RELEASES, ACQUITS AND FOREVER DISCHARGES the Lender, its directors, officers, shareholders, agents, contractors, employees, affiliates, attorneys, successors and assigns **from any and all claims, demands, liens, damages, actions or suits, of whatsoever nature or character**, whether statutory (including without limitation usury and deceptive trade practices claims), in

---

[12] *See, e.g.*, *In re Holiday Intervals, Inc.*, 931 F.2d 500, 504 (8th Cir. 1991) (contemplating that a loan to which promissory note is attached could be a unilateral contract); *Quan v. Delgado*, 2007 WL 1704652, at *3 (Cal. App. Jun. 14, 2007) (noting that "most promissory notes" are "unilateral" contracts); *Carson v. Nat. Life Ins. Co.*, 161 N.C. 441, 77 S.E. 353, 354 (1913) ("contracts which create a present obligation and are on their face unilateral in operation" include "promissory note[s]"); *Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*, 328 F. Supp. 598, 623 (N.D. Tex. 2018) (several promissory notes determined to be "unilateral" and "binding only on [the borrower]").

> contract or in tort, known or unknown, which have accrued or may accrue to Borrower or any creditor or affiliate of Borrower on account of any injuries, damages or losses or otherwise arising out of or in any way connected to (i) any extension of credit by the Lender to Borrower on or prior to the date hereof, or (ii) any matter or thing done, omitted or suffered to be done by the Lender, its directors, officers, shareholders, agents, employees, affiliates, attorneys, predecessors or assignors on or prior to the date hereof.

Am. Compl., Ex. A at 5 § 11 (PDF 62) (emphasis added).

In this case, Plaintiffs' contract claims are covered under the express terms of the release, which applies to "all claims, demands, liens, damages, actions or suits, of whatsoever nature or character" including claims "in contract or in tort." *Id.*  The release applies to any claim that has "accrued or may accrue to Borrower," as long as the claim is "arising out of or in any way connected to … any matter or thing done … by the Lender … on or prior to the date [of the Note]"—which similarly applies here because Plaintiffs' claims are expressly connected to things done by CPF on or before the date of the Note, April 18, 2021.  *See, e.g.*, Am. Compl. ¶¶ 109–112 (on April 18, 2021, Plaintiff received the Note identifying CPF as the lender and which included a document "bearing the signature of CPF Chief Financial Officer Giga"); *id.* ¶ 113 ("Also on April 18, 2021, Greathouse was advised by email that his loan was approved and was being funded.").  Any contracts that may have been created by Plaintiffs' Notes plainly release their claims against CPF.[13]  These types of releases of "any and all claims" are permitted and are routinely enforced. *See, e.g.*, *Bender v. Xcel Ener., Inc.*, 507 F.3d 1161, 1170–71 (8th Cir. 2007); *One Bank & Trust, N.A. v. Galea*, 2012 WL 6019091, at *6 (E.D. Ark. Dec. 3, 2012); *Baldwin v. Saline RC Ops., LLC*, 2014 WL 1874876, at *1 (E.D. Ark. May 8, 2014).  To the extent the Court

---

[13] Furthermore, section 11 of the Note also releases Crossroads, CPF's parent company, which is both an "affiliate" and a "shareholder" of CPF, and therefore among the released parties subject to the release.  Am. Compl., Ex. A at 5 § 11 (PDF 62); *see* Am. Compl. ¶¶ 38, 70, 78 (admitting that Crossroads is CPF's "corporate parent").

determines that Plaintiffs pled the existence of a contract, Plaintiffs have pled themselves out of court by alleging a contract that contains a release precluding their claims.

      **B.**       **Plaintiffs' Unjust Enrichment Claims Should be Dismissed.**

Plaintiffs' unjust enrichment claims should be dismissed for three reasons. First, the law of Covarrubias's home state, California, does not recognize unjust enrichment as an independent cause of action. Second, all of the Plaintiffs fail to plead that they conferred a benefit on Defendants, which is required for a claim of unjust enrichment. Third, to the extent any contract exists, the unjust enrichment claim is covered by the release.

      **1.**       **Plaintiff Covarrubias Has No Claim for Unjust Enrichment, because California Law Does Not Recognize Unjust Enrichment as an Independent Cause of Action.**

The Court should dismiss Plaintiff Covarrubias's unjust enrichment claims because the law of his home state does not permit unjust enrichment claims. Under the *Erie* doctrine, federal courts should apply the choice-of-law rules of the state in which they sit—here, Arkansas. *E.g.*, *Davis v. Liberty Mut. Ins. Co.*, 55 F.3d 1365, 1367 (8th Cir. 1995). Arkansas choice-of-law decisions generally apply the substantive law of the plaintiff's home state to claims for unjust enrichment. *See, e.g.*, *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1088 (E.D. Ark. 2013); *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 427 (E.D. Ark. 2010). Because Plaintiff Covarrubias resides in California (Am. Compl. ¶¶ 17), the substantive laws of California govern his unjust enrichment claim. California law, however, does not recognize an independent cause of action for unjust enrichment. *E.g.*, *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal.App.5th 323, 336, 269 Cal.Rptr.3d 406, 417 (2020) (disposition of unjust enrichment claim "was proper because California does not recognize a cause of action for unjust enrichment."). Accordingly, Plaintiff Covarrubias's unjust enrichment claims should be dismissed.

