IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

ERIC GREATHOUSE, et al.                                                    PLAINTIFFS

v.                          Case No. 4:21-CV-1243-BRW

CAPITAL PLUS FINANCIAL, LLC, et al.                                        DEFENDANTS

## ORDER

Pending is Defendants' Motion to Dismiss (Doc. No. 44).  Plaintiff has responded[1] and

Defendant has replied.[2]  For the reasons stated below, the motion is GRANTED.

### I.      BACKGROUND[3]

This case arises from Plaintiffs claims for breach-of-contract, unjust enrichment, and

deceptive trade practices claims against Defendants Capital Plus Financial, LLC ("CPF") and its

parent company Crossroads Systems, Inc. ("Crossroads").  Plaintiffs allege that they did not

receive approved Paycheck Protection Plan ("PPP") loans that CPF agreed to fund, and CPF

wrongfully withheld the loans, but collected fees as though the loans were funded.  Plaintiffs

claim that Crossroads is CPF's alter-ego and is liable for its actions.

Plaintiff Greathouse, lives in Russellville, Arkansas and is the owner of an insurance

inspection business. Plaintiff Covarrubias, lives in Santee, California, and is the owner of an auto

repair business.  Plaintiff Sumrall lives in El Paso, Texas, and is the owner of a landscape

architectural business.  Plaintiff Myles lives in Raeford, North Carolina, and is the owner of a

business involving independent artists, writers and performers.

---

[1]Doc. No. 49.

[2]Doc. No. 52.

[3]Unless otherwise noted, the Background section is from Plaintiff's Amended Complaint,
Doc. No. 31.

Defendant CPF is a limited liability company organized under the laws of the state of Texas with its principal place of business in Bedford, Texas.  Defendant Crossroads is a corporation organized under the laws of Delaware with its principal place of business in Dallas, Texas.

On December 29, 2021, Plaintiff Greathouse filed his class action Complaint alleging breach of contract and unjust enrichment.[4]  On February 25, 2022, Defendants filed a Motion to Dismiss for Lack of Jurisdiction.[5]  On March 28, 2022, Plaintiffs filed an Amended Class Action Complaint which added four non-Arkansas resident Plaintiffs and new claims for violations of California's Unfair Competition Law as related to Plaintiff Covarrubias and violations of North Carolina'a Unfair and Deceptive Trade Practices Act as related to Plaintiff Myles.[6]  On March 28, 2022, I denied Defendants motion to dismiss because Plaintiffs filed an amended complaint.[7]

On April 29, 2022 Defendants filed their motion to dismiss the amended complaint.[8] Defendants contend that the amended complaint should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or alternatively for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim on which relief may be granted under Rule 12(b)(6).  Plaintiffs respond that they have sufficiently alleged personal jurisdiction over Defendants because CPF did substantial PPP lending directly in Arkansas,

---

[4]Doc. No. 1.

[5]Doc. No. 24.

[6]Doc. No. 31.

[7]Doc. No. 32.

[8]Doc. No. 44.

publicly touted the depth of their underwriting investigations into each borrower, and reaped millions in fees from their Arkansas contacts.[9]

Since I find that personal jurisdiction is lacking, I need not discuss Defendants' other arguments for dismissal.

## II.   APPLICABLE LAW

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for lack of personal jurisdiction.[10]  "To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant."[11]  The plaintiff  "must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state."[12]  The plaintiff's prima facie showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto."[13]  Although the plaintiff bears the ultimate burden of proof, personal jurisdiction over the defendant need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing.[14]  "If the district court does not hold a hearing and instead relies on pleadings and affidavits . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual

---

[9]Doc. No. 49.

[10]Fed. R. Civ. P. 12(b)(2).

[11]*Digi-Tel Holdings v. Proteq Telecomms.*, 89 F.3d 519, 522 (8th Cir. 1996)(citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995)).

[12]*Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008).

[13]*Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citations omitted).

[14]See *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (citing *Cutco Ind. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

conflicts in favor of that party."[15]  "The party seeking to establish the court's personal jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction."[16]

"In a diversity action, a federal court may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state, and by the due process clause of the Fourteenth Amendment."[17]  Arkansas's long-arm statute allows personal jurisdiction "to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution."[18]  Because Arkansas's long-arm statute confers jurisdiction to the fullest constitutional extent, my inquiry is limited to whether the exercise of personal jurisdiction comports with due process.[19]

"Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[20]  Minimum contacts must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.[21]  The relevant inquiry is whether a defendant's conduct and connection with the

[15]*Id.* (citations omitted).