2.     **Plaintiffs Fail to Plead that they Conferred the Benefit on Defendants that they Seek to Recover, and their Pleadings Affirmatively Establish that they Did Not Confer the Benefit.**

While the laws of the remaining Plaintiffs' home states (Arkansas, Texas, and North Carolina) appear to permit claims for unjust enrichment, their claims should still be dismissed, because they fail to plead that they conferred the benefit on Defendants that they are seeking to recover. Indeed, the Amended Complaint otherwise confirms that the benefit Plaintiffs seeks to recover was conferred by third parties. These failures impede Plaintiffs Greathouse, Sumrall, and Myles from establishing Article III standing to sue and from stating a claim. Accordingly, the Court may dismiss their unjust enrichment claims under either Rule 12(b)(1) <u>or</u> 12(b)(6).

**Article III standing.** First, Greathouse, Sumrall, and Myles fail to demonstrate standing. Standing requires that the plaintiff have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision. *Spokeo*, 578 U.S. at 338. An "injury in fact" requires that the plaintiff establish "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339.

The allegations supporting Plaintiffs' unjust enrichment claims do not establish that they suffered an injury in fact and rather affirmatively show that they did not. The "underlying principle" behind unjust enrichment "is that one person should not unjustly enrich himself at the expense of another." *Dews v. Halliburton Indus., Inc.*, 288 Ark. 532, 536, 708 S.W.2d 67, 69 (1986); *City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ) (similar); *Hinson v. United Fin. Servs., Inc.*, 123 N.C.App. 469, 473, 473 S.E.2d 382, 385 (1996) (similar). For this reason, "a party is not entitled to expectation damages for unjust enrichment; instead he is entitled to restitution." *Hartness v. Nuckles*, 2015 Ark. 444, at 8, 475 S.W.3d 558, 564; *First Union Nat. Bank v. Richmont Cap. Partners I, L.P.*, 168 S.W.3d

931 (Tex. App.—Dallas 2005, no pet.) (similar); *D.W.H. Painting Co., Inc. v. D.W. Ward Const. Co., Inc.*, 174 N.C.App. 327, 334, 620 S.E.2d 887, 892 (2005) (similar)

"[T]o measure restitution, the courts look at the defendant's gain or benefit," and thus, "a claimant seeking restitution for unjust enrichment can generally recover the value of the benefit conferred upon the party unjustly enriched." *Hartness*, 2015 Ark. 444 at 8; *Penick v. Penick*, 783 S.W.2d 194, 197 (Tex. 1988) (similar); *Progressive Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 184 N.C.App. 688, 695, 647 S.E.2d 111, 116 (2007) (similar).  Accordingly, only the party who conferred the benefit has standing to seek restitution for the unjust enrichment.  *Frigillana v. Frigillana*, 266 Ark. 296, 306, 584 S.W.2d 30, 34 (1979) ("A person who has been unjustly enriched <u>at the expense of another</u> is required to make restitution <u>to the other</u>"(emphasis added)); *Penick*, 783 S.W.2d at 197 (similar); *Progressive Am. Ins. Co.*, 184 N.C.App. at 695, 647 S.E.2d at 116 ("In order to establish a claim for unjust enrichment, a party must have conferred a benefit <u>on the other party</u>." (emphasis added)).

In the case before the Court, Plaintiffs Greathouse, Sumrall, and Myles lack standing because they fail to allege that the benefits they seek to recover from Defendants are benefits that <u>they</u> actually conferred.  The unjust enrichment claims seek recovery of "PPPLF advances and PPP loan processing fees" that Defendants have received in connection with allegedly un-funded PPP loans.  Am. Compl. ¶ 196.  But neither these Plaintiffs nor any other borrowers conferred these benefits on CPF.  Rather, and as the Complaint makes clear, the PPP loan fees were "payable by the SBA" (Am. Compl. ¶ 4) and liquidity advances under the PPPLF were administered by the Federal Reserve.  Am. Compl. ¶¶ 92–97.  Thus  Greathouse, Sumrall, and Myles not only fail to plead facts establishing standing to sue for unjust enrichment, but also plead facts affirmatively negating standing.

**Failure to state a claim.**   Even if Plaintiffs Greathouse, Sumrall, and Myles could somehow establish Article III standing to seek unjust enrichment, their failure to allege that they conferred a benefit on Defendants also renders them unable to state a claim.  As explained, a claim for unjust enrichment requires that the plaintiff conferred a benefit on the defendant.  *See Frigillana*, 266 Ark. at 306, 584 S.W.2d at 34; *Penick*, 783 S.W.2d at 197; *Progressive Am. Ins. Co.*, 184 N.C.App. at 695, 647 S.E.2d at 116.  The Amended Complaint does not identify any such benefit that Plaintiffs conferred on Defendants, and negates this element entirely by affirmatively pleading that the benefits Plaintiffs seek to recover were actually conferred by third parties.  *See* Am. Compl. ¶¶ 4, 92–97.