[16]*Epps v. Stewart Inform. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citations omitted).

[17]*Burlington Indus., Inc. v. Maples Indus.*, Inc., 97 F.3d 1100, 1102 (8th Cir. 1996).

[18]Ark. Code Ann. § 16–4–101(B).

[19]See *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994); *Davis v. St. John's Health Sys., Inc.*, 348 Ark. 17, 71 S.W.3d 55, 58 (Ark. 2002).

[20]*Burlington Indus.*, 97 F.3d at 1102 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92(1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[21]*Pecoraro v. Sky Ranch For Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

4

forum state is such that the defendant should "reasonably anticipate being haled into court there."[22]  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[23]  "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."[24]

The Eighth Circuit Court of Appeals has identified five factors to consider when determining the sufficiency of a defendant's contacts with the forum state: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties."  The first three factors are closely related and can be considered together.[25]  They are also the most important factors.[26]

"General jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose."[27]  General jurisdiction is appropriate for a non-resident corporate defendant whenever a corporate defendant's "affiliations with the [forum] are so continuous and systematic as to render it

---

[22]*World-Wide Volkswagen Corp.*, 444 U.S. at 297.

[23]*Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[24]*Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1176 (E.D. Ark. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[25]*Digi-Tel Holdings*, 89 F.3d at 522–23.

[26]See *Burlington Indus.*, 97 F.3d at 1102.

[27]*Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993).

essentially at home in the forum State."[28]  "[T]he paradigm forum" for the exercise of personal jurisdiction over an individual is the individual's domicile.[29]  Typically, a corporate defendant is "essentially at home" in the state of its incorporation or in the state in which it has its principal place of business.[30]

Specific jurisdiction, on the other hand, is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities."[31]  The Supreme Court recently clarified how courts should determine if an injury "arise[s] out of or relate[s] to" a defendant's contacts with the forum in *Ford Motor Co. v. Montana Eighth Judicial District Court*.[32]  In *Ford*, the Supreme Court rejected a strictly causation oriented approach to analyzing the connection "between a defendant's forum contacts and the plaintiff's suit . . . ."[33]

When defendants avail themselves "of the privilege of conducting business" in the forum state such that their "activities are shielded by the 'benefits and protections' of the forum's laws, it is presumptively not unreasonable to require [them] to submit to the burdens of litigation in

---

[28]*Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2011).

[29]*Id.* at 137.

[30]*Id.*

[31]*Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Burger King*, 471 U.S. at 472).

[32]141 S. Ct. 1017, 1026 (2021).

[33]*Id.* at 1026–28.

that forum as well."[34]  Moreover, as stated in *Burger King*, actual physical presence in the forum state is not absolutely necessary for specific personal jurisdiction:

> [J]urisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.[35]

A court may exercise personal jurisdiction over defendants through the acts of their agents.[36]  "A party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority."[37]  Under Arkansas law, "[t]he two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control."[38]

---

[34]*Burger King*, 471 U.S. at 476.

[35]*Id.*

[36]*Romak USA, Inc. v. Rich*, 384 F.3d 979, 985 (8th Cir. 2004).

[37]*Id.*

[38]*Bullock's Kentucky Fried Chicken, Inc. v. City of Bryant*, 582 S.W.3d 8, 12 (Ark. 2019)(citing *Pledger v. Troll Book Clubs, Inc.*, 871 S.W.2d 389, 392 (Ark. 1994)).

### III.    DISCUSSION

Plaintiffs do not explicitly state which type of personal jurisdiction they contend I have in this case.  Plaintiffs allege that "Defendants' PPP activities in Arkansas were substantial and continuous throughout the relevant period."[39]

General jurisdiction is not applicable.  Defendant CPF is organized under the laws of Texas and its principal place of business is in Texas.[40] Defendant Crossroads is organized under the laws of Delaware and its principal place of business is in Texas.[41]  Additionally Plaintiffs have not alleged sufficient facts that would indicate Defendants were essentially "at home" in Arkansas based on any continuous and systematic contacts.[42]  Therefore, I will examine whether Plaintiffs have met their burden of demonstrating sufficient minimum contacts for me to exercise specific personal jurisdiction over Defendants.[43]

### A.    Five Factor Test

Defendants argue that they had no meaningful contacts with Arkansas and, to the extent contacts existed, none of Plaintiffs' claims arise out of or relate to those contacts.  Defendants emphasize that they do not own property, employ any persons, maintain offices, have no registered agents, or have any operations within the state of Arkansas.[44]  Additionally, Plaintiffs contend that CPF's PPP lending activities were coordinated by a third-party, an Arizona

---

[39]Doc. No. 49, p. 19.