Furthermore, as it relates specifically to Plaintiffs' allegation that Defendants were unjustly enriched by having received liquidity advances from the PPPLF, *id.* ¶ 196, they further plead themselves out of Court by separately alleging that under the PPPLF, "the Federal Reserve Banks ('Reserve Banks') will lend to eligible borrowers [*i.e.*, PPP lenders] on a non-recourse basis, taking PPP Loans as collateral."  *Id.* ¶ 93 (emphasis added) (bracketing in original); *see also id.* ¶ 94 (noting that all "[PPP] lenders that are eligible to originate PPP loans are eligible to borrow under the Facility.").   In other words, Plaintiffs affirmatively plead that the purported "benefit" CPF received in the form of PPPLF advances was not a "benefit" that was "retained," but was rather just money borrowed from the Federal Reserve that had to be repaid.  They therefore fail to state a claim for unjust enrichment of the advances, because funds that have to be repaid (and with interest) are not a "benefit," let alone a benefit that is retained, as is required for a claim of unjust enrichment.  *See Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 21 381 S.W.3d 21, 36 (unjust enrichment is a claim for "restitution of or for property or benefits received, retained, or appropriated" (quoting *Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 366 Ark. 463, 469, 237

S.W.3d 20, 24 (2006))); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 368 (Tex. App.—Dallas 2009, pet. denied) (similar); *Holmes v. Solon Automated Servs.*, 231 N.C. App. 44, 51, 752 S.E.2d 179, 184 (2013) (similar).

As matter of law, Plaintiffs have not and cannot establish their unjust enrichment claims, and the Court should dismiss those claims.

> **3.     Plaintiffs' Unjust Enrichment Claims, like their Contract Claims, are also Released.**

Finally, even if Plaintiffs had met the requirements for alleging unjust enrichment claims (and they have not), these claims should still be dismissed as released.  As explained above, to the extent Plaintiffs have alleged any contract, they pled themselves out of Court because, the documents they contend to have constituted the contract contain the broad "any and all claims" release. *Supra* § III.A.4.

> **C.     Plaintiff Covarrubias Fails to State a Claim Under the California Unfair Competition Law.**

Count four of the Amended Complaint, violation of the UCL, which is brought only by Plaintiff Covarrubias (Am. Compl. ¶ 207), should be dismissed for several reasons.  First, the UCL requires either "unlawful" or "unfair" conduct, and none of Covarrubias's allegations to state facts showing either.  Second, Covarrubias fails to plead facts showing that he would be entitled to injunctive relief or restitution, which are the only remedies provided by UCL.  Third, the Covarrubias's UCL claim is barred by the UCL's "safe harbor rule," which protects defendants from claims over conduct the legislature has expressly permitted or otherwise protected from suit. Fourth, even if Covarrubias could otherwise state a claim under the UCL, such a claim—like all other claims in this case—would be barred under the release.  And finally, even if Covarrubias had pled a valid UCL claim, the Court should still dismiss the claim based on well-settled abstention principles under California law governing UCL claims.

### 1.     Covarrubias Does Not Allege "Unlawful" or "Unfair" Conduct.

Covarrubias's UCL claim fails as pled, because he does not allege conduct actionable under the UCL.  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  CAL. BUS. & PROF. CODE § 17200.  Covarrubias does not allege any "fraudulent" conduct, and instead attempts only to allege conduct that was "unlawful" or "unfair."  Am. Compl. ¶¶ 206–211, 212–214.  But his allegations do not establish <u>either</u> "unlawful" or "unfair" conduct as a matter of law.

**"Unlawful" conduct.**  First, Covarrubias fails to allege any "unlawful" conduct.  To state a UCL claim for "unlawful" conduct, the plaintiff must allege a predicate violation of another law.  *See Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1180 (E.D. Cal. 2010) ("the UCL 'borrows' violations of other laws and treats them as unlawful practices independently actionable"); *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) ("To be 'unlawful' under the UCL, the advertisements must violate another 'borrowed' law."); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 548 (8th Cir. 2015) (affirming dismissal of plaintiff's UCL claim for failure to plead violation of "borrowed" law).

In our case, Covarrubias comes nowhere close to pleading a violation of a predicate law. He does not identify any particular law that he claims Defendants violated, but instead asserts that Defendants (1) "breached the Loan Documents and accompanying legal duties"; (2) "obtained fees and other compensation to which it was not entitled"; and (3) "wrongfully deprived … Covarrubias" of PPP loan proceeds. Am. Compl. ¶¶ 208–209. These vague allusions to legal wrongdoing do not "point to" a "predicate violation of law." *Hamilton*, 746 F. Supp. 2d at 1180 (E.D. Cal. 2010) (dismissing UCL claim where "[t]he complaint point[ed] to no predicate violation of law").

To the extent Covarrubias grounds his "unlawful" claim in contract law, that too is insufficient.  As explained, Covarrubias lacks standing to enforce the documents he claims to be a

contract, and, in any event fails to plead that those documents are a contract at all.  *Supra*

§§ III.A.1–3.  But even if Covarrubias had pled an enforceable contract, breach of a contract alone

is <u>not</u> a predicate act sufficient to state a UCL claim.  California courts have made clear that a

plaintiff attempting to use a breach of contract as the predicate act must also plead that the breach

is <u>independently</u> unlawful, unfair or fraudulent, which Covarrubias does not do.  *See Sybersound*

*Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008); *see also Salone v. Bank of Am.,*

*N.A.*, 2018 WL 3815041, at *5 (C.D. Cal. June 22, 2018) ("Because Plaintiff's only remaining

claims are for breach of contract and breach of the implied covenant of good faith and fair dealing,

he cannot state a UCL claim under the unlawful prong.").  Because Covarrubias has not pled that

the alleged contractual breaches independently violated some other predicate law (*see* Am. Compl.

¶¶ 206–210), he cannot maintain a UCL claim for "unlawful" conduct.