[40]Doc. No. 31, p. 5.

[41]*Id.*

[42]*Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).

[43]See *First Nat'l Bank of Lewisville v. First Nat'l Bank of Clinton*, 258 F.3d 727 (8th Cir. 2001).

[44]Doc. No. 44-1, p. 3.

company called Blueacorn which did not conduct any of its activities in Arkansas.  All of CPF's

loan approval process activities occurred in Texas.

      On the other hand, Plaintiffs point to several alleged contacts between CPF and Arkansas

that it contends support personal jurisdiction: (1) CPF entered into the agreement to fund

Plaintiff Greathouse's PPP loan; (2) CPF entered into PPP loan agreements with thousands of

other PPP borrowers in Arkansas; (3) CPF committed to fund the PPP loans under the

contractual loan agreements it entered into with Plaintiff Greathouse and other PPP borrowers in

Arkansas; (4) CPF reviewed PPP applications and performed underwriting activities for

applicants who live in Arkansas; (5) CPF obtained PPP lender fees from PPP loans committed to

borrowers in Arkansas; and (6) CPF communicated with the SBA's Little Rock Commercial

Loan Service Center as part of its PPP loan process.[45]

      I will first address the "primary factors" including (1) the nature and quality of the

contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those

contacts with the cause of action.  Here, it is undisputed that CPF is a Texas Limited Liability

Company and that its principal place of business is in Texas.[46]  CPF has no business operations,

employees, or offices in Arkansas.  Based on the record, the contacts CPF had with Arkansas

relevant to the question of specific jurisdiction are communications leading to the formation of

the loan agreement, the agreement itself, and subsequent emails regarding CPF's performance of

the agreement.

---

[45]Doc. No. 49.

[46]Doc. No. 31.

The loan agreement between Mr. Greathouse and CPF, by itself, cannot "automatically establish sufficient minimum contacts" in Arkansas.[47]  "Instead courts should consider the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists."[48]

Plaintiffs stress the fact that CPF knew Mr. Greathouse was an Arkansas resident and operated his business in Arkansas when it entered into the loan agreement.  However, as the Eight Circuit has explained, "'[t]his approach to the 'minimum contacts' analysis impermissibly allows a plaintiff''s contacts with the defendant and the forum to drive the jurisdictional analysis.'"[49]  Additionally, there is no allegation or evidence that CPF sought to fund the loan because Mr. Greathouse was an Arkansas resident or because his business had any connection to Arkansas.  The agreement contains Mr. Greathouse's bank name along with a routing number and his physical address in Arkansas.[50]  However, based on the record, CPF would have been no less interested in funding the loan had Mr. Greathouse been located in any other state it serviced instead of Arkansas.  Further, the only consequence of the loan agreement that required a future CPF contact with Arkansas beyond communication was a one-time deposit into Mr.

---

[47]*Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); see also *Scullin Steel Co. v. Natl. Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982) (quoting *Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979)) ("Merely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state.").

[48]*Fastpath, Inc. v. Arbela Techs. Corp.,* 760 F.3d 816, 821 (8th Cir. 2014).

[49]*Id.* at 823 (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).

[50]Doc. No. 31, pp. 69-71.

Greathouse's bank.  The fact that CPF reviewed information about an Arkansas resident in Texas insufficient to support personal jurisdiction.

To the extent CPF communicated with the SBA's Service Center in Little Rock, Arkansas, as a part of its underwriting process, CPF's contacts with Arkansas were "'random,' 'fortuitous,' or 'attenuated' contacts" which do not constitute purposeful availment.[51]  No allegation or evidence suggests that CPF chose the location of the Arkansas service center or communicated with it because it was in Arkansas.[52]  The SBA center in Little Rock, Arkansas was simply the location operated by the SBA that happened to service the area were certain applicants were located.