> **"Unfair" conduct.**  Second, Covarrubias also fails to allege any "unfair" conduct.  His
attempts to do so are similarly based on his claims that Defendants breached a contract to fund his
PPP loan.  Am. Compl. ¶¶ 212–214.  As with the "unlawful" prong, bare allegations of breach of
contract, without more, do not state a claim for "unfair" competition.  *See Sybersound Recs., Inc.*,
517 F.3d at 1152 (dismissing claim where plaintiff failed to plead "that the breaches of contract
[were] independently unlawful, unfair, or fraudulent"); *Salone*, 2018 WL 3815041, at *6 (C.D.
Cal. Jun. 22, 2018) ("Defendant may not have followed through with its promises, but such a
failure alone does not constitute an unfair business practice.").  Nor do Covarrubias's allegations
of harms stemming from the breach (*i.e.*, supposed "locking" of borrowers "into CPF," Am.
Compl. ¶ 213) push the claim over the line.  Courts require <u>significant</u> harms to competition,
including regular and intentional misconduct, in order to state a claim for "unfair" competition*.*
*Prudential Ins. Co. of Am. v. Herman*, 2009 WL 10674431, at *4 (C.D. Cal. Aug. 31, 2009)

(dismissing "unfair" conduct claims based on breaches of contract as improperly pled on basis that "[t]hese alleged breaches perhaps harmed the counterclaimants, but it is unclear how they would significantly harm competition."). Covarrubias has not pled conduct materially exceeding ordinary contractual breaches. *See* Am. Compl. ¶¶ 212–214.

> ### 2. Covarrubias Does Not Allege Facts That Would Entitle Him to Any Form of Relief Available Under the UCL.

Covarrubias's UCL claim also fails as pled because he does not state facts that would entitle him to any remedy. "Only two remedies are available under the UCL: injunctive relief and restitution." *Clifford v. Quest Software, Inc.*, 38 Cal. App. 5th 745, 749, 251 Cal. Rptr.3d 269, 274 (2019). Covarrubias does not allege any facts showing that he would be entitled to either.

**Injunctive relief.** First, Covarrubias fails to state claim for injunctive relief under the UCL. The UCL reserves injunctive relief for situations in which there is "a threat that the wrongful conduct will continue." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 702, 38 Cal.Rptr. 3d 36, 64 (2006), *as modified on denial of reh'g* (Jan. 31, 2006) (same); *Mathews v Gov't Emps. Ins. Co.*, 23 F. Supp. 2d 1160, 1165 (S.D. Cal 1998) (similar). Plaintiffs are not entitled to injunctive relief because, even if Defendants' conduct constituted unfair competition, there is no possibility that it could happen again—the PPP program is over. For this same reason, Plaintiffs also lack Article III standing to seek an injunction. *See Brazil v. Ark. Dep't of Hum. Servs.*, 892 F.3d 957, 960 (8th Cir. 2018) (noting that "a plaintiff seeking injunctive relief to guard against future unlawful conduct must be under 'a real and immediate threat of injury'" (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983))).

**Restitution.** Second, Covarrubias fails to state a claim for restitution under the UCL. The California Supreme Court has explained that the UCL "is not an all-purpose substitute for a tort or contract action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1150, 63 P.3d

47

937, 948 (2003).  Rather, restitution is considered "ancillary" to "an injunction," which is the "primary form of relief available under the UCL.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 319, 207 P.3d 20, 34 (2011).  Restitution is permitted under the UCL only when "necessary to <u>restore</u> to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." *Id.* (emphasis added).  Accordingly, an order of restitution under the UCL is one that "compel[s] a … defendant to <u>return</u> money obtained through an unfair business practice <u>to those persons in interest from whom the property was taken</u>, that is, to persons who had an ownership interest in the property or those claiming through that person. *Korea Supply Co.*, 29 Cal. 4th at 1145, 63 P.3d at 944 (emphasis added).  A plaintiff can show an "ownership interest" sufficient to allow a restitution claim by either (1) seeking the "return of money or property that was once in [the plaintiff's] possession", or (2) seeking the return of money or property in which plaintiff had a "vested interest." *Id.* at 1149, 63 P.3d at 947.

Covarrubias makes no claim for the return of anything he once possessed.  Rather, he seeks "restitution for the amount of the <u>wrongfully withheld</u> PPP loan proceeds plus interest."  Am. Compl. ¶ 216 (emphasis added).  Covarrubias's restitution claim therefore <u>depends</u> on his never having possessed the funds.  Nor has he alleged facts that would entitle him to restitution of any funds in which he had a "vested interest."  For an interest to be "vested," it must be an "identifiable kind of property or entitlement in defendant's hands," and not merely a "contingent expectancy of payment," which is "not recoverable under the UCL as a matter of law."  *Ozeran v. Jacobs*, 798 F. App'x 120, 122–23 (9th Cir. 2020) (internal quotations omitted)..  A loan of any type does not represent funds in which a borrower has a "vested interest," because, by definition, those funds are borrowed only temporarily and must be repaid.  *Cf. Lawrence v. Wilson*, 44 Cal. App. 690, 694, 187 P. 30, 32 (1919) (interest in a loan "was not … a vested interest, but was a mere expectancy").