As to the communications between CPF and Mr. Greathouse, the Eighth Circuit has held that "telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could 'reasonably anticipate being haled into court there.'"[53]  Here, the communications between Mr. Greathouse and CPF occurred after a third party, Blueacorn, had conducted the majority of the loan application process.  Defendants assert that Blueacorn "provides an online portal for completing a PPP loan application . . . performs an initial check, designates a lender, and submits the application to the SBA for approval."[54]  Then, CPF performed its own underwriting

---

[51]See *Burger King Corp.*, 471 U.S. at 475.

[52]*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. at 1025 (stating that "the contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'")(citation omitted).

[53]*Eagle Tech. v. Expander Americas, Inc*., 783 F.3d 1131, 1137 (8th Cir. 2015) (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, KG, 646 F.3d 589, 594 (8th Cir. 2011)).

[54]Doc. No. 44-1, p.4.

activities.[55]  Plaintiffs don't dispute these facts, but insist that CPF's underwriting activities were purposely directed to Arkansas.  I disagree.  It seems to me, CPF applied its loan process to whatever applicant Blueacorn sent its way.  None its activities were designed to specifically target Arkansas, or any other particular area.  Even under *Ford*, to say that Plaintiffs' harm is "related to" to any activities Defendants directed at Arkansas is a stretch.[56]

Plaintiffs allege that CPF entered into loan agreements with 2,578 SBA-approved Arkansas residents for $38,715,478.00 in total loan proceeds and collected nearly $7 million in fees attributable to those loans.[57] At first glance, it might appear that CPF's PPP loans had a substantial connection with Arkansas because of the large number of applications and the monetary value of these loans as alleged by Plaintiffs.  However, the relevant focus is on the substance of the connections and not the number or monetary value.[58]  CPF's contacts did not solidly connect it to Arkansas.

The fourth factor is Arkansas's "interest in providing a forum for its residents." "A state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."[59]  Mr. Greathouse is an Arkansas resident, so Arkansas has an interest in providing him a forum for bringing his case.  However, Plaintiffs Covarrubias, Sumrall, and Myles live in other states.  This factor is neutral.

---

[55]*Id.*

[56]*Ford*, 141 S. Ct. at 1026.

[57]Doc. No. 49-2.

[58]See *McGee v. International Life Insurance Company*, 355 U.S. at 223.

[59]*Burger King*, 471 U.S. at 473 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. at 223.).

The fifth factor considers the convenience to Plaintiffs and Defendants of litigating in Arkansas. Arkansas is a convenient forum for Mr. Greathouse, who resides in Arkansas. However, Arkansas is inconvenient for Defendants, who are located in Texas and have no employees or offices in Arkansas.  Additionally, Plaintiffs Covarrubias, Sumrall, and Myles all live in other states.  This factor is neutral.

The three primary factors weigh in favor of dismissal for lack of personal jurisdiction and two factors are neutral. Based on the totality of the circumstances, CPF has not "purposefully availed" itself of the laws of Arkansas and is not subject to personal jurisdiction here.  Plaintiffs allege Defendant Crossroads is the "alter ego" of Defendant CPF and impute liability to Crossroads through CPF's activities in Arkansas.[60]  Therefore, Defendant Crossroads is also not subject to personal jurisdiction here.

### B.       Jurisdictional Discovery

Plaintiffs request jurisdictional discovery.  The discovery Plaintiffs request "includes principally CPF's communications with borrowers in Arkansas and within the coverage areas of the SBA's LRSC, Defendants' relationship with Blueacorn and other PPP agents and Ms. Giga's knowledge of those activities."[61]  However, these allegations concern relationships and communications between CPF and entities that, even if proven (as discussed above), would be insufficient to prove personal jurisdiction.[62]  Accordingly, Plaintiffs request for jurisdictional discovery is denied.

---

[60] Doc. No. 31, p. 12.

[61] Doc. No. 43, p. 75.

[62] See *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589 at 598.

**CONCLUSION**

For the reasons stated above, Defendants Motion to Dismiss (Doc. No. 44) is

GRANTED.  Plaintiffs claims are DISMISSED without prejudice.

IT IS SO ORDERED this 19th day of July, 2022.


                                             _____
                                             BILLY ROY WILSON
                                             UNITED STATES DISTRICT JUDGE