Even under the PPP, where certain loans are entitled to forgiveness, forgiveness is not guaranteed and is, at best, a "contingent expectancy," based on application of the several requirements and criteria under the PPP.  *See* 15 U.S.C. § 636(a)(36)(J).  Indeed, the Amended Complaint even acknowledges that CPF was <u>itself</u> borrowing the funds it used to make PPP loans, by drawing from the PPPLF credit facility, Am. Compl. ¶¶ 92–97, and thus whatever funds CPF issued as part of a PPP loan would have been borrowed twice over—once by CPF from the credit facility and then a second time by the borrower from CPF.  This is precisely the type of attenuated "contingent expectancy of payment from a third party" that California courts have rejected as not amounting to a "vested interest" on which a UCL restitution claim may be based.  *Korea Supply Co.*, 29 Cal.4th at 1150, 63 P.3d at 42.

### 3.     Covarrubias's UCL Claim is Barred by the "Safe Harbor" Rule.

Covarrubias's UCL claim should also be dismissed as barred under the UCL's judicially recognized "safe harbor" for defendants operating pursuant to legislative permission.  As the California Supreme Court explained, "[w]hen specific legislation provides a 'safe harbor' plaintiffs may not use the general unfair competition law to assault that harbor."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 182, 973 P.2d 527, 541 (Cal. 1999).  Where the legislature has permitted certain conduct or barred suit on the basis of that conduct, courts cannot "override that determination" and declare the conduct "unfair." *Id.*

The CARES Act, which establishes the PPP, does not grant plaintiffs a private right of action.  *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 751 (D. Md. 2020), *appeal dismissed*, 2020 WL 6042036 (4th Cir. May 28, 2020).  Nor does it impose prohibitions on what lenders may do "in their processes for accepting or processing applications."  *Id.* at 748.  Rather, the CARES Act delegated responsibility and discretion to lenders to make decisions regarding the approval and disbursement of loans:  "[A] lender approved to make loans under this subsection

49

shall be deemed to have been delegated authority by the Administrator [of the SBA] to make and approve covered loans ….” 15 U.S.C. § 636(a)(36)(F)(ii)(I) (emphasis added). *See Pinehurst Neuropsychology, PLLC v. First-Citizens Bank & Tr. Co.*, 2021 WL 4460273, at *3 (M.D.N.C. Sept. 29, 2021) (“Pinehurst was a loan applicant whose application could have been approved or denied for a variety of reasons at First-Citizens’ discretion.”).  CPF’s funding decisions—which form the basis of the UCL claim—plainly fall under the “safe harbor.”

### 4.      Covarrubias’s UCL Claim is Released.

Even if Covarrubias had stated a valid UCL claim, the claims should still be dismissed pursuant to the broad release contained in the Note, which, to the extent Plaintiff has pled a contract at all, would bar all of his claims. *Supra* § III.A.4.

### 5.      Even if Covarrubias Has Stated a Valid UCL Claim, the Court Should Dismiss It on Abstention Grounds.

Finally, and again, even if Covarrubias has stated an otherwise valid UCL claim, the Court should still dismiss the claim on abstention grounds.  “[B]ecause the remedies available under the UCL, namely injunctions and restitution, are equitable in nature, courts have the discretion to abstain from employing them.  Where a UCL action would drag a court into an area of complex economic policy, equitable abstention is appropriate.” *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal.App.4th 997, 1009, 36 Cal. Rptr. 3d 592, 599 (2005) (internal quotation marks and citations omitted).  When faced with UCL claims implicating federal policies applicable to financial institutions, California courts have exercised their discretion to abstain. *See, e.g.*, *Cal. Grocers Assn. v. Bank of Am.*, 22 Cal.App.4th 205, 217, 27 Cal. Rptr. 2d 396, 404 (1994) (abstaining from addressing question of whether bank service fees were too high); *Beasley v. Wells Fargo Bank*, 235 Cal.App.3d 1383, 1301, 1 Cal. Rptr. 446, 449 (affirming decision of trial court,

which stated "as a matter of policy, [] this Court [is not] well suited to regulating retail bank pricing via injunction on an ongoing basis").

In this case, Plaintiffs' UCL claim would require the Court to weigh in on a matter of complex economic policy, one which is already subject to significant federal regulation. Indeed, the Amended Complaint admits that the CARES Act, which enacted the PPP, was "the largest economic stimulus package in the nation's history" (Am. Compl. ¶ 41) and goes on to explain just some of the complex lending system that the PPP put into place. *Id.* ¶¶ 42–62. As California courts have routinely done in cases implicating economic policies put in place by the government, this Court, applying California law, should similarly abstain from wading into this thicket. *See Max Factor & Co. v. Kunsman*, 5 Cal.2d 446, 454–55, 55 P.2d 177, 181 (1936) ("It is primarily a legislative and not a judicial function to determine economic policy.").

### D.   Plaintiff Myles Fails to State a Claim Under the North Carolina Unfair and Deceptive Trade Practices Act.

Count five of the Amended Complaint, violations of the North Carolina Unfair and Deceptive Trade Practices Act (the "NCUDTPA"), which is brought only by Plaintiff Myles (Am. Compl. ¶ 219), should also be dismissed. Myles has failed to plead an "unfair" or "deceptive" practice as is required to state a claim under the NCUDTPA. Myles has also failed to plead any facts to support the additional requirement under NCUDTPA of reliance.

### 1.   Myles Has Not Pled an "Unfair" or "Deceptive" Practice.

The NCUDTPA claim should be dismissed because Myles failed to plead any actionable conduct as a matter of law. Under the NCUDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. Ann. § 75–1.1(a). To establish a violation of NCUDTPA a plaintiff must show that a defendant engaged in (1) an unfair or deceptive act or practice, (2) in or affecting

commerce, (3) which proximately caused injury to plaintiffs. *Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007).  Whether conduct by a defendant constitutes an "unfair or deceptive act or practice" is a question of law for determination by the court.  *See id.*

The NCUDTPA does <u>not</u>, however, prohibit all wrongs that stem from commercial transactions, and North Carolina courts routinely decline to extend NCUDTPA to mere breach of contract actions.  *See, e.g.*, *Bumpers v. Cmty. Bank of N. Virginia*, 747 S.E.2d 220, 226 (N.C. 2013); *see also ACS Partners, LLC v. Americon Grp., Inc.*, 2010 WL 883663, at *9 (W.D.N.C. Mar. 5, 2010) (recommending dismissal of NCUDTPA claim in which plaintiffs' allegations were not "distinct" from contract claim).

Instead, where a plaintiff alleges a breach of contract as the basis for her NCUDPTA claim, she must also plead "[s]ome type of <u>egregious or aggravating</u> circumstances" before the NCUDTPA's provisions may apply.  *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001) (emphasis and alteration in original); *Branch Banking & Tr. Co. v. Thompson*, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992) (breach of contract, even if intentional, is not an aggravating circumstance sufficient to trigger a NCUDTPA claim); *Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*, 869 S.E.2d 34, 43 (N.C. Ct. App. 2022) (tortious conduct required for NCUDTPA claim to arise from a breach of contract).

In this case, Myles's NCUDTPA claim fails because she has not alleged conduct by Defendants that is materially distinct from a breach of contract.  She alleges that CPF entered into a binding agreement with her and that CPF breached its obligations under that agreement.  *See* Am. Compl. ¶¶ 174, 181.  Myles's NCUDTPA claim is based on the same allegations that CPF provided and accepted the Note, and then did not fund the loan.  *Id.* ¶¶ 222, 226.  Of course, Myles somewhat embellishes these factual allegations for purposes of the NCUDTPA claim by accusing

Defendants of "inten[tionally]" harming Myles through their failure to fund her loan.  Am. Compl. ¶ 226.  But even intentional breaches of contract are not sufficient to give rise to an NCUDTPA claim.  *See Thompson*, 418 S.E.2d at 700; *see also Allied Distribs., Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993).  Myles also incorporates allegations of misrepresentations into her otherwise contract-based claim by adding references to "representations and omissions" that were "likely to deceive."  Am. Compl. ¶ 225.  But the North Carolina courts have rejected such attempts to use "[c]onclusory claims of deception and misrepresentation" to "convert … contract claims into a NCUDTPA claim."  *US LEC Commc'ns, Inc. v. Qwest Commc'ns Corp.*, 2006 WL 1367383, at *3 (W.D.N.C. May 15, 2006).

At best, the "misrepresentations" Myles alleges boil down to a claim that she should have been told in advance that the future breach of contract she alleges was going to happen so that she could have avoided it.  *See* Am. Compl. ¶ 227 ("Had CPF … disclosed its intention to withhold the loan proceeds due to plaintiff Myles … [she] would not have done business with CPF.").  But this is the case with <u>every</u> plaintiff who brings a contract claim and is a far cry from the type of "substantial aggravating circumstances" required to plead a claim under the NCUDTPA.  *US LEC Commc'ns, Inc.*, 2006 WL 1367383, at *2.

## 2.      Myles Fails to Satisfy the Requirements of Rule 9(b)

Even if Myles's minimal allegations of misrepresentations are enough to transform her underlying contract claim into an actionable NCUDTPA claim (and they are not), her claims certainly cannot satisfy the heightened pleading requirements under Rule 9(b).  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This means that that for these types of claims the plaintiff must plead "the who, what, when, where, and how:  the first paragraph of any newspaper story."  *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).  "Rule 9(b)

53

applies to unfair and deceptive trade practices claims based on alleged misrepresentations." *Sasso v. Tesla, Inc.*, --- F. Supp. 3d ----, 2022 WL 363850, at *10 (E.D.N.C. Feb. 7, 2022).

Myles's NCUDTPA claim is expressly based on alleged misrepresentations, *see* Am. Compl. ¶¶ 226–227, 229, and so Rule 9(b) applies. Yet Myles failed to plead key elements for the "who, what, when, where, and how" test. For example, she claims that Defendants "[r]epresent[ed] to [her] … their willingness to disburse SBA-approved loans by delivering to [her] … the Note for [her] signature[], and accepting the signed Note[]" (Am. Compl. ¶ 222), but she does not state where in the Note, or what provision of the Note made this purported representation. Indeed, as explained above, nowhere in the Note's terms is there any actual promise by CPF (or anyone else) to fund the loan. *Supra* § III.A.3. At best, the "what" and "where" elements of Rule 9(b) require that Myles point out which statement(s), if any, in the Note amounted to the misrepresentation she is alleging.

### 3.    Myles also Has Not Pled Facts Demonstrating Reliance.

Myles's NCUDTPA claim also fails because she has not plausibly alleged reliance. In a case in which a claim under NCUDTPA stems from an alleged misrepresentation, the plaintiff must establish detrimental reliance. *Bumpers*, 747 S.E.2d  226. Reliance is composed of two factors "actual reliance and reasonableness." *Dan King Plumbing Heating & Air Conditioning, LLC*, 869 S.E.2d at 43. Most importantly, "actual reliance" requires a "showing that the plaintiff affirmatively incorporated the alleged misrepresentation into his or her decision-making process: if it were not for the misrepresentation, the plaintiff would likely have avoided the injury altogether." *Id.* (alteration and internal quotation marks omitted).

In our case, Myles alleges nothing about her "decision-making process" at all, let alone the impact any alleged misrepresentations or omissions may have had on it. Myles's allegation that she would not have entered into the alleged contract had she known it might be breached (Am.

Compl. ¶ 227) is insufficient to plead that she actually relied on any particular statement by Defendants in making her decision to engage with CPF as a PPP lender.  It is unclear, for example, whether Myles truly "would not have done business with CPF," had she known about the "reasons why loans to [her] and members of the North Carolina subclass had not been [or would not be] disbursed."  Am. Compl. ¶¶ 222, 227.  Importantly, the Amended Complaint affirmatively pleads that Myles "applied for a PPP loan with CPF" "[i]n or about May 2021" and that "[i]n May 2021, Myles received and properly signed [the Note]."  Am. Compl. ¶¶ 149, 152.  Yet, May 2021 was when the PPP expired.[14]  At minimum, Myles must allege what decision she would have made differently given that when she tried to obtain her loan the PPP was either over or nearly over.

Nor can Myles plead the reliance requirement by alleging that Defendants "[o]mitt[ed], suppress[ed], and conceal[ed]" the reasons why the loans were not disbursed (Am. Compl. ¶ 222), that "Defendants intended to mislead plaintiff Myles" or that Defendants "induce[d] them to rely on their misrepresentation and omissions."  Am. Comp. ¶ 226.  She has not pled any specific facts to support these allegations and has not identified any representation that induced her to apply for or request a PPP loan.  *See, e.g.*, *Synovus Bank v. Okay Props., LLC*, 2012 WL 3745280, at *10 (W.D.N.C. Aug. 28, 2012) (dismissing NCUDTPA claim where reliance and other requirements "supported by only conclusory allegations").

### 4.    Myles's NCUDTPA Claim Is Released.

Finally, even if Myles has stated a valid NCUDTPA claim (and she has not), the claim should still be dismissed pursuant to the release provided in the Note.  The release, to the extent Myles has pled a contract, is broad enough to bar the NCUDTPA claim.  *Supra* § III.A.4.

---

[14]   *See* U.S. Small Business Administration, *Paycheck Protection Program*, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program#:~:text=An%20SBA%2Dbacked%20loan%20that,ended%20on%20May%2031%2C%202021 (noting expiration date of May 31, 2021).

**E.     All of Plaintiff Myles's Claims Should be Dismissed Because She Was Not an Eligible Borrower under the PPP.**

The Court should also dismiss all of Plaintiff Myles's claims for the independent reason that she affirmatively pleads she was not an eligible borrower under the PPP.  As with the other Plaintiffs, Myles's claims are based on the assumption that she was eligible to borrow under the PPP and therefore entitled to a PPP loan.  *See* Am. Compl. ¶¶ 12 (claiming generally that all Plaintiffs were "eligible" to borrow under the PPP); *id.* ¶ 174 (contract claim based on alleged entitlement to a loans "made pursuant to the PPP"); *id.* ¶ 195 (unjust enrichment claim similarly based on alleged entitlement to PPP loans); *id.* ¶ 227 (same for NCUDTPA claim).  But the pertinent provisions of the CARES Act that establish and govern the PPP specifically provide that "[a] business or organization that was not in operation on February 15, 2020 <u>shall not be eligible</u> for a loan under this paragraph."  15 U.S.C. § 636(a)(36)(T) (emphasis added); *see id.* § 636(a)(36) ("Paycheck protection program").

Plaintiff Myles has pled herself out of Court as to all of her claims because her allegations admit that she did not have a business as of February 15, 2020:

> Also, if you requested all of the information that you stated I did not present to you, I would like to know when, how, and a completed copy of what you were requesting.  **I was never to start the business because of the pandemic so there wasn't any taxes to file, no revenue, nothing.**

Am. Compl. ¶ 154 (quoting Plaintiff Myles) (emphasis added).  Because all of Myles's claims are based on her eligibility to receive a PPP loan to begin with, none of those claims should be allowed to proceed when she admits facts negating that eligibility.  *Carter v. United States*, 123 Fed. App'x 253, 258 (8th Cir. 2005) ("[A] plaintiff who offers specific facts in her complaint can plead herself out of court." (citation omitted)).

56

**F.      Crossroads Should be Dismissed Because Plaintiffs Fail to Properly Plead an Alter Ego Claim.**

The Court should dismiss all of Plaintiffs' claims against Crossroads for the same reasons those claims against CPF are subject to dismissal, as explained above (*supra* §§ III.A–E), because the claims against Crossroads are not based on conduct by Crossroads itself but rather Plaintiffs' allegation that Crossroads was CPF's alter ego.  Am. Compl. ¶ 191 (alleging for breach of contract that "Crossroads is liable to Plaintiffs and Class members as CPF's alter ego …."); *id.* ¶¶ 193, 217, 218 (incorporating above allegations into unjust enrichment claim and state law claims).

Plaintiffs' claims against Crossroads should also be dismissed for the independent reason that they fail to properly plead that the corporate separation between Crossroads and CPF should be disregarded.  Sitting in diversity, this Court should apply Arkansas choice-of-law rules.  *Modern Leasing Inc., of Iowa v. Falcon Mfg. of Cal., Inc.*, 888 F.2d 59, 62 (8th Cir. 1989).  While the Supreme Court of Arkansas has not yet addressed "the issue of choice of law in piercing the corporate veil," *Container Life Cycle Mgmt. LLC v. Safety Mgmt. Servs. Co.*, 2020 WL 2843224, at *3 (W.D. Ark. June 1, 2020), most Arkansas courts and other courts within the Eighth Circuit to have addressed this issue have applied the law of the state of incorporation for a veil-piercing claim.  *Id.* at *4.  In this case, that would mean Delaware law, since Crossroads is a corporation organized under the laws of Delaware.  Am. Compl. ¶ 21.

Under Delaware law, to pierce the corporate veil plaintiffs must show that Crossroads "created a sham entity designed to defraud investors and creditors."  *Doberstein v. G–P Indus., Inc.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015).  Delaware courts consider five factors when deciding whether to disregard the corporate entity, including: "'(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company

funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder.'" *Id.* (quoting *MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010)).  No single factor is dispositive, and generally there must be some combination of them, and there must be "an overall element of injustice or unfairness" present. *Id.* The injustice, or unfairness, must "be found in the defendants' use of the corporate form." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269 (D. Del. 1989).  Delaware courts have described these considerations as requiring, effectively, that "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).[15]

Plaintiffs have not pled facts remotely sufficient to state a veil-piercing claim.  The Amended Complaint is devoid of any allegation that there is any unity between the companies that would rise to the level of an alter ego beyond ordinary control or direction by a parent company over its subsidiary.  The Complaint alleges that Crossroads owns CPF (Am. Compl. ¶ 7), exercised control over CPF's PPP lending (*id.* ¶ 38), received funds that were generated by CPF in connection with PPP lending (*id.*), shared senior executives and overlapping websites (*id.*), that Crossroad's SEC disclosures reference CPF (*id.* ¶ 188), and that Crossroads generated income and paid dividends. *Id.* ¶ 85–87.

None of these things, even if true, is sufficient to rise to the level of veil piercing or alter ego under Delaware law, which is clear that "mere ownership or direction of a corporate entity,

---

[15] Even if the Court were to apply Arkansas law, the requirements would be similar.  *See, e.g.*, *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) ("A parent corporation is not liable for the debts of its subsidiary merely because the parent holds the controlling interest or because the two are managed by the same officers. Rather, it is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded.").

without more, is not sufficient to establish that the corporate form should be disregarded." *Marnavi S.p.A. v. Keehan*, 900 F.Supp.2d 377, 391 (D. Del. 2012). Rather, there must be "some fraud, injustice, or inequity in the <u>use of the corporate form</u>." *Id.* (emphasis added). While Plaintiffs, of course, offer various claims for relief, presumably based on what they believe to have been injustices or inequities, none of these claims have anything to do with Crossroad's <u>use of the corporate form</u> and are rather just connected to ordinary course business activities stemming from CPF's PPP lending. *See, e.g.*, Am. Compl. ¶¶ 38, 79–82.

Otherwise, Plaintiffs' allegations of overlap between the two companies is nothing unusual in corporate parent-subsidiary relationships and is not enough to establish an alter ego or veil piercing claim. *See Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *6 (Del. Ch. Nov. 13, 2018) ("A parent corporation is not liable for the acts of its subsidiary merely because it owns (and votes) a majority of the subsidiary's stock or shares common shareholders, directors or officers with the subsidiary."). Nor can Plaintiffs rely on public statements by Crossroads that purportedly refer to itself in connection with PPP lending conducted by its subsidiary CPF. *E.g.*, Am. Compl. ¶¶ 79–80. Delaware courts applying Delaware law have made clear that these types of "coordinated business efforts are not sufficient as a matter of law to plead corporate veil-piercing." *Sprint Commc'ns Co. L.P. v. Mediacom Commc'ns Corp.*, 2020 WL 5606843, at *6 (D. Del. May 6, 2020); *see also Ener. Marine Servs., Inc. v. DB Mobility Logistics AG*, 2016 WL 284432, at *3 (D. Del. Jan. 22, 2016) ("shared branding" between two companies considered insufficient to establish alter ego claim).

## CONCLUSION

For the foregoing reasons, Defendants Capital Plus Financial, LLC and Crossroads Systems, Inc. respectfully request pursuant to Federal Rule of Civil Procedure 12(b)(2) that the Court issue an order dismissing the Amended Complaint for lack of personal jurisdiction. In the

alternative, and subject to and without waiver of Defendants' challenge to personal jurisdiction, Defendants request that the Court dismiss the Amended Complaint for lack of standing pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).  Defendants also request all further relief to which they may be justly entitled.

Respectfully submitted on April 29, 2022

Karen P. Freeman
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
4206 South J.B. Hunt Drive, Suite 200
Rogers, Arkansas 72758
Tel.:  (479) 464–5650
Fax:  (479) 464–5680
Kfreeman@mwlaw.com

Graham Talley
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Tel.:  (501) 688–8800
Fax:  (501) 688–8807
Gtalley@mwlaw.com

Katherine G. Treistman (*pro hac vice*)
Andrew D. Bergman (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002–2755
Tel.:  (713) 576–2400
Fax:  (713) 576–2499
Katherine.Treistman@arnoldporter.com
Andrew.Bergman@arnoldporter.com

Eric N. Whitney (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019–9710
Tel.:  (212) 836–8000
Fax:  (212) 836–8689
Eric.Whitney@arnoldporter.com

*Attorneys for Defendants Capital Plus*
*Financial, LLC and Crossroads Systems, Inc.